# EXHIBIT K-1

Eagle Security Group, Inc.
1380 Central Park Boulevard, Suite 202
Fredericksburg, VA 22401
Phone: 540-548-4060
Fax: 540-301-1396
www.eaglesecuritygroup.com

# JOHN WILSON v. FEDERAL BUREAU OF INVESTIGATION

### In the United States District Court – Southern District of New York
### Cause No.: 20 Civ. 10324 (LAK) (SDA)

## EXPERT REPORT

## November 15, 2021

**Submitted to:**
David B. Rankin, Esq.
BELDOCK LEVINE & HOFFMAN, LLP
99 PARK AVENUE
PH/26th FLOOR
NEW YORK, NY 10016

## INTRODUCTION

This report is prepared pursuant to a request from the above name Plaintiff, John Wilson, to review the documents delineated below in connection with Cause No. 20 Civ. 10324 (LAK) (SDA), filed in the United States District Court, Southern District of New York. It is intended to serve as a disclosure of my expert opinions and the basis for these opinions in this matter, which relate to a Freedom of Information Act (FOIA) requests made by the John Wilson (hereinafter referred to as "plaintiff" or "the plaintiff") in the above-entitled matter.

In developing my opinions, I have relied on my knowledge, training, skill, education and experience developed during my 25 years as a Special Agent, Senior Supervisory Resident Agent (SSRA) and Supervisory Special Agent (SSA) with the Federal Bureau of Investigation (FBI), including specific experience in the areas of conducting electronic searches, and finding and retrieving documents within the FBI's data bases, including: the Central Records System (CRS), Automated Case Support system (ACS), Sentinel, Electronic Surveillance files (ELSUR), Informant Databases (DELTA, 137 and 270) as well as other FBI data bases. I have also relied on the experience of fellow agents and clerks in the FBI related to searches within the same FBI databases.



# BACKGROUND AND SUBJECT MATTER OF REPORT

I was retained by counsel for the Plaintiff to review and evaluate the totality of the documents provided by the Federal Bureau of Investigation (FBI) pursuant to three FOIA requests submitted by the Plaintiff and to give opinions thereafter as to the quality of the search conducted by the FBI related to those FOIA requests.

The below report contains my opinion regarding the thoroughness of the searches conducted by the FBI pursuant the 3 FOIA requests the FBI received from the Plaintiff (See Exhibits 1, 2 and 3).

# MATERIALS REVIEWED

1. FOIA requests the FBI received from the Plaintiff on June 14, 2013, (Exhibit 1), March 26, 2014 (Exhibit 2), and November 6, 2014 (Exhibit 3)

2. FBI response to Plaintiff's first FOIA request dated January 29, 2014 (Exhibit 4)

3. United States District Court, Southern District of New York - John Wilson v. Federal Bureau of Investigation - Complaint filed 12/08/20 (Exhibit 5)

4. United States District Court, Southern District of New York - John Wilson v. Federal Bureau of Investigation - Complaint filed 09/13/21 (Exhibit 6)

5. Declaration of Michael G. Seidel, filed 9/13/21 (Exhibit 7)

6. Documents provided by the FBI to the plaintiff in response to the Plaintiff's FOIA request (Exhibit 8)

# SUBSTANCE OF FACTS AND OPINIONS

**First FOIA request:** On June 14, 2013, the Plaintiff sent his first FOIA request to the FBI (Exhibit 1). In his FOIA request, the plaintiff requested "all files, correspondence, or other records" concerning the Plaintiff. The Plaintiff submitted all requested identifiers including his full name as well as his Date of Birth, Place of Birth and Social Security Number to assist the FBI in finding the information requested. In response, the FBI sent an answer to the Plaintiff dated January 29, 2014 (Exhibit 4) indicating they had conducted a search of CRS and were unable to identify a main file record responsive to the FOIA request by the Plaintiff. The FBI only searched "main records" which means the FBI limited their search to only files of main subjects of FBI investigations. The Plaintiff asked for *all files* to be searched and provided identifying information which would have narrowed the search to only the Plaintiff. Having conducted thousands of searches in CRS, I can attest to the fact that with the Plaintiff's identifying information, it would have taken only a short time to conduct a search of references which would have fully satisfied the Plaintiffs request and eliminated the additional


litigation that has resulted. Furthermore, in the Declaration of Michael G. Seidel, filed 9/13/21 (Exhibit 7), Seidel asserts on page 4, paragraph (8), "Plaintiff provided specific information concerning himself, including the full name, date of birth, place of birth, social security number and work history to assist the FBI in its efforts to locate records responsive to the request."  This was the same identifying information provided by the plaintiff in his first request.  Given that he provided all the required identifiers and specifically requested "all files, correspondence, or other records", the Plaintiff had an expectation that the FBI would conduct a complete, adequate and reasonable search of all files, not just main files.

In addition, the FBI's response to the initial request of the Plaintiff was not reasonable because the FBI only queried CRS through the UNI application of ACS. ACS was superseded by Sentinel on July 1, 2012.  At the time of the Plaintiff's initial request on June 14, 2013, all three data bases (CRS, ACS and Sentinel) existed, a fact acknowledged by Seidel's Declaration (Exhibit 7), page 9, paragraphs 25-27.  After Sentinel was implemented on July 1, 2012, any new information gathered by the FBI would have been uploaded into Sentinel, not into ACS or CRS. CRS stored only old files predating ACS and Sentinel. Therefore, to search only CRS through the ACS UNI application and not through Sentinel meant that only information maintained by ACS and CRS would have been found, thus making their search even more inadequate.  This point is reiterated by the fact that pursuant to the Plaintiff's third request, the FBI searched Sentinel (Exhibit 7, paragraph 39).

Seidel explains the inadequate production of records by the FBI by asserting the statements below in his Declaration (Exhibit 7), page 15, paragraph 40:

> "because the Plaintiff did not ask for reference files in the first request letter and because Plaintiff failed to provide information in the first request letter that could have allowed RIDS to determine the reference file was responsive, that one identified reference file was not processed."

In fact, the Plaintiff in his first request asked for "all files, correspondence, or other records" pertaining to himself to be produced.  The Plaintiff did not specifically use the words "reference files" in his first request because he did not know to specify that particular phrase, which was unique to the FBI's vernacular.  However, it would have been reasonable for the FBI to infer that the request for "all files" would have included "reference files" and it was unreasonable for them not to conduct a search of the reference files simply because the Plaintiff did not use the unique term "reference files" in his first request. The FBI made an unreasonable presumption that the Plaintiff's request for all files did not include reference files.

In addition, Seidel inaccurately claimed the Plaintiff failed to provide information in the first request that could have been used to find responsive files. However, it is clear that the Plaintiff did, in fact, include all necessary information needed to find the reference files pertaining to the Plaintiff.  A person's name, date of birth, place of birth and social security number makes them unique in the FBI's database systems and no further information would have been needed to identify the documents requested pursuant to the initial FOIA request.  Also, in response to the first request, the FBI failed to query ELSUR, DELTA, 137 and 270 files according to Seidel's Declaration (Exhibit 7).  Seidel states in his Declaration, page 12,



EAGLE SECURITY GROUP, INC.
Report of Jennifer Coffindaffer, Wilson v. FBI

paragraph 31, that "ELSUR indices is a separate system of records, but this does not mean that the data housed within the ELSUR indices is not also available in the CRS because targets of electronic surveillance are also indexed in the CRS."  The issue is, while the "targets" are indexed to CRS, ACS and Sentinel, as Seidel explained in his declaration, the references are not.  Thus, if the plaintiff were a reference in the ELSUR file, it would not necessarily be discoverable through a CRS, ACS or Sentinel search. The same holds true for the documents maintained in the DELTA, 137 and 270 file systems. DELTA, 137 and 270 files contain information not discoverable through CRS, ACS and Sentinel searches. Thus, a reasonable search should have included searching DELTA, 137 and 270 files particularly since the plaintiff provided specific identifying information related to his request, precisely narrowing the search parameters.

**Second FOIA request:**  Pursuant to the Plaintiff's second FOIA request dated March 26, 2014 (Exhibit 2), the FBI only searched CRS and ACS according to Seidel's Declaration (Exhibit 7), page 16, paragraph 41 and failed to search Sentinel.  Further, the FBI only identified one record responsive to the Plaintiff's request. Seidel asserts in this same paragraph that the reason the second search resulted in the production of a document that had not been found in the first search was because the "Plaintiff asked for both main and reference files…" and because "he provided additional information that allowed RIDS to assess the responsiveness of the reference file." This is prima facially inaccurate. As previously stated, the identifying information used to find the document in the second search had been included in both requests. In my opinion, the second search conducted by the FBI was also inadequate because the FBI did not search Sentinel, ELSUR, DELTA, 137 or 270 files according to Seidel's Declaration (Exhibit 7).

**Third FOIA request:**  Pursuant to the Plaintiff's third request, dated November 6, 2014 (Exhibit 3), the FBI searched CRS, ACS and Sentinel, and identified the same record that had previously been discovered in the second search as the only record responsive to the plaintiff's request, according to Seidel's Declaration (Exhibit 7), page 16, paragraph 42.  Also, according to Seidel's Declaration, on page 17, paragraph 45, the document identified was 22 pages long.  According to paragraph 46 of the Declaration, the FBI released only 15 of the 22 pages to the plaintiff.  Seidel wrote that seven pages were withheld due to legal exemptions citing "law enforcement purposes" and pages being duplicitous.

Based on the facts and conclusions set forth above, it is my opinion that while the third request was handled in an adequate manner in terms of the search of Sentinel, the FBI did not perform an adequate and reasonable search because they failed to search ELSUR, DELTA, 137 or 270 files according to Seidel's Declaration (Exhibit 7).

## GROUNDS FOR EACH OPINION

The opinions I have offered are based upon my review of the materials cited herein, my knowledge of the FBI's computer systems including Sentinel, ACS, CRS, ELSUR, DELTA, 137 and 270, training, education, and experience as a special agent with the Federal Bureau


of Investigation and use of these systems throughout my 25 years as an FBI Agent and are all centered upon a reasonable degree of probability based on my experience in these areas.

## QUALIFYING STATEMENT

I reserve the right to supplement this report and my opinions expressed herein as more information becomes available or is provided by the parties to this case.

_Jennifer Coffindaffer (Nov 15, 2021 13:04 EST)_

Jennifer Coffindaffer
Eagle Security Group

Nov 15, 2021
Date