# EXHIBIT K-3

# EXHIBIT 5

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------x
JOHN WILSON,                         )

                             )

           Plaintiff,        )      **No. _____**

                         )

        -against-      )      **COMPLAINT**

                         )

FEDERAL BUREAU OF INVESTIGATION,  )

                         )

                         )

         Defendant.     )
---------------------------------------------------------x

       Plaintiff John Wilson, by his attorney David B. Rankin of Beldock, Levine & Hoffman,

LLP for his complaint, does hereby state and allege:

### Preliminary Statement

1.      This is an action under the Freedom of Information Act ("FOIA"), 5 U.S.C. §§552 *et seq*.,

seeking the production of agency records improperly searched for by Defendant United States

Department of Justice ("DOJ"), specifically its component the Federal Bureau of Investigation

("FBI") ("Defendant"), in response to requests properly made by Plaintiff.

2.      Plaintiff seeks an injunction requiring defendant to release the requested records.

### Jurisdiction and Venue

3.      This Court has subject matter jurisdiction of the FOIA claim and personal jurisdiction over

the parties pursuant to 5 U.S.C. § 552(a)(4)(b). This Court also has jurisdiction over this action

pursuant to 28 U.S.C. § 1331.

4.      Venue is proper as the records exist on databases within this district.

5.      The FBI has partially responded to Plaintiff's request and denied Plaintiff's appeal.

Plaintiff has exhausted all administrative remedies pursuant to 5 U.S.C. § 522(a)(6)(c).

## Parties

6.      John Wilson ("Plaintiff") is a United States citizen and the requester of the records.

7.      Defendant FBI is a department of the executive branch of the U.S. government and an agency within the meaning of 5 U.S.C. §§ 551(1) & 552(f)(1). Defendant FBI is a component of DOJ.

## Factual Background

8.      On March 26, 2014, Plaintiff submitted a FOIA request to the Federal Bureau of Investigation via email for a copy of all agency records concerning, naming, or relating to Plaintiff, including but not limited to all potentially responsive main and cross-reference files. The request is attached hereto as Exhibit 1.

9.      On September 25, 2014, Plaintiff received a response from David M. Hardy, Section Chief, Record/Information Dissemination Section, Records Management Division of the FBI. Hardy indicated that 21 pages were reviewed and released 10 pages with redactions. The response is attached hereto as Exhibit 2.

10.     The pages included a February 10, 2006 letter from the Initial Processing Unit, Internal Investigations Section, Inspection Division of the FBI, to counsel for Plaintiff, responding to Plaintiff's January 17, 2005 letter alleging misconduct by FBI personnel.  Other pages include intra-agency emails on the topic of Plaintiff's letter and the resulting investigation; OIG's letter to Charlene B. Thornton, Assistant Director, Inspection Division of the FBI with their conclusions regarding the OIG complaint; a letter from Plaintiff following up on his January 17, 2005 letter; Plaintiff's original January 17, 2005 letter; and a list summary response entry for Mr. Wilson's complaint. Attached hereto as Exhibit 3.

11.     The defendant's production in response to the Plaintiff's request was inadequate. Defendant explained their limited production by stating that they did not find records that the named agents listed in the request were employees of the FBI. Plaintiff has had prior conversations with the named individual in which they told Plaintiff that they were employed by the FBI and in one case showed Plaintiff an FBI identification.

12.     Defendant incorrectly limited their search to special agents of the FBI. A proper and adequate search by the FBI would have returned records of the employment or contracts or contacts with the named individuals or records of communications with these named individuals, person who were operating on behalf of the FBI or others in the Department of Justice.

13.     The search ran by the defendant did not search all the available databases for references to Mr. Wilson.

14.     On November 6, 2014, Plaintiff appealed the FBI's September 25, 2014 production, disputing the adequacy of the FBI's search for records responsive to his FOIA request. Attached hereto as <u>Exhibit 4.</u>

15.     On February 23, 2015, Christina D. Troiani, Attorney-Advisor for Sean O'Neill, Chief, Administrative Appeals Staff, Office of Information Policy, U.S. Department of Justice responded to Plaintiff's appeal and affirmed the FBI's actions on Plaintiff's FOIA request. Ms. Troiani of the Administrative Appeals Staff stated she had determined the FBI had conducted an adequate and reasonable search for records responsive to Mr. Wilson's FOIA request. The letter is attached hereto as <u>Exhibit 5</u>.

16.     On October 24, 2019, Plaintiff submitted a new FOIA request to the FBI through their online portal, again seeking a copy of all agency records concerning, naming, or relating to

Plaintiff. Plaintiff does not possess a copy of this request as it was submitted directly through the FBI's online portal for such FOIA requests.

17.     On October 29, 2019, David M. Hardy, Section Chief, Record/Information Dissemination Section, Information Management Decision, Federal Bureau of Investigation, U.S. Department of Justice responded to Plaintiff's request. Mr. Hardy stated that the FBI had released all relevant records to Mr. Wilson in response to his previous request, and that no additional records could be located. Attached hereto as Exhibit 6.

18.     On Feb 18, 2020, Plaintiff appealed the FBI's October 26, 2019 conclusions, again disputing the adequacy of the FBI's search for records responsive to his FOIA request. Attached hereto as Exhibit 7.

19.     On March 21, 2020, Christina D. Troiani, Associate Chief, for Matthew Hurd, Acting Chief, Administrative Appeals Staff, Office of Information Policy, U.S. Department of Justice responded to Plaintiff's appeal and affirmed the FBI's actions on Plaintiff's FOIA request. Ms. Troiani of the Administrative Appeals Staff stated she had determined the FBI had conducted an adequate and reasonable search for records responsive to Mr. Wilson's FOIA request. The letter is attached hereto as Exhibit 8.

## **Cause of Action**

20.     Defendant's failure to conduct an adequate search for the records sought by the Request violates the FOIA, 5 U.S.C. § 522(a)(3)(A)-(D), and defendant's corresponding regulations.

## **Request for Relief**

WHEREFORE, Plaintiff respectfully requests that this Court:

A.     Order Defendant to conduct a thorough search for all records responsive to Plaintiff's Request and demonstrate that it employed search methods reasonably calculated to uncover all records responsive to Plaintiff's Request;

B.      Issue a declaration that Plaintiff is entitled to disclosure of the records responsive to Plaintiff's Request;

C.      Order Defendant to disclose all non-exempt records responsive to Plaintiff's Request in its entirety, as well as all non-exempt portions of responsive records;

D.      Order defendant to promptly provide an index pursuant to *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973), and its progeny, inventorying all responsive records and itemizing and justifying all withholdings of responsive documents;

E.      Enjoin Defendant from continuing to withhold any and all non-exempt records or portions thereof responsive to Plaintiff's Request;

F.      Immediately process all records responsive to the Request;

G.      Award plaintiff reasonable attorneys' fees and costs pursuant to incurred in this action; and 5 U.S.C. § 552(a)(4)(E);

H.      Grant such other relief as the Court may deem just and proper

Dated:          December 8, 2020
                New York, New York

                                Respectfully submitted,

                By:_____
                                David B. Rankin
                                Beldock, Levine & Hoffman, LLP
                                99 Park Avenue, PH/26th Fl.
                                New York, New York 10016
                                t:  212-277-5825
                                e: DRankin@blhny.com

                                Katherine "Q" Adams
                                e: QAdams@blhny.com

Date 26 March 2014

Federal Bureau of Investigation
Att'n: FOI/PA Request
Record/Information Dissemination Section
170 Marcel Drive
Winchester, VA 22602-4843

VIA EMAIL: foiparequest@ic.fbi.gov

**Re: Freedom of Information Act Request**

Dear Sir or Madam:

This letter constitutes a request under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552.

I request disclosure of all agency records concerning, naming, or relating to me.   I specifically request that the FBI perform a complete and thorough search of all filing systems and locations for all records maintained by the Bureau pertaining to me.  Such a search should include, but not be limited to, files and documents captioned in (or whose captions include) my name in the title.  The FBI should search the Central Records System, Electronic Surveillance Records (ELSUR), and Electronic Case File (ECF).  Further, I specifically request that the Bureau conduct a text search of the ECF to identify all potentially responsive main and cross-reference files.  The FBI's search should include "main" files and "see references."

In the event that you determine that some responsive material might be exempt from disclosure under FOIA, please indicate the specific exemption or exemptions upon which the agency relies.  I agree to incur legally assessable processing fees not to exceed $100.

To assist the Bureau in conducting a comprehensive search, I provide some relevant background information.  My full name is JOHN ▇▇▇▇▇▇ WILSON.  I was born in ▇▇▇▇ NSW Australia on ▇▇▇▇▇▇.  My social security number is ▇▇▇▇▇▇. My US passport number is: ▇▇▇▇▇.

I was a mining company equity analyst on Wall Street from 1994 to 1998.  I am a citizen of the United States, and lived in the United States for many years, principally in New York and Philadelphia, where I received an MBA degree from Wharton.  Currently I reside in Australia.

In 1996, in the course of performing my duties as a mining industry analyst for SG Warburg (which subsequently became part of SBC Warburg, thence UBS Warburg), the company published one of my reports containing information pertaining to an extended shutdown of

the NYSE publicly traded U.S. mining company Freeport McMoran owned Grasberg mine in Indonesia. According to press reports at the time and other sources, the company was under investigation by the U.S. Department of State following eyewitness allegations it had been involved in the killing of indigenous protestors. A source indicated to me that there had been a confidential reprimand of the company by the U.S. Department of State following completion of an interim investigation into human rights and environmental abuses.

For the many years following the 1996 publication of information regarding the Freeport McMoran killings, I have had contact with multiple individuals who indicated that they were associated with the FBI and some who made reference to the Freeport McMoran matter. As a result, I believe it is likely that the Bureau maintains information about me stemming from the 1996 report, related and potentially other matters. I have been approached by undercover agents/employees/others that work for or on behalf of the FBI and which include multiple meetings with each during various periods between 1996 and 2010. In particular:

- Michael Mills: the FBI agent who moved into my apartment in NYC and occupied it for several years when I sublet it before my return to Australia.

- Kathleen Walton: former mining analyst at Merrill Lynch in NYC.

- Matthew Levey - Kroll Associates, Inc (New York City midtown office): consulting work case manager 2003 and 2004. Former State Department employee.

- Jeffrey S Robards: corporate finance, formerly Ernst & Young (E&Y) NYC. Now working for C.W. Downer & Co - a boutique M&A firm in Boston. (http://www.cwdowner.com/index.php?option=com_content&view=article&id=42&Itemid=23)

- Stephan Chenault and John Klotz: volunteers Sierra Club NYC Group since 1990s.

- Ben Worden, Rob Haggerty and Allison Dey (Tucson area): FBI agents involved with Diamond Mountain Buddhist group in southern Arizona and California.

- George Schneider and Livingston Sutro (Sierra Vista, AZ); Jennifer Conner (NYC): Associated with Diamond Mountain Buddhist group in southern Arizona.

- Paul Whitby (Tucson): biologist.

- Robert Schultz - Albuquerque based head hunter. MRC Mining Search. http://www.miningsearch.com/mining-search/our-team/

- Steven D. Garber - (wife Andrea - collaborator) additional details: biologist; lived in Manhattan for much of the 1990s, before taking a two year posting to teach biology at Embry Riddle in Prescott, AZ. Books authored include The Urban Naturalist (New York.

John Wiley and Sons. 1987). PhD in Ecology, Environmental Sciences - Rutgers, The State University of New Jersey-Newark. B.S. in Natural Resources - Cornell University.

-   Susan Ackerson Holmes (born 1962) - extensive interview in New York in 2003, former board member of the Sierra Club and subsequently an employee of the Sierra Club. Susan Holmes showed me her FBI identification card and identified herself as working for the FBI.

As the FOIA requires, I will anticipate your response to this request within twenty working days.  Please feel free to contact me at the e-mail address or telephone number indicated below if you wish to discuss this request. Alternatively, my FOI attorney David Sobel can be contacted at Electronic Frontier Foundation, phone number in Washington D.C. (202-246-6180).

Sincerely,

John Wilson

E:
T:



**U.S. Department of Justice**

**Federal Bureau of Investigation**
*Washington, D.C. 20535*

September 25, 2014

MR. JOHN ████ WILSON
████████████

FOIPA Request No.: 1250235-001
Subject: WILSON, JOHN ██████

Dear Mr. Wilson:

The enclosed documents were reviewed under the Freedom of Information/Privacy Acts (FOIPA), Title 5, United States Code, Section 552/552a. Deletions have been made to protect information which is exempt from disclosure, with the appropriate exemptions noted on the page next to the excision. In addition, a deleted page information sheet was inserted in the file to indicate where pages were withheld entirely. The exemptions used to withhold information are marked below and explained on the enclosed Explanation of Exemptions:

|  Section 552 |  Section 552a |  |
|---|---|---|
| ☐ (b)(1) | ☐ (b)(7)(A) | ☐ (d)(5) |
| ☐ (b)(2) | ☐ (b)(7)(B) | ☑ (j)(2) |
| ☐ (b)(3) | ☑ (b)(7)(C) | ☐ (k)(1) |
| _____ | ☐ (b)(7)(D) | ☐ (k)(2) |
| _____ | ☐ (b)(7)(E) | ☐ (k)(3) |
| | ☐ (b)(7)(F) | ☐ (k)(4) |
| ☐ (b)(4) | ☐ (b)(8) | ☐ (k)(5) |
| ☐ (b)(5) | ☐ (b)(9) | ☐ (k)(6) |
| ☑ (b)(6) | | ☐ (k)(7) |

21 pages were reviewed and 10 pages are being released.

☐ Document(s) were located which originated with, or contained information concerning, other Government agency(ies) [OGA].

☐ This information has been referred to the OGA(s) for review and direct response to you.
☐ We are consulting with OGA(s). The FBI will correspond with you regarding this information when the consultation is finished.

☑ In accordance with standard FBI practice and pursuant to FOIA exemption (b)(7)(E) and Privacy Act exemption (j)(2) [5 U.S.C. § 552/552a (b)(7)(E)/(j)(2)], this response neither confirms nor denies the existence of your subject's name on any watch lists.

For your information, Congress excluded three discrete categories of law enforcement and national security records from the requirements of the FOIA.   See 5 U. S. C. § 552(c) (2006 & Supp. IV (2010).   This response is limited to those records that are subject to the requirements of the FOIA.   This is a standard notification that is given to all our requesters and should not be taken as an indication that excluded records do, or do not, exist. Enclosed for your information is a copy of the Explanation of Exemptions.

☑ You have the right to appeal any denials in this release.   Appeals should be directed in writing to the Director, Office of Information Policy (OIP), U.S. Department of Justice,1425 New York Ave., NW, Suite 11050, Washington, D.C. 20530-0001, or you may submit an appeal through OIP's eFOIA portal at http://www.justice.gov/oip/efoia-portal.html. Your appeal must be received by OIP within sixty (60) days from the date of this letter in order to be considered timely. The envelope and the letter should be clearly marked "Freedom of Information Appeal."   Please cite the FOIPA Request Number assigned to your request so that it may be easily identified.

☐ The enclosed material is from the main investigative file(s) in which the subject(s) of your request was the focus of the investigation.   Our search located additional references, in files relating to other individuals, or matters, which may or may not be about your subject(s).   Our experience has shown when ident. references usually contain information similar to the information processed in the main file(s).   Because of our significant backlog, we have given priority to processing only the main investigative file(s).   If you want the references, you must submit a separate request for them in writing, and they will be reviewed at a later date, as time and resources permit.

☑ See additional information which follows.

Sincerely,

David M. Hardy
Section Chief
Record/Information
   Dissemination Section
Records Management Division

Enclosure(s)

In response to your Freedom of Information/Privacy Acts (FOIPA) request submitted to the Records Management Division at Winchester, VA, enclosed is a processed copy of the responsive FBI Headquarters document.

The enclosed responsive document represents the final release of information responsive to your Freedom of Information Act (FOIA) request.

The enclosed documents responsive to your request are exempt from disclosure in their entirety pursuant to the Privacy Act, Title 5, United States Code, Section 552(a), subsection (j)(2).   However, these records have been processed pursuant to the Freedom of Information Act, Title 5, United States Code, Section 552, thereby affording you the greatest degree of access authorized by both laws.

This material is being provided to you at no charge.

## EXPLANATION OF EXEMPTIONS

### SUBSECTIONS OF TITLE 5, UNITED STATES CODE, SECTION 552

(b)(1)     (A) specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and (B) are in fact properly classified to such Executive order;

(b)(2)     related solely to the internal personnel rules and practices of an agency;

(b)(3)     specifically exempted from disclosure by statute (other than section 552b of this title), provided that such statute (A) requires that the matters be withheld from the public in such a manner as to leave no discretion on issue, or (B) establishes particular criteria for withholding or refers to particular types of matters to be withheld;

(b)(4)     trade secrets and commercial or financial information obtained from a person and privileged or confidential;

(b)(5)     inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency;

(b)(6)     personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal  privacy;

(b)(7)     records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information ( A ) could reasonably be expected to interfere with enforcement proceedings, ( B ) would deprive a person of a right to a fair trial or an impartial adjudication, ( C ) could reasonably be expected to constitute an unwarranted invasion of personal  privacy, ( D ) could reasonably be expected to disclose the identity of confidential source, including a State, local, or foreign agency or authority or any private institution which furnished information on a confidential basis, and, in the case of record or information compiled by a criminal law enforcement authority in the course of a criminal investigation, or by an agency conducting a lawful national security intelligence investigation, information furnished by a confidential source, ( E ) would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law, or ( F ) could reasonably be expected to endanger the life or physical safety of any individual;

(b)(8)     contained in or related to examination, operating, or condition reports prepared by, on behalf of, or for the use of an agency responsible for the regulation or supervision of financial institutions; or

(b)(9)     geological and geophysical information and data, including maps, concerning wells.

### SUBSECTIONS OF TITLE 5, UNITED STATES CODE, SECTION 552a

(d)(5)     information compiled in reasonable anticipation of a civil action proceeding;

(j)(2)     material reporting investigative efforts pertaining to the enforcement of criminal law including efforts to prevent, control,   or reduce crime or apprehend criminals;

(k)(1)     information which is currently and properly classified pursuant to an Executive order in the interest of the national defense or foreign policy, for example, information involving intelligence sources or methods;

(k)(2)     investigatory material compiled for law enforcement purposes, other than criminal, which did not result in loss of a right, benefit or privilege under Federal programs, or which would identify a source who furnished information pursuant to a promise that his/her identity would be held in confidence;

(k)(3)     material maintained in connection with providing protective services to the President of the United States or any other individual  pursuant to the authority of Title 18, United States Code, Section 3056;

(k)(4)     required by statute to be maintained and used solely as statistical records;

(k)(5)     investigatory material compiled solely for the purpose of determining suitability, eligibility, or qualifications for Federal civilian employment or for access to classified information, the disclosure of which would reveal the identity of the person who furnished information pursuant to a promise that his/her identity would be held in confidence;

(k)(6)     testing or examination material used to determine individual qualifications for appointment or promotion in Federal Government  service he release of which would compromise the testing or examination process;

(k)(7)     material used to determine potential for promotion in the armed services, the disclosure of which would reveal the identity of the  person who furnished the material pursuant to a promise that his/her identity would be held in confidence.

```
FEDERAL BUREAU OF INVESTIGATION
FOI/PA
DELETED PAGE INFORMATION SHEET
FOI/PA# 1250235-1


Total Deleted Page(s) = 11
Page 10 ~ b6; b7C;
Page 12 ~ b6; b7C;
Page 13 ~ b6; b7C;
Page 14 ~ b6; b7C;
Page 15 ~ b6; b7C;
Page 17 ~ Duplicate;
Page 18 ~ Duplicate;
Page 19 ~ Duplicate;
Page 20 ~ Duplicate;
Page 21 ~ Duplicate;
Page 22 ~ Duplicate;
```

```
XXXXXXXXXXXXXXXXXXXXXXXX
X    Deleted Page(s)    X
X    No Duplication Fee X
X    For this Page      X
XXXXXXXXXXXXXXXXXXXXXXXX
```



February 10, 2006

Mr. Barry A. Fisher
Fleishman and Fisher
1875 Century Park East
Suite 2130
Los Angeles, California 90067

Attention: Mr. John ███████ Wilson

Dear Mr. Wilson:

        We are in receipt of your letter dated January 17, 2005, to the U.S. Department of Justice
(DOJ), Office of Inspector General. DOJ forwarded this correspondence to the Initial processing Unit
(IPU), Internal Investigations Section, Inspection Division, Federal Bureau of Investigation
(FBI), for our review. The IIS is the FBI entity that provides thorough, high quality, fair,
consistent, and timely review and investigation into complaints of criminality and/or serious
misconduct against FBI employees.

        In the above-referenced letter, you allege that an unidentified Undercover FBI Special
Agent (SA) apparently disclosed confidential information to you originating from the U.S. State
Department regarding a fatal Grasberg mining accident in Indonesia. You advised that you
published an article about the accident at the Freeport McMoran owned Grasberg mine in 1996
and, since its publication, you allege having been contacted by numerous individuals who
identified themselves to you as FBI agents, specifically SA ███████ New York; SA
████████ Arizona, and SA ████████ Washington, D.C. A review of our records
revealed that the above-named individuals are not employed by the FBI.

        Inasmuch as the information provided contains no credible allegations of misconduct by
any FBI personnel, IPU has determined that your complaint does not warrant the initiation of an
investigation. We consider this matter closed.

                                        Sincerely,

b6
b7C

b6
b7C

                                        Unit Chief
                                        Initial Processing Unit
                                        Inspection Division



1 ███████ Personal Attention)
1 - IPU
1 ███████
MIV:jqmmh (5)

263-0-████

b6
b7C

**(INSD) (FBI)**

**From:** _____ (OPR) (FBI)
**Sent:** Wednesday, February 08, 2006 4:39 PM
**To:** _____ (INSD) (FBI)
**Cc:** _____ (INSD) (FBI)
**Subject:** RE: Hey it's the new guy

**UNCLASSIFIED**
**NON-RECORD**

_____ - First I saw of this was when ____ brought it to me with you--- I think I forwarded _____ another one. Anyway, it appears that the Complainant (Wilson) never got a copy of any letter from IPU advising him that he failed to identify any FBI employees who have engaged in misconduct. I will ask _____ to draft a letter to send to OCA to send to Mr. Wilson (Complainant).

b6
b7C

_____ I put the paperwork I had in your in-box with refernce to Complaint# 1245. We will address this tomorrow morning _____

-----Original Message-----
**From:** _____ (INSD) (FBI)
**Sent:** Wednesday, February 08, 2006 1:35 PM
**To:** _____ (INSD) (FBI)
**Cc:** _____ (OPR) (FBI)
**Subject:** RE: Hey it's the new guy

**UNCLASSIFIED**
**NON-RECORD**

b6
b7C

_____ did you say you put this complaint on _____ desk?

-----Original Message-----
**From:** _____ (INSD) (FBI)
**Sent:** Wednesday, February 08, 2006 12:35 PM
**To:** _____ (INSD) (FBI)
**Subject:** Hey it's the new guy

**UNCLASSIFIED**
**NON-RECORD**

Do you have the hardcopy paperwork for complaint # 1245 _____ received a call from Congressional Affairs (CA) on this matter. When you are available, may I come over and close the loop on this. I spoke to the CA a few minutes ago and they advised what information they are seeking, I am sure you already know what they want.

b6
b7C

Thanks,
_____

**UNCLASSIFIED**

**UNCLASSIFIED**

**UNCLASSIFIED**

1

**U.S. Department** **Justice**

Office of the Inspector General

b6
b7C

#1245

*Washington, D.C. 20530*

**DATE:** July 27, 2005

**TO:** Charlene B. Thornton
Assistant Director
Inspection Division
Federal Bureau of Investigation

**FROM:** Glenn G. Powell
Special Agent in Charge
Investigations Division

**SUBJECT:** OIG Complaint No. 2005005905
Subject: [ ] et al.
New York Division
FBI No. OIG Initiated

☒ We consider this a management matter. The information is being provided to you for whatever action you deem appropriate in accordance with your agency's policy and regulations. A copy of your findings and/or final action is not required by the OIG.

☐ This matter is referred to your agency for investigation. Please provide the OIG with a copy of your final report on this matter.

☐ This complaint will be investigated by the OIG.

**IMPORTANT NOTICE**

Identifying information may have been redacted from the attached OIG Report/Referral pursuant to § 7 of the IG Act or because an individual has (a) requested confidentiality or (b) expressed a fear of reprisal. If you believe that it is necessary that redacted information be made available to your Agency, you may contact the Assistant Inspector General for Investigations.

Please be advised that, where adverse action is not contemplated, the subject of an investigation does not have a right to have access to an OIG Report/Referral or to the identities of complainants or witnesses, and that, in all cases, complainants and witnesses are entitled to protection from reprisal pursuant to the Inspector General protection Act.

① A [ ]

**Attachment**

②

b6
b7C

263-0-8630



OIG - INVESTIGATIONS DIVISION - IDMS          OIG NO.: LA-412-2005-005905-M

Received By                          Date Received:  05/01/2005   How Received:  M

b6
b7C

SUBJECT OF A COMPLAINT:                              SSNO:
Title:      SA                   Pay Plan:           D.O.B.:
Component: FBI                    EOD Date:           Alien No.:
Misc:    7/26/05 - FBI advised no record exist.      F.B.I.No.:
Home:                                                B.O.P.No.:
Phone:                             ZIP:              D/L No.:
Work:
Phone:                             ZIP:

SUBJECT OF A COMPLAINT:                              SSNO:
Title:      SA                   Pay Plan:           D.O.B.:
Component: FBI                    EOD Date:           Alien No.:
Misc:                                                B.I.No.:
Home:                                                O.P.No.:
Phone:                             ZIP:              D/L No.:
Work:
Phone:                             ZIP:

SUBJECT OF A COMPLAINT:                              SSNO:
Title:      SA                   Pay Plan:           D.O.B.:
Component: FBI                    EOD Date:           Alien No.:
Misc:    7/26/05 - FBI advised no record exist.      F.B.I.No.:
Home:                                                B.O.P.No.:
Phone:                             ZIP:              D/L No.:
Work:
Phone:                             ZIP:

COMPLAINANT:                     Wilson, John        SSNO:
Title:    CIVIL                   Pay Plan:           D.O.B.:
Component: CITZN                  EOD Date:           Alien No.:
Misc:                                                F.B.I.No.:
Home:                                                B.O.P.No.:
Phone:                             ZIP:              D/L No.:
Work:
Phone:                             ZIP:
Confidential:                    Revealed:            Authority:  none

ALLEGATIONS:   412 Job Performance Failure
Occurrence Date:                       TIME:
CITY:                        State:              Zip:

Details:
    The following information was provided by Complainant regarding allegations of misconduct
    by FBI SAs.  In 1996, an UC FBI SA leaked information to the Complainant regarding a
    "confidential" reprimand by the U.S. State Department regarding the Freeport-McMoran's
    Grasberg mine in Indonesia.  According to the Complainant, the UC FBI SA gave him details
    of the State Department's findings regarding an incident in which seven people associated
    with the Grasberg mine were killed.  In 1996, the Complainant published information
    regarding the killings.  (It should be noted that the Complainant does not provide any
    specifics regarding his publication.)  The Complainant, a senior equity analyst, believes
    the FBI is responsible for his inability to obtain a job in the financial services
    industry.  The Complainant stated that he was interviewed "extensively" by the Subjects
    following his 1996 publication.  According to the Complainant, he was unable to obtain any
    information as a result of an October 2004, FOIA request to the FBI.

OIG - INVESTIGATIONS DIVISION   -   IDMS                    OIG NO.: LA-412-2005-005905-M

DISPOSITION DATA: Date:   07/26/2005        Disposition: M        Approval:POWELL, GLENN G
Referred to Agency:                                              Component: CITZN
Civil Rights:  N                                                Sensitive: N
Component Number:                          Consolidated Case Number:

---

Remarks:

7/27/05 - Acknol letter sent to the Complainant advising him that the matter was forwarded
to the FBI, Inspection Division.   (yht)

7/27/05 - Management referral to AD Thornton, FBI Inspection Division. (yht)

---

John ████ Wilson                                          16 April, 2005
c/o Barry A. Fisher
Fleishman & Fisher
1875 Century Park East Suite 2130
Los Angeles, CA 90067

Email: ████████████

US Department of Justice
Office of the Inspector General
950 Pennsylvania Avenue, N.W., Suite 4706
Washington, DC 20530-0001

Dear Sir:

I write as a follow up to the letter I sent to your office on 17 January, 2005 (copy
enclosed). Could you please indicate your expected timing for a response to that letter.

Thank you.

Sincerely yours,

John Wilson

Encl.    Copy of letter sent to your office, dated 17 January, 2005

John ███ Wilson                                      17 January, 2005
c/o Barry A. Fisher
Fleishman & Fisher
1875 Century Park East Suite 2130
Los Angeles, CA 90067
Tel: 310-5571077

Email: ████████████████████

US Department of Justice
Office of the Inspector General
950 Pennsylvania Avenue, N.W., Suite 4706
Washington, DC 20530-0001


Dear Sir:

I write because of the oversight responsibilities of your office. I was a mining company
equity analyst on Wall Street from 1994 to 1998. I am a citizen of the U.S.A., was born in
Australia, and have long lived in the United States, principally in New York and
Philadelphia, where I received my MBA degree from Wharton. I am currently visiting
family for an extended stay in Australia.

In 1996, in the course of performing my duties, information was leaked to me by a then
undisclosed FBI agent who worked undercover as an environmentalist. This person gave
me details of a State Department finding into an incident in which 7 people were recently
killed in and around the publicly traded Freeport McMoran owned Grasberg mine in
Indonesia. The information I received related to a confidential reprimand of the company
by the U.S. Department of State for human rights and environmental abuses.

Since then, as set out below, I have been subjected to what appears to be a systematic
retaliation campaign by persons associated with the FBI involving invasive and injurious
tactics. Among other things, I have faced blacklisting in my industry. I have been unable
to gain any employment in the financial services industry despite a recent boom in the
mining sector and despite having worked on Wall Street for 6 years, mostly as a senior
equity analyst.

For the many years following my 1996 publication regarding the Freeport McMoran
killings, I have had many contacts with people who at some point revealed themselves as
FBI agents on assignment connected to me, and who let me know that I angered
important people by the publication. Some of these individuals engendered friendship
with me under the auspices of other professional identities and each has interviewed me,
two of them extensively. These include Steven Garber, now of White Plains, New York,
formerly of New York City, Susan Holmes, now of Washington, D.C., formerly of New
York City, and Livingston Sutro, of Sierra Vista, Arizona.

1 of 2

Aside from these agents, more than a dozen other people have identified themselves to me as having a high level of familiarity with these circumstances and appear to be FBI agents or associated with agents.

Given the fact that the source of the leaked information was itself an FBI agent and given the powerful business interests of Freeport, I am concerned that I am the subject of what appears to be either a case of FBI corruption or incompetence. The agent that passed to me the information about Freeport was a long term friend who targeted environmental extremists, and I am concerned I may have been maliciously profiled to justify the intense scrutiny I have faced.

An FOIA request to the FBI in October, 2004 yielded no information whatsoever.

I look forward to hearing from you. The most convenient means by which to correspond with me are through my attorney (details indicated above), alternatively via email.

Sincerely yours,


John Wilson



2 of 2

```
End of Data
02/10/06                    List Summary Response                    UNI050MK
13:19:29
Type X, x, or / to view Full Response, then press Enter.


.      Name: WILSON, JOHN, ████████████
       M/R : M Case ID: HQ 263-0                      Serial: 8636
       Race: U  Sex: M  DOB/Event:        ID Info:
       Misc: NO ACTION                    Entry Date: 10/13/2005 Class Level: SN
```

```
Command . . > ................................................................ +
F1=Help,F3=Exit,F4=Prompt,F12=Cancel

4AÛ                                                              06,002
```

    

**U.S. Department** **Justice**

Office of the Inspector General

#1245

*Washington, D.C. 20530*

**DATE:**     **July 27, 2005**

**TO:**     **Charlene B. Thornton**
**Assistant Director**
**Inspection Division**
**Federal Bureau of Investigation**

*Glenn G. Powell*

**FROM:**   **Glenn G. Powell**
**Special Agent in Charge**
**Investigations Division**

**SUBJECT:**   **OIG Complaint No. 2005005905**
**Subject** [redacted]                                      b6
**New York Division**                                      b7C
**FBI No.  OIG Initiated**

☒   **We consider this a management matter.  The information is being provided to you**
**for whatever action you deem appropriate in accordance with your agency's policy**
**and regulations.  A copy of your findings and/or final action is not required by the**
**OIG.**

☐   **This matter is referred to your agency for investigation.  Please provide the OIG**
**with a copy of your final report on this matter.**

☐   **This complaint will be investigated by the OIG.**

<u>**IMPORTANT NOTICE**</u>

Identifying information may have been redacted from the attached OIG Report/Referral pursuant to § 7 of the
IG Act or because an individual has (a) requested confidentiality or (b) expressed a fear of reprisal.  If you
believe that it is necessary that redacted information be made available to your Agency, you may contact the
Assistant Inspector General for Investigations.

Please be advised that, where adverse action is not contemplated, the subject of an investigation does not have a
right to have access to an OIG Report/Referral or to the identities of complainants or witnesses, and that, <u>in all
cases</u>, complainants and witnesses are entitled to protection from reprisal pursuant to the Inspector General
Protection Act.

① A- [redacted]

Attachment

② [redacted]

No Action
- none of the individuals
named are FBI employees
Unsubstantiated
10-4-05/S

263-0-86036

b6
b7C

Date 6 November 2014

Director, Office of Information Policy (OIP),
U.S. Department of Justice,
1425 New York Ave., NW,
Suite 11050,
Washington, D.C. 20530-0001

**Re: Freedom of Information Act Request Appeal**

**FOIPA Request No.: 1250235-001**
**Subject: WILSON, JOHN** ▮▮▮▮▮▮▮▮

Dear Sir or Madam:

This letter constitutes an appeal request relating to FOIPA Request No.: 1250235-001
I request disclosure of all agency records concerning, naming, or relating to me.

I specifically request that the FBI/DOJ perform a complete and thorough search of all
filing systems and locations for all records maintained by the Bureau/DOJ pertaining to
me.  Such a search should include, but not be limited to, files and documents captioned
in (or whose captions include) my name in the title.  The FBI/DOJ should search the
Central Records System, Electronic Surveillance Records (ELSUR), and Electronic
Case File (ECF).   Further, I specifically request that the Bureau conduct a text search of
the ECF to identify all potentially responsive main and cross-reference files.  The
FBI's/DOJ search should include "main" files and "see references."

In the event that you determine that some responsive material might be exempt from
disclosure under FOIA, please indicate the specific exemption or exemptions upon
which the agency relies.  I agree to incur legally assessable processing fees not to
exceed $100.

To assist the Bureau/DOJ in conducting a comprehensive search, I provide some relevant
background information.  My full name is JOHN ▮▮▮▮▮▮▮ WILSON.  I was born in
▮▮▮▮▮, NSW Australia on ▮▮▮▮▮▮▮▮.  My social security number is ▮▮▮▮▮▮▮. My
US passport number is: ▮▮▮▮▮▮.

I was a mining company equity analyst on Wall Street from 1994 to 1998.  I am a citizen of
the United States, and lived in the United States for many years, principally in New York
and Philadelphia, where I received an MBA degree from Wharton.  Currently I reside in
Australia.

In 1996, in the course of performing my duties as a mining industry analyst for SG Warburg
(which subsequently became part of SBC Warburg, thence UBS Warburg), the company
published one of my reports containing information pertaining to an extended shutdown of

the NYSE publicly traded U.S. mining company Freeport McMoran owned Grasberg mine in Indonesia. According to press reports at the time and other sources, the company was under investigation by the U.S. Department of State following eyewitness allegations it had been involved in the killing of indigenous protestors. A source indicated to me that there had been a confidential reprimand of the company by the U.S. Department of State following completion of an interim investigation into human rights and environmental abuses.

For the many years following the 1996 publication of information regarding the Freeport McMoran killings, I have had contact with multiple individuals who indicated that they were associated with the FBI and some who made reference to the Freeport McMoran matter.  As a result, I believe it is likely that the Bureau maintains information about me stemming from the 1996 report, related and potentially other matters. I have been approached by undercover agents/employees/others that work for or on behalf of the FBI and which include multiple meetings with each during various periods between 1996 and 2010.  In particular:

-  Michael Mills: the FBI agent who moved into my apartment in NYC and occupied it for several years when I sublet it before my return to Australia.

-  Kathleen Walton: former mining analyst at Merrill Lynch in NYC.

 -  Matthew Levey - Kroll Associates, Inc (New York City midtown office): consulting work case manager 2003 and 2004. Former State Department employee.

-  Jeffrey S Robards: corporate finance, formerly Ernst & Young (E&Y) NYC. Now working for C.W. Downer & Co - a boutique M&A firm in Boston. (http://www.cwdowner.com/index.php?option=com_content&view=article&id=42&Itemid=23)

-  Stephan Chenault and John Klotz: volunteers Sierra Club NYC Group since 1990s.

-  Ben Worden, Rob Haggerty and Allison Dey (Tucson area): FBI agents involved with Diamond Mountain Buddhist group in southern Arizona and California.

-  George Schneider and Livingston Sutro (Sierra Vista, AZ); Jennifer Conner (NYC): Associated with Diamond Mountain Buddhist group in southern Arizona.

-  Paul Whitby (Tucson): biologist.

-  Robert Schultz - Albuquerque based head hunter. MRC Mining Search. http://www.miningsearch.com/mining-search/our-team/

-  Steven D. Garber - (wife Andrea - collaborator) additional details: biologist; lived in Manhattan for much of the 1990s, before taking a two year posting to teach biology at Embry Riddle in Prescott, AZ. Books authored include The Urban Naturalist (New York.

John Wiley and Sons. 1987). PhD in Ecology, Environmental Sciences - Rutgers, The State University of New Jersey-Newark. B.S. in Natural Resources - Cornell University.

- Susan Ackerson Holmes (born 1962) - extensive interview in New York in 2003, former board member of the Sierra Club and subsequently an employee of the Sierra Club. Susan Holmes showed me her FBI identification card and identified herself as working for the FBI.

Please feel free to contact me at the e-mail address or telephone number indicated below if you wish to discuss this request.

Under penalty of perjury, I hereby declare that I am the person named above and I understand that any falsification of this statement is punishable under the provisions of Title 18, United States Code (U.S.C.), Section 1001 by a fine of not more than $10,000 or by imprisonment of not more than five years, or both; and that requesting or obtaining any record(s) under false pretenses is punishable under the provisions of Title 5, U.S.C., Section 552a(i)(3) as a misdemeanor and by a fine of not more than $5,000.

Sincerely,



John Wilson
███████████████
████████████████████
████████████

E:██████████████████████████
T:█████████████████



**U.S. Department of Justice**

Office of Information Policy

*Suite 11050*
*1425 New York Avenue, NW*
*Washington, DC 20530-0001*

*Telephone: (202) 514-3642*

Mr. John ████ Wilson
████████
████████
████████

Re:  Appeal No. AP-2015-00491
Request No. 1250235-001
CDT:MTC

**VIA:  Appeal Portal**

Dear Mr. Wilson:

You appealed from the action of the Federal Bureau of Investigation on your request for access to records concerning yourself.

After carefully considering your appeal, I am affirming the FBI's action on your request. In order to provide you with the greatest possible access to responsive records, your request was reviewed under both the Privacy Act of 1974 and the Freedom of Information Act.  I have determined that the records responsive to your request are exempt from the access provision of the Privacy Act.  See 5 U.S.C. § 552a(j)(2); see also 28 C.F.R. § 16.96 (2014).  For this reason, I have reviewed your appeal under the FOIA.

The FOIA provides for disclosure of many agency records.  At the same time, Congress included in the FOIA nine exemptions from disclosure that provide protection for important interests such as personal privacy, privileged communications, and certain law enforcement activities.  The FBI properly withheld certain information because it is protected from disclosure under the FOIA pursuant to:

5 U.S.C. § 552(b)(6), which concerns material the release of which would constitute a clearly unwarranted invasion of the personal privacy of third parties; and

5 U.S.C. § 552(b)(7)(C), which concerns records or information compiled for law enforcement purposes the release of which could reasonably be expected to constitute an unwarranted invasion of the personal privacy of third parties.

Furthermore, to the extent that your request seeks access to records that would either confirm or deny an individual's placement on any government watch list, the FBI properly refused to confirm or deny the existence of any records responsive to your request because the existence of such records is protected from disclosure pursuant to

- 2 -

5 U.S.C. § 552a(j)(2) & 5 U.S.C. § 552 (b)(7)(E). FOIA Exemption 7(E) concerns records or information compiled for law enforcement purposes the release of which would disclose techniques and procedures for law enforcement investigations or prosecutions. This response should not be taken as an indication that records do or do not exist. Rather, this is the standard response made by the FBI.

Finally, as to your appeal concerning the adequacy of the FBI's search for responsive records subject to the FOIA, I have determined that the FBI's response was correct and that it conducted an adequate, reasonable search for such records.

Please be advised that this Office's decision was made only after a full review of this matter. Your appeal was assigned to an attorney with this Office who thoroughly reviewed and analyzed your appeal, your underlying request, and the action of the FBI in response to your request.

If you are dissatisfied with my action on your appeal, the FOIA permits you to file a lawsuit in federal district court in accordance with 5 U.S.C. § 552(a)(4)(B).

For your information, the Office of Government Information Services (OGIS) offers mediation services to resolve disputes between FOIA requesters and Federal agencies as a non-exclusive alternative to litigation. Using OGIS services does not affect your right to pursue litigation. The contact information for OGIS is as follows: Office of Government Information Services, National Archives and Records Administration, Room 2510, 8601 Adelphi Road, College Park, Maryland 20740-6001; e-mail at ogis@nara.gov; telephone at 202-741-5770; toll free at 1-877-684-6448; or facsimile at 202-741-5769.

Sincerely,

2/23/2015

X _____

Christina D. Troiani, Attorney-Advisor for
Sean O'Neill, Chief, Administrative Appeals Staff
Signed by: CHRISTINA TROIANI



**Federal Bureau of Investigation**

*Washington, D.C. 20535*

October 29, 2019

MR. JOHN ██████ WILSON
████████████████████

FOIPA Request No.: 1450535-000
Subject: WILSON, JOHN ██████████

Dear Mr. Wilson:

This is in response to your Freedom of Information/Privacy Acts (FOIPA) request. Please see the paragraphs below for relevant information specific to your request as well as the enclosed FBI FOIPA Addendum for standard responses applicable to all requests.

Records regarding your subject were previously reviewed and released to you pursuant to the FOIPA. An additional search was conducted, and no additional records were located. Therefore, your request is being administratively closed.

Please refer to the enclosed FBI FOIPA Addendum for additional standard responses applicable to your request. **"Part 1"** of the Addendum includes standard responses that apply to all requests. **"Part 2"** includes additional standard responses that apply to all requests for records on individuals. **"Part 3"** includes general information about FBI records that you may find useful. Also enclosed is our Explanation of Exemptions.

For questions regarding our determinations, visit the www.fbi.gov/foia website under "Contact Us." The FOIPA Request number listed above has been assigned to your request. Please use this number in all correspondence concerning your request.

You may file an appeal by writing to the Director, Office of Information Policy (OIP), United States Department of Justice, Sixth Floor, 441 G Street, NW, Washington, D.C. 20001, or you may submit an appeal through OIP's FOIA online portal by creating an account on the following website: https://www.foiaonline.gov/foiaonline/action/public/home. Your appeal must be postmarked or electronically transmitted within ninety (90) days from the date of this letter in order to be considered timely. If you submit your appeal by mail, both the letter and the envelope should be clearly marked "Freedom of Information Act Appeal." Please cite the FOIPA Request Number assigned to your request so it may be easily identified.

You may seek dispute resolution services by contacting the Office of Government Information Services (OGIS). The contact information for OGIS is as follows: Office of Government Information Services, National Archives and Records Administration, 8601 Adelphi Road-OGIS, College Park, Maryland 20740-6001, e-mail at ogis@nara.gov; telephone at 202-741-5770; toll free at 1-877-684-6448; or facsimile at 202-741-5769. Alternatively, you may contact the FBI's FOIA Public Liaison by emailing foipaquestions@fbi.gov. If you submit your dispute resolution correspondence by email, the subject heading should clearly state "Dispute Resolution Services." Please also cite the FOIPA Request Number assigned to your request so it may be easily identified.

Sincerely yours,

David M. Hardy
Section Chief,
Record/Information
    Dissemination Section
Information Management Division

Enclosure

### FBI FOIPA Addendum

As referenced in our letter responding to your Freedom of Information/Privacy Acts (FOIPA) request, the FBI FOIPA Addendum includes information applicable to your request.  Part 1 of the Addendum includes standard responses that apply to all requests.  Part 2 includes additional standard responses that apply to all requests for records on individuals.  Part 3 includes general information about FBI records.  For questions regarding Parts 1, 2, or 3, visit the www.fbi.gov/foia website under "Contact Us."  Previously mentioned appeal and dispute resolution services are also available at the web address.

**Part 1: The standard responses below apply to all requests:**

(i) **5 U.S.C. § 552(c).**  Congress excluded three categories of law enforcement and national security records from the requirements of the FOIA [5 U.S.C. § 552(c) (2006 & Supp. IV (2010)].  FBI responses are limited to those records subject to the requirements of the FOIA.  Additional information about the FBI and the FOIPA can be found on the www.fbi.gov/foia website.

(ii) **National Security/Intelligence Records.**  The FBI can neither confirm nor deny the existence of national security and foreign intelligence records pursuant to FOIA exemptions (b)(1), (b)(3), and PA exemption (j)(2) as applicable to requests for records about individuals [5 U.S.C. §§ 552/552a (b)(1), (b)(3), and (j)(2); 50 U.S.C § 3024(i)(1)].  The mere acknowledgment of the existence or nonexistence of such records is itself a classified fact protected by FOIA exemption (b)(1) and/or would reveal intelligence sources, methods, or activities protected by exemption (b)(3) [50 USC § 3024(i)(1)].  This is a standard response and should not be read to indicate that national security or foreign intelligence records do or do not exist.

**Part 2: The standard responses below apply to all requests for records on individuals:**

(i) **Requests for Records about any Individual—Watch Lists.**  The FBI can neither confirm nor deny the existence of any individual's name on a watch list pursuant to FOIA exemption (b)(7)(E) and PA exemption (j)(2) [5 U.S.C. §§ 552/552a (b)(7)(E), (j)(2)].  This is a standard response and should not be read to indicate that watch list records do or do not exist.

(ii) **Requests for Records for Incarcerated Individuals.**  The FBI can neither confirm nor deny the existence of records which could reasonably be expected to endanger the life or physical safety of any incarcerated individual pursuant to FOIA exemptions (b)(7)(E), (b)(7)(F), and PA exemption (j)(2) [5 U.S.C. §§ 552/552a (b)(7)(E), (b)(7)(F), and (j)(2)].  This is a standard response and should not be read to indicate that such records do or do not exist.

**Part 3: General Information:**

(i) **Record Searches.** The Record/Information Dissemination Section (RIDS) searches for reasonably described records by searching those systems or locations where responsive records would reasonably be found.  A reasonable search normally consists of a search for main files in the Central Records System (CRS), an extensive system of records consisting of applicant, investigative, intelligence, personnel, administrative, and general files compiled and maintained by the FBI in the course of fulfilling law enforcement, intelligence, and administrative functions.  The CRS spans the entire FBI organization and encompasses the records of FBI Headquarters (FBIHQ), FBI Field Offices, and FBI Legal Attaché Offices (Legats) worldwide and includes Electronic Surveillance (ELSUR) records.  For additional information about our record searches visit www.fbi.gov/services/information-management/foipa/requesting-fbi-records.

(ii) **FBI Records.**  Founded in 1908, the FBI carries out a dual law enforcement and national security mission.  As part of this dual mission, the FBI creates and maintains records on various subjects; however, the FBI does not maintain records on every person, subject, or entity.

(iii) **Requests for Criminal History Records or Rap Sheets.**  The Criminal Justice Information Services (CJIS) Division provides Identity History Summary Checks – often referred to as a criminal history record or rap sheets.  These criminal history records are not the same as material in an investigative "FBI file."  An Identity History Summary Check is a listing of information taken from fingerprint cards and documents submitted to the FBI in connection with arrests, federal employment, naturalization, or military service.  For a fee, individuals can request a copy of their Identity History Summary Check.  Forms and directions can be accessed at www.fbi.gov/about-us/cjis/identity-history-summary-checks.  Additionally, requests can be submitted electronically at www.edo.cjis.gov.  For additional information, please contact CJIS directly at (304) 625-5590.

(iv) **The National Name Check Program (NNCP).**  The mission of NNCP is to analyze and report information in response to name check requests received from federal agencies, for the purpose of protecting the United States from foreign and domestic threats to national security.  Please be advised that this is a service provided to other federal agencies.  Private citizens cannot request a name check.

**EXPLANATION OF EXEMPTIONS**

**SUBSECTIONS OF TITLE 5, UNITED STATES CODE, SECTION 552**

(b)(1)    (A) specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and (B) are in fact properly classified to such Executive order;

(b)(2)    related solely to the internal personnel rules and practices of an agency;

(b)(3)    specifically exempted from disclosure by statute (other than section 552b of this title), provided that such statute (A) requires that the matters be withheld from the public in such a manner as to leave no discretion on issue, or (B) establishes particular criteria for withholding or refers to particular types of matters to be withheld;

(b)(4)    trade secrets and commercial or financial information obtained from a person and privileged or confidential;

(b)(5)    inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency;

(b)(6)    personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy;

(b)(7)    records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information ( A ) could reasonably be expected to interfere with enforcement proceedings, ( B ) would deprive a person of a right to a fair trial or an impartial adjudication, ( C ) could reasonably be expected to constitute an unwarranted invasion of personal privacy, ( D ) could reasonably be expected to disclose the identity of confidential source, including a State, local, or foreign agency or authority or any private institution which furnished information on a confidential basis, and, in the case of record or information compiled by a criminal law enforcement authority in the course of a criminal investigation, or by an agency conducting a lawful national security intelligence investigation, information furnished by a confidential source, ( E ) would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law, or ( F ) could reasonably be expected to endanger the life or physical safety of any individual;

(b)(8)    contained in or related to examination, operating, or condition reports prepared by, on behalf of, or for the use of an agency responsible for the regulation or supervision of financial institutions; or

(b)(9)    geological and geophysical information and data, including maps, concerning wells.

**SUBSECTIONS OF TITLE 5, UNITED STATES CODE, SECTION 552a**

(d)(5)    information compiled in reasonable anticipation of a civil action proceeding;

(j)(2)    material reporting investigative efforts pertaining to the enforcement of criminal law including efforts to prevent, control, or reduce crime or apprehend criminals;

(k)(1)    information which is currently and properly classified pursuant to an Executive order in the interest of the national defense or foreign policy, for example, information involving intelligence sources or methods;

(k)(2)    investigatory material compiled for law enforcement purposes, other than criminal, which did not result in loss of a right, benefit or privilege under Federal programs, or which would identify a source who furnished information pursuant to a promise that his/her identity would be held in confidence;

(k)(3)    material maintained in connection with providing protective services to the President of the United States or any other individual pursuant to the authority of Title 18, United States Code, Section 3056;

(k)(4)    required by statute to be maintained and used solely as statistical records;

(k)(5)    investigatory material compiled solely for the purpose of determining suitability, eligibility, or qualifications for Federal civilian employment or for access to classified information, the disclosure of which would reveal the identity of the person who furnished information pursuant to a promise that his/her identity would be held in confidence;

(k)(6)    testing or examination material used to determine individual qualifications for appointment or promotion in Federal Government service the release of which would compromise the testing or examination process;

(k)(7)    material used to determine potential for promotion in the armed services, the disclosure of which would reveal the identity of the person who furnished the material pursuant to a promise that his/her identity would be held in confidence.

FBI/DOJ

**From:** John Wilson ███████████████
**Sent:** Tuesday, 18 February 2020 1:00 PM
**To:** 'doj.oip.foia@usdoj.gov'
**Subject:** Freedom of Information Act Appeal - FOIPA Request No.: 1450535-000

**Freedom of Information Act Appeal - FOIPA Request No.: 1450535-000**

Hi,

I am appealing the above FOIA response.

The response, and previous responses to me from the FBI/DOJ have made no mention of the existence of interviews with me dating to 2003 and 2004 despite agents working for the FBI interviewing me in NYC, as well as at other times and locations. One of the agents involved in the 2003 interview in NYC, Susan Ackerson Holmes, showed me her FBI identity card, a NYC resident whom I am aware worked for the FBI from at least the early 1990s. I don't remember the name of her title. Dr Steve Garber of the FBI also interviewed me in NYC, among other occasions in 2004. Nor do I know the name of his title

I have previously named these individuals to the FBI/DOJ and the circumstances of their engagement with me. The FBI's response to my complaint and claims has always involved their misstatement of these people's identity as "employees" or "Special Agents". As such, the FBI and DOJ have never responded to my complaint about these people, as they repeatedly misclassify them and on that erroneous basis deny responsibility for or association with them. I have challenged them repeatedly on this previously and they failed to respond in all cases.

Never has the FBI or DOJ acknowledged or addressed the fact these people worked for them under different titles or job descriptions. And never has acknowledgement of these interviews been made evident through my FOIA requests which now the subject of my appeal.

The FBI/DOJ has withheld this information as requested in my FOIA and not acknowledged its existence. Nor have they claimed any exemption for doing so. I request that details of these interviews or more broadly the encounters between me and the identified individuals above and as identified in my FOIA request be provided to me - including confirmation of dates, locations and purpose.

Thank you.

Sincerely,

John Wilson



**U.S. Department of Justice**

Office of Information Policy

*Sixth Floor*
*441 G Street, NW*
*Washington, DC 20530-0001*

*Telephone: (202) 514-3642*

John Wilson

Re:  Appeal No. A-2020-00197
Request No. 1450535
CDT:PJA

**VIA:  Email**

Dear John Wilson:

    You appealed from the action of the Federal Bureau of Investigation on your Freedom of Information Act request for access to records concerning yourself. I note that your appeal concerns the adequacy of the FBI's search for records responsive to your FOIA request.

    After carefully considering your appeal, I am affirming FBI's action on your request.  The FBI informed you that it could locate no other responsive main file records subject to the FOIAother than those previously provided to you by letter dated September 25, 2014.  I have determined that the FBI's action was correct and that it conducted an adequate, reasonable search for such records.

    Please be advised that this Office's decision was made only after a full review of this matter. Your appeal was assigned to an attorney with this Office who thoroughly reviewed and analyzed your appeal, your underlying request, and the action of the FBI in response to your request.

If you are dissatisfied with my action on your appeal, the FOIA permits you to file a lawsuit in federal district court in accordance with 5 U.S.C. 552(a)(4)(B).

For your information, the Office of Government Information Services (OGIS) offers mediation services to resolve disputes between FOIA requesters and Federal agencies as a non-exclusive alternative to litigation. Using OGIS services does not affect your right to pursue litigation. The contact information for OGIS is as follows: Office of Government Information Services, National Archives and Records Administration, Room 2510, 8601 Adelphi Road, College Park, Maryland 20740-6001; email at ogis@nara.gov; telephone at 202-741-5770; toll free at 1-877-684-6448; or facsimile at 202-741-5769. If you have any questions regarding the action this Office has taken on your appeal, you may contact this Office's FOIA Public Liaison for your appeal. Specifically, you may speak with the undersigned agency official by calling (202) 514-3642.

Sincerely,

X_____
Christina D. Troiani

                 Associate Chief, for
Matthew Hurd, Acting Chief, Administrative
Appeals Staff

# EXHIBIT 6

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

JOHN WILSON,

        Plaintiff,

   – *versus* –

FEDERAL BUREAU OF
INVESTIGATION,

        Defendant.

No. 20 Civ. 10324 (LAK) (SDA)

---

      PLEASE TAKE NOTICE that upon the accompanying memorandum of law and the

declaration of Michael Seidel, Defendant by its attorney, Audrey Strauss, United States

Attorney for the Southern District of New York, hereby moves this Court for summary

judgment pursuant to Federal Rule of Civil Procedure 56.

 Dated: September 13, 2021
     New York, NY

                           Respectfully submitted,

                           AUDREY STRAUSS
                           United States Attorney for the
                           Southern District of New York

          By:     */s/ Alexander J. Hogan*
                     ALEXANDER J. HOGAN
                     Assistant United States Attorney
                     86 Chambers Street, 3rd Floor
                     New York, New York 10007
                     Tel:   (212) 637-2799
                     Fax:   (212) 637-2686
                     Email: alexander.hogan@usdoj.gov

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JOHN WILSON,

                    Plaintiff,

          -v-

FEDERAL BUREAU OF INVESTIGATION,

                    Defendant.

20 Civ. 10324 (LAK) (SDA)

# DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

AUDREY STRAUSS
United States Attorney
Southern District of New York
Counsel for Defendant
86 Chambers Street, 3rd Floor
New York, New York 10007
Telephone: (212) 637-2799
alexander.hogan@usdoj.gov

Of Counsel:

ALEXANDER J. HOGAN
Assistant United States Attorney

# TABLE OF CONTENTS

BACKGROUND ....................................................................................................1

ARGUMENT .......................................................................................................3

I.      Standard of Review...................................................................................3

II.     Standard as to Adequacy of the Search...................................................4

III.    Explanation of the FBI's Record System................................................5

        A.  Central Records System...................................................................6

        B.  The CRS General Indices and Indexing...........................................7

        C.  Automated Case Support System .....................................................7

        D.  ACS and Sentinel.............................................................................8

        E.  Electronic Surveillance Indices.....................................................10

IV.    Search Procedures.................................................................................10

V.     Searches for Records Responsive to Plaintiff's Requests......................11

        A.  First Request..................................................................................11

        B.  Second Request...............................................................................11

        C.  Third Request.................................................................................12

VI.    The FBI's Search Was Adequate...........................................................13

CONCLUSION...................................................................................................14

# TABLE OF AUTHORITIES

Page(s)

Cases

*Adamowicz v. I.R.S.*,
    552 F. Supp. 2d 355 (S.D.N.Y. 2008) ................................................................. 5

*Carney v. DOJ*,
    19 F.3d 807 (2d Cir. 1994) .......................................................................... 3, 4, 5

*CIA v. Sims*,
    471 U.S. 159 (1985) ...................................................................................... 3

*Dep't of the Interior v. Klamath Water Users Protective Ass'n*,
    532 U.S. 1 (2001) ......................................................................................... 3

*Ferguson v. FBI*,
    No. 89 Civ. 5071 (RPP), 1995 WL 329307 (S.D.N.Y. June 1, 1995) ........................ 4

*Garcia v. U.S. Dep't of Justice*,
    181 F. Supp. 2d 356 (S.D.N.Y. 2002) .............................................................. 5

*Grand Cent. P'ship, Inc. v. Cuomo*,
    166 F.3d 473 (2d Cir. 1999) ...................................................................... 4, 13

*Halpern v. FBI*,
    181 F.3d 279 (2d Cir. 1999) ......................................................................... 4

*Hedrick v. FBI*,
    216 F. Supp. 3d 84 (D.D.C. 2016) ................................................................ 13

*John Doe Agency v. John Doe Corp.*,
    493 U.S. 146 (1989) ...................................................................................... 3

*Judicial Watch, Inc. v. Export-Import Bank*,
    108 F. Supp. 2d 19 (D.D.C. 2000) .................................................................. 4

*Lardner v. FBI*,
    852 F. Supp. 2d 127 (D.D.C. 2012) ............................................................... 13

*Long v. Off. of Pers. Mgmt.*,
    692 F.3d 185 (2d Cir. 2012) .......................................................................... 4

*Martin v. DOJ*,
    488 F.3d 446 (D.C. Cir. 2007) ....................................................................... 3

*Maynard v. CIA*,
   986 F.2d 547 (1st Cir. 1993) ....................................................................... 5

*N.Y. Times Co. v. U.S. Dep't of Justice*,
   756 F.3d 100 (2d Cir. 2014) ................................................................. 4, 13

*New York Times Co. v. DOJ*,
   872 F. Supp. 2d 309 (S.D.N.Y. 2012) ................................................. 3, 4

*New York Times Co. v. DOJ*,
   915 F. Supp. 2d 508 (S.D.N.Y. 2013) ...................................................... 3

*Smith v. FBI*,
   448 F. Supp. 2d 216 (D.D.C. 2006) ....................................................... 13

*Willis v. FBI*,
   No. 17-cv-1959 (KBJ), 2019 WL 2138036 (D.D.C. May 16, 2019) ...................... 13

*Wilner v. NSA*,
   592 F.3d 60 (2d Cir. 2009) ....................................................................... 4

**Statutes**

5 U.S.C. § 552 .......................................................................................... 1, 3

**Rules**

Fed. R. Civ. P. 56(a) ................................................................................... 4

Defendant the Federal Bureau of Investigation ("FBI"), respectfully submits this memorandum of law in support of its motion for summary judgment in this action brought by Plaintiff John Wilson pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552.

## BACKGROUND

On June 14, 2013, Plaintiff submitted a request under the Freedom of Information and Privacy Acts ("FOIPA") to Defendant seeking all records pertaining to himself ("First Request"). Declaration of Michael G. Seidel ("Seidel Decl.") at ¶ 6, Ex. A. Defendant informed Plaintiff that it could not locate responsive records, but noted that an additional search could be conducted if Plaintiff provided additional information about the subject that he believed was of investigative interest to the FBI. *Id*. at ¶ 7, Ex. B.

By letter dated March 26, 2014, Plaintiff submitted a second request seeking agency records "concerning, naming, or relating to" Plaintiff. Cmpl. at ¶ 8 ("Second Request"); *see also* Seidel Decl. at ¶ 8, Ex. C. The Second Request provided the additional information referred to above, including his work history and specific details regarding the subject that he believed was of investigative interest to the FBI. *Id*. The Second Request stated that Plaintiff was a "mining company equity analyst on Wall Street from 1994 to 1998." *See* Dkt. No. 1-1 at 1. "In 1996 . . . [Plaintiff's employer] published one of [his] reports containing information pertaining to an extended shutdown of the NYSE publicly traded U.S. mining company Freeport McMoran owned Grasberg mine in Indonesia." *Id*. at 1-2. "According to press reports at the time and other sources, the company was under investigation . . . following eyewitness allegations it had been involved in the killing of indigenous protestors." *Id*. at 2. Plaintiff claimed that "[f]or the many years following the 1996 publication of information regarding the Freeport McMoran killings, [he has] had contact with multiple individuals who indicated that they were associated with the FBI and

some who made reference to the Freeport McMoran matter." *Id*. On this basis, Plaintiff stated that he believes "it is likely that the Bureau maintains information about [him] stemming from the 1996 report, related and potentially other matters." *Id*. Plaintiff stated that he has "been approached by undercover agents/employees/others that work for or on behalf of the FBI and which include multiple meetings with each during various periods between 1996 and 2010." *Id*. Plaintiff listed, in the Second Request, the names of 16 individuals, some of whom Plaintiff stated are FBI employees. Others on the list, however, Plaintiff did not identify as being associated with the FBI. *Id*. at 2-3.

In response to the Second Request, the FBI conducted a search, reviewed 21 pages of records, and released 10 of those pages either in full or with redactions. Seidel Decl. at ¶ 10, Ex. E. Plaintiff believes that this response was inadequate because the FBI did not locate records with respect to the listed individuals that he allegedly interacted with over the time period described in the Second Request. Cmpl. at ¶¶ 11-12. On November 6, 2014, Plaintiff appealed the FBI's adjudication of the Second Request to the Department of Justice Office of Information Policy ("OIP") and disputed the adequacy of the FBI's search. Seidel Decl. at ¶ 11, Ex. F. OIP sent Plaintiff a letter dated February 23, 2015, affirming the actions taken by the FBI. Seidel Decl. at ¶ 13, Ex. H.

On October 23, 2019, Plaintiff submitted a third FOIA request ("Third Request"). *See* Seidel Decl. at ¶ 14, Ex. I. Again, Plaintiff sought records concerning himself. By letter dated October 29, 2019, the FBI responded by stating that records relating to Plaintiff had already been searched for and released in response to the Second Request, and that an additional search did not yield any further records. *Id*. at ¶ 15; Ex. J. Plaintiff submitted an appeal to OIP on February 17,

2020, again disputing the adequacy of the search. *Id*. at ¶ 16, Ex. K. On March 20, 2020, OIP affirmed the actions taken by the FBI. *Id*. at ¶ 18, Ex. M.

Plaintiff then filed this action on December 8, 2020. Defendant answered the Complaint on March 15, 2021. *See* Dkt. No. 13. On April 26, 2021, the parties informed the Court that Plaintiff intended to challenge the adequacy of the FBI's search and proposed a summary judgment briefing schedule to the Court, which the Court approved on April 27, 2021. *See* Dkt. Nos. 17-18.

## ARGUMENT

## I. Standard of Review

The Freedom of Information Act, 5 U.S.C. § 552, represents a balance struck by Congress "'between the right of the public to know and the need of the Government to keep information in confidence . . . .'" *John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 152 (1989) (quoting H.R. Rep. 89-1497, 89th Cong., 2d Sess. 6 (1966)); *New York Times Co. v. DOJ*, 872 F. Supp. 2d 309, 314 (S.D.N.Y. 2012). Thus, while FOIA requires disclosure under certain circumstances, the statute recognizes "that public disclosure is not always in the public interest," *CIA v. Sims*, 471 U.S. 159, 166-67 (1985), and mandates that records need not be disclosed if "the documents fall within [the] enumerated exemptions." *Dep't of the Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 7 (2001); *see also Martin v. DOJ*, 488 F.3d 446, 453 (D.C. Cir. 2007) ("Recognizing, however, that the public's right to information was not absolute and that disclosure of certain information may harm legitimate governmental or private interests, Congress created several exemptions to FOIA disclosure requirements.") (internal quotations omitted); *John Doe Agency*, 493 U.S. at 152 (FOIA exemptions are "intended to have meaningful reach and application").

Most FOIA actions are resolved by summary judgment. *See, e.g., Carney v. DOJ*, 19 F.3d 807, 812 (2d Cir. 1994); *New York Times Co. v. DOJ*, 915 F. Supp. 2d 508, 531 (S.D.N.Y. 2013).

Summary judgment is warranted if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In FOIA cases, the government meets its burden of demonstrating that it properly withheld documents if it produces declarations "giving reasonably detailed explanations why any withheld documents fall within an exemption are sufficient to sustain the agency's burden." *Carney*, 19 F.3d at 812. An agency's declarations in support of its withholdings are "accorded a presumption of good faith." *Id.*; *see also Halpern v. FBI*, 181 F.3d 279, 295 (2d Cir. 1999). "[A]n agency's justification for invoking a FOIA exemption is sufficient if it appears logical or plausible." *Wilner v. NSA*, 592 F.3d 60, 73 (2d Cir. 2009) (citation and internal quotation marks omitted).[1]

## II.    Standard as to Adequacy of the Search

"In order to prevail on a motion for summary judgment in a FOIA case, the defending agency has the burden of showing that its search was adequate." *Long v. Off. of Pers. Mgmt.*, 692 F.3d 185, 190 (2d Cir. 2012) (quoting *Carney*, 19 F.3d at 812). A search is judged by the efforts the agency undertook, not by its results. *See Grand Cent. P'ship, Inc. v. Cuomo*, 166 F.3d 473, 489 (2d Cir. 1999). In other words, the agency must simply demonstrate that its search was "reasonably calculated to discover the requested documents." *Id.*; *see also N.Y. Times Co. v. U.S. Dep't of Justice*, 756 F.3d 100, 124 (2d Cir. 2014) ("The adequacy of a search is not measured by its results, but rather by its method."). The search "need not be perfect, but rather need only be reasonable," *Grand Cent. P'ship*, 166 F.3d at 489, because "FOIA was not intended to reduce government agencies to full-time investigators on behalf of requesters." *Judicial Watch, Inc. v.*

---

[1] Defendant has not submitted a Local Rule 56.1 statement, as "the general rule in this Circuit is that in FOIA actions, agency affidavits alone will support a grant of summary judgment," and a Local Rule 56.1 statement "would be meaningless." *Ferguson v. FBI*, No. 89-cv-5071 (RPP), 1995 WL 329307, at *2 (S.D.N.Y. June 1, 1995), *aff'd*, 83 F.3d 41 (2d Cir. 1996); *New York Times*, 872 F. Supp. 2d at 314 (noting Local Civil Rule 56.1 statement not required in FOIA actions in this Circuit).

*Export-Import Bank*, 108 F. Supp. 2d 19, 27 (D.D.C. 2000) (citation omitted). An agency's search may be reasonable even if it does not return every responsive document. *See Adamowicz v. IRS*, 552 F. Supp. 2d 355, 361 (S.D.N.Y. 2008). "If an agency demonstrates that it has conducted a reasonable search for relevant documents, it has fulfilled its obligations under FOIA and is entitled to summary judgment on this issue." *Garcia v. U.S. Dep't of Justice*, 181 F. Supp. 2d 356, 366 (S.D.N.Y. 2002). An agency may satisfy its burden of demonstrating an adequate search through "[a]ffidavits or declarations supplying facts indicating that the agency has conducted a thorough search." *Carney*, 19 F.3d at 812 (footnote omitted). Such declarations may be made by the individuals supervising each agency's search, rather than by each individual who participated. *Id.* at 814. Where an agency's declaration demonstrates that it has conducted a reasonable search, "the FOIA requester can rebut the agency's affidavit only by showing that the agency's search was not made in good faith." *Maynard v. CIA*, 986 F.2d 547, 560 (1st Cir. 1993); *see also Carney*, 19 F.3d at 812. "[P]urely speculative claims about the existence and discoverability of other documents" are insufficient to overcome the good faith presumption. *Carney*, 19 F.3d at 813. Thus, a court may award summary judgment if the affidavits provided by the agency are "adequate on their face." *Id.* at 812.

## III.    Explanation of the FBI's Records System

The systems by which the FBI locates records have changed over time and evolved with the advancement of technology, as discussed herein. In order to support its law enforcement and intelligence gathering functions, the FBI employs an index search methodology to retrieve investigative and other types of records. Specifically, individuals, organizations, events, and other subjects of investigative interest are indexed such that information about them can be easily retrieved in the future. The information below explains the various systems the FBI uses and has

used to locate records in its principal records system, the Central Records System ("CRS"), in response to FOIPA requests.

## A. Central Records System

In response to FOIPA requests, the FBI conducts a search of the CRS—its principal records system. The CRS is an extensive system of records consisting of applicant, investigative, intelligence, personnel, administrative, and general files compiled and maintained by the FBI in the course of fulfilling its mission and integrated functions as a law enforcement, counterterrorism, and intelligence agency. The CRS spans the entire FBI organization and encompasses the records of FBI Headquarters ("FBIHQ"), FBI field offices, and FBI legal attaché offices ("legats") worldwide. *See* Seidel Decl. at ¶ 21.

The CRS consists of a numerical sequence of files, called FBI "classifications," which are organized according to designated subject categories. The broad array of CRS file classification categories includes types of criminal conduct and investigations conducted by the FBI, as well as categorical subjects pertaining to counterterrorism, intelligence, counterintelligence, personnel, and administrative matters. For identification and retrieval purposes across the FBI, when a case file is opened, it is assigned a universal case file number ("UCFN") consisting of three sequential components: (a) the CRS file classification number, (b) the abbreviation of the FBI office of origin ("OO") initiating the file, and (c) the assigned individual case file number for that particular subject matter.[2] Within each case file, pertinent documents of interest are "serialized," or assigned a document number in the order in which the document is added to the file, typically in chronological

---

[2] For example, in fictitious file number "11Z-HQ-56789," "11Z" indicates the file classification, "HQ" indicates that FBI Headquarters is the FBI OO of the file, and "56789" is the assigned case specific file number.

order.  *Id*. at ¶ 22.

### B.  The CRS General Indices and Indexing

The general indices to the CRS are the index or "key" to locating records within the enormous amount of information contained in the CRS.  The CRS is indexed in a manner which meets the FBI's investigative needs and priorities and allows FBI personnel to reasonably and adequately locate pertinent files in the performance of their law enforcement duties.  The general indices are arranged in alphabetical order and comprise an index on a variety of subjects to include individuals, organizations, events, and other subjects of investigative interest that are indexed for future retrieval.  *See* Seidel Decl. at ¶ 23.  The entries fall into two categories:

A:  <u>Main entry</u>.  A main index entry is created for each individual or non-individual that is the subject or focus of an investigation.  Main subjects are identified in the case title of a file.

B.  <u>Reference entry</u>.  A reference index entry is created for an individual or non-individual associated with an investigation, but who is not the main subject or focus of the investigation.  Reference subjects are typically not identified in the case title of a file.  *Id*.

FBI employees may index information in the CRS by individual (persons), by organization (entities, places, and things), and/or by event (*e.g.,* a terrorist attack or bank robbery).  Indexing information in the CRS is done at the discretion of FBI investigators when information is deemed of sufficient significance to warrant indexing for future retrieval.  *Id*. at ¶ 24.  Accordingly, the FBI does not index every individual name or other subject in the general indices.  *Id*.

### C.  Automated Case Support System

The Automated Case Support system ("ACS") was an electronic, integrated case management system that became effective for FBIHQ and all FBI field offices and legats on October 1, 1995.  As part of the ACS implementation process, over 105 million CRS records were

converted from automated systems previously utilized by the FBI into a single, consolidated case management system accessible by all FBI offices. ACS had an operational purpose and design to enable the FBI to locate, retrieve, and maintain information in its files in the performance of its mission and myriad functions. Seidel Decl. at ¶ 25.

The Universal Index ("UNI") was the automated index of the CRS, searchable via ACS. It provided all offices of the FBI with a centralized, electronic means of indexing pertinent investigative information into FBI files for future retrieval via index searching. Individual names were recorded with applicable identifying information, such as date of birth, race, sex, locality, social security number, address, and/or date of an event. ACS implementation built upon and incorporated prior automated FBI indices; therefore, a search employing the UNI application of ACS encompassed data indexed in the automated systems superseded by ACS. As such, a UNI index search in ACS could locate FBI records in both paper and electronic formats created before its 1995 FBI-wide implementation. *Id*. at ¶ 26.

### D. ACS and Sentinel

Sentinel is the FBI's next generation case management system that became effective FBI-wide on July 1, 2012. Sentinel provides a web-based interface to FBI users and includes the same automated applications that were utilized in ACS. After July 1, 2012, all FBI generated records are created electronically in case files via Sentinel; however, Sentinel did not replace the relevance of ACS as an important FBI search mechanism. Just as pertinent information was indexed into UNI for records generated in ACS before July 1, 2012, when a record is generated in Sentinel, information is indexed for future retrieval. Seidel Decl. at ¶ 27.

On August 1, 2018, ACS was decommissioned and ACS data migrated into Sentinel, including the ACS indices data and digitized investigative records formerly available in ACS.

Sentinel retains the index search methodology and function whereby the CRS is queried, now via Sentinel, for pertinent indexed main and reference entries in case files. All CRS index data from the UNI application previously searched via ACS is now searched through the "ACS Search" function within Sentinel. *Id.* at ¶ 28.

ACS was still operational at the time of Plaintiff's First and Second Requests, but not his Third Request. At the time when ACS was still operational, the FBI's Record/Information Dissemination Section ("RIDS") that handles FOIPA requests would begin its FOIPA searching efforts by conducting an index search via the UNI application in ACS. If records were reasonably expected to have been created on or after July 1, 2012, RIDS would then conduct an index search of Sentinel records to ensure it captured all relevant data indexed after the implementation of Sentinel. Since August 1, 2018, when ACS was decommissioned, upon receipt of a FOIPA request where the subject matter predates the implementation of Sentinel, RIDS generally begins its FOIPA searching efforts by conducting index searches via the "ACS Search" function in Sentinel. RIDS then builds on its ACS index search by conducting an index search of Sentinel records to ensure it captures all relevant data indexed after the implementation of Sentinel. A search of the CRS automated indices, available within Sentinel and via the ACS search function in Sentinel, in most cases, represents the most reasonable means for the FBI to locate records potentially responsive to FOIPA requests. This is because the automated indices provide access to a comprehensive, agency-wide set of indexed data on a wide variety of investigative and administrative subjects. Currently, the automated indices consist of millions of searchable records and are updated daily with material newly indexed in Sentinel. *Id.* at ¶ 29.

In short, the FBI maintains records in the CRS. These records can be searched via an index search methodology. Prior to 2012, this occurred by searching the Universal Index in ACS. After

2012, the same index search methodology is employed, except it is now conducted via Sentinel—the case management system that superseded ACS.

### E. Electronic Surveillance Indices

The electronic surveillance ("ELSUR") indices comprise records related to electronic surveillance sought, administered, and/or conducted by the FBI. The ELSUR indices include records of: (a) targets of electronic surveillance obtained pursuant to court order, consensual monitoring, or other authority; (b) owners, lessors, or licensors of the premises where the FBI conducted electronic surveillance; (c) and individuals identified as participants of recorded communications. The ELSUR indices is a separate system of records, but this does not mean that the data housed within the ELSUR indices is not also available in the CRS, because targets of electronic surveillance are also indexed in the CRS. Electronic surveillance is an investigative technique pursued in furtherance of FBI investigations and the opening of an investigation (and subsequent indexing of targets of the investigation) would be a prerequisite to the initiation of electronic surveillance. Thus, searches of the CRS, employing the UNI application of ACS or the Sentinel indices and ACS indices available through Sentinel, are reasonably expected to locate records relating to electronic surveillance. Seidel Decl. at ¶ 31.

## IV. Search Procedures

As explained above, to locate CRS information, the FBI employs an index search methodology. Index searches of the CRS are reasonably expected to locate responsive material within the vast CRS since the FBI indexes pertinent information into the CRS to facilitate retrieval to serve its law enforcement and intelligence gathering functions. Given the broad range of indexed material in terms of both time frame and subject matter that it can locate in FBI files, a search of the automated indices available through Sentinel (including through the ACS search function in Sentinel) is the mechanism the FBI employs to conduct CRS index searches. Seidel

10

Decl. at ¶ 38.

Also as noted above, the entries in the indices fall into two categories—main entries and reference entries. *See supra* at 7. The FBI's policy is to search for and identify only main files responsive to most FOIPA requests at the administrative stage. *Id.* at ¶ 37. In response to the filing of a complaint, including Plaintiff's Complaint, the FBI generally conducts an additional search of the CRS to locate any "reference" material, including reference files, responsive to a plaintiff's request. *Id.*

## V. Searches for Records Responsive to Plaintiff's Requests

### A. First Request

In response to Plaintiff's First Request, RIDS conducted a CRS index search for potentially responsive records employing the UNI application of ACS using the search terms "John C Wilson" and "John Wilson." Seidel Decl. at ¶ 40. As a result of this search effort, RIDS located one reference file. *Id.* However, as noted above, because RIDS's policy, generally, is to identify only main files responsive to a FOIPA request at the administrative stage, because Plaintiff did not ask for reference files in the First Request letter, and because Plaintiff failed to provide information in the First Request letter that could have allowed RIDS to determine that the reference file was responsive, that one identified reference file was not processed. *Id.*

### B. Second Request

In response to Plaintiff's Second Request, which contained detailed information regarding the subject matter that the Plaintiff believed was of investigative interest to the FBI (*see supra* at 1), RIDS conducted a CRS index search for potentially responsive records employing the UNI application of ACS using the search terms "John Christian Wilson," "John C Wilson," and "John Wilson." Seidel Decl. at ¶ 41. As a result of this search effort, RIDS located one reference file

11

determined to be responsive to Plaintiff's request.[3] *Id.* RIDS reviewed 21 pages of records and released 10 of those pages either in full or with redactions. *Id.* at ¶ 10.

### C. Third Request

In response to Plaintiff's Third Request, RIDS conducted a CRS index search for potentially responsive records employing the Sentinel indices and ACS indices available through Sentinel using the search term "John Wilson."[4] Seidel Decl. at ¶ 42. As a result of this search effort, RIDS did not locate any additional records beyond what was identified with respect to the Second Request. *Id.* However, after the filing of the Complaint, due to a change in RIDS's policy as to the review of duplicate pages, the FBI reviewed one additional page of records and released five additional pages as compared to the FBI's response to Plaintiff's Second Request. *See id.* at ¶ 4.

Therefore, in total, the searches the FBI performed in response to the three requests and after the Complaint was filed, identified one reference file resulting in the review of 22 pages of records, of which the FBI released 15 pages in full or in part. *Id.* The reference file located concerned a complaint that Plaintiff had made to the Department of Justice's Office of the Inspector General ("OIG"). *Id.* at ¶ 45. Specifically, Plaintiff complained of alleged misconduct by FBI employees. *See* Dkt. No. 1-3 at 8. The reference file at issue was opened after the OIG forwarded Plaintiff's allegation of misconduct to the FBI's Inspection Division. *See* Seidel Decl.

---

[3] RIDS located the same reference file that was found in the search effort for the First Request. However, this reference file was released at this time because, in the Second Request, Plaintiff asked for the identification of both main and reference files and because Plaintiff provided additional information that allowed RIDS to assess the responsiveness of the reference file. Seidel Decl. at ¶ 41.

[4] An automated search of the Sentinel indices incorporates multiple variations of the search term including: first and last names; first name, middle initial, and last name; and first, middle, and last names, as well as spelling variations. Seidel Decl. at ¶ 42, n.15.

at ¶ 45.  Ultimately, the FBI determined that Plaintiff's allegations were not credible and closed the matter.  *See* Dkt. No. 1-3 at 2.

## VI.      The FBI's Search Was Adequate

The searches described above were "reasonably calculated to discover the requested documents."  *See Grand Cent. P'ship, Inc.*, 166 F.3d at 489; *see also N.Y. Times Co.*, 756 F.3d at 124 ("The adequacy of a search is not measured by its results, but rather by its method.").  The FBI identified the system of records reasonably likely to contain responsive records—the Central Records System, and searched the CRS using its index search methodology.  The CRS is where the FBI indexes information about individuals, organizations, and other subjects of investigative interest for future retrieval.  *See supra* at 6.  Given Plaintiff's requests sought information about himself, such information would reasonably be expected to be located in the CRS and discoverable via the index search methodology.  Additionally, in this case, any responsive records or information within the ELSUR indices would be duplicative of information located using the ACS indices and the Sentinel indices, *see supra* at 10.  Thus, a search of the Sentinel indices and ACS indices available in Sentinel also accomplished the task of locating any responsive records in the ELSUR indices.  The adequacy of this search is supported by the fact that the search did, indeed, return results with respect to Plaintiff and the same results were returned each time the search was conducted.  Accordingly, the FBI's search was adequate.  *See, e.g., Willis v. FBI*, No. 17-cv-1959 (KBJ), 2019 WL 2138036, at *6 (D.D.C. May 16, 2019) (search adequate based upon FBI's search of the CRS); *Hedrick v. FBI*, 216 F. Supp. 3d 84, 93-94 (D.D.C. 2016) ("[T]his Court is persuaded that the FBI's index searches of the CRS using variations of [plaintiff's] name and identifying information about him were reasonably calculated to locate any information indexed to [plaintiff]."); *Lardner v. FBI*, 852 F. Supp. 2d 127, 135 (D.D.C. 2012) (search adequate based upon search of the CRS); *Smith v. FBI*, 448 F. Supp. 2d 216, 221 (D.D.C. 2006) (FBI search

13

adequate where it used requester's name to search for investigatory files in the CRS).

## CONCLUSION

For the reasons stated herein, Defendant's motion for summary judgment should be

granted in its entirety.

Dated: September 13, 2021
   New York, New York

              Respectfully submitted,

              AUDREY STRAUSS
              United States Attorney
              Southern District of New York

By:  */s/ Alexander J. Hogan*
              ALEXANDER J. HOGAN
              Assistant United States Attorney
              86 Chambers Street, Third Floor
              New York, New York 10007
              Telephone: (212) 637-2799
              Facsimile: (212) 637-2686
              E-mail: alexander.hogan@usdoj.gov