# EXHIBIT K-4

# EXHIBIT 7

UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK

JOHN WILSON,

    Plaintiff,

              v.

FEDERAL BUREAU OF INVESTIGATON,

    Defendant.

Civil Action No. 20-cv-10324-LAK-SDA

## DECLARATION OF MICHAEL G. SEIDEL

I, Michael G. Seidel, declare as follows:

(1)    I am the Section Chief of the Record/Information Dissemination Section ("RIDS"), Information Management Division ("IMD"), Federal Bureau of Investigation ("FBI"), Winchester, Virginia. I joined the FBI in September 2011, and prior to my current position, I was the Assistant Section Chief of RIDS from June 2016 to July 2020; Unit Chief, RIDS Litigation Support Unit, from November 2012 to June 2016; and an Assistant General Counsel, FBI Office of the General Counsel, Freedom of Information Act ("FOIA") Litigation Unit, from September 2011 to November 2012. In those capacities, I had management oversight or agency counsel responsibility for FBI FOIA and Privacy Act ("FOIPA") litigation cases nationwide. Prior to joining the FBI, I served as a Senior Attorney, U.S. Drug Enforcement Administration ("DEA"), from September 2006 to September 2011, where among myriad legal responsibilities, I advised on FOIPA matters and served as agency counsel representing the DEA in FOIPA suits nationwide. I also served as a U.S. Army Judge Advocate General's Corps Officer in various

1

assignments from 1994 to September 2006 culminating in my assignment as Chief, General Litigation Branch, U.S. Army Litigation Division, where I oversaw FOIPA litigation for the U.S. Army. I am an attorney licensed in the State of Ohio and the District of Columbia.

(2)     In my official capacity as Section Chief of RIDS, I supervise approximately 238 FBI employees, supported by approximately 86 contractors, who staff a total of ten (10) Federal Bureau of Investigation Headquarters ("FBIHQ") units and two (2) field operational service center units whose collective mission is to effectively plan, develop, direct, and manage responses to requests for access to FBI records and information pursuant to the FOIA as amended by the OPEN Government Act of 2007, the OPEN FOIA Act of 2009, and the FOIA Improvement Act of 2016; the Privacy Act of 1974; Executive Order 13526; Presidential, Attorney General, and FBI policies and procedures; judicial decisions; and Presidential and Congressional directives. The statements contained in this declaration are based upon my personal knowledge, upon information provided to me in my official capacity, and upon conclusions and determinations reached and made in accordance therewith.

(3)     Because of the nature of my official duties, I am familiar with the procedures followed by the FBI in responding to requests for information from its files pursuant to the provisions of the FOIA, 5 U.S.C. § 552, and the Privacy Act, 5 U.S.C. § 552a. Specifically, I am aware of the FBI's handling of Plaintiff's Freedom of Information/Privacy Act requests for records pertaining to himself.

(4)     In response to Plaintiff's three requests, the FBI processed a total of 22 pages[1] of

---

[1] In response to Plaintiff's second FOIPA request, FOIPA Request Number I250235-001, the FBI reviewed 21 pages of responsive records subject to the FOIPA. However, after Plaintiff filed the complaint in this litigation, the FBI reviewed 22 pages of responsive records because of an intervening update to RIDS's policy pertaining to the review of duplicate pages. *See* footnote 8.

responsive records subject to the FOIPA. Of these pages, the FBI released eight (8) pages in their entirety, released seven (7) pages in part, and withheld seven (7) pages in full, two (2) of which were duplicates of pages accounted for elsewhere in the FBI's production. The FBI submits this declaration in support of Defendant's Motion for Summary Judgment. It provides the Court with a brief summary of the administrative history of Plaintiff's requests; a description of the FBI's recordkeeping system; and the procedures used to search for records responsive to Plaintiff's requests.

(5)     By electronic mail ("email") dated July 27, 2021, Plaintiff's counsel represented to the United States Attorney's Office for the Southern District of New York that Plaintiff would not challenge the FBI's withholdings of records or portions of information within records. Therefore, the FBI's justification for withholding records or portions of information within records is not set forth herein.

## ADMINISTRATIVE HISTORY OF PLAINTIFF'S REQUESTS
### FOIPA Request Number 1250235-000

(6)     By letter dated June 14, 2013, Plaintiff submitted a FOIPA request to the FBI seeking any and all records pertaining to himself. **(Ex. A.)**

(7)     By letter dated January 29, 2014, the FBI advised Plaintiff that it assigned his request FOIPA Request Number 1250235-000. Additionally, the FBI advised that it conducted a search of the Central Records System ("CRS"), but was unable to identify any main file records responsive to Plaintiff's request. Therefore, the FBI administratively closed the request. However, the FBI advised that an additional search could be conducted if Plaintiff provided additional information pertaining to the subject that he believed was of investigative interest to the FBI. The FBI also advised Plaintiff that, per standard FBI practice and pursuant to Privacy Act Exemption (j)(2) and FOIA Exemption (b)(7)(E) (5 U.S.C. § 552a(j)(2) and 5 U.S.C. §

3

552(b)(7)(E), respectively), its response neither confirmed nor denied the existence of Plaintiff's name on any watch lists. Finally, the FBI advised Plaintiff that he could appeal the FBI's response to the Department of Justice ("DOJ"), Office of Information Policy ("OIP"), within sixty (60) days of the date of its letter. **(Ex. B.)**

FOIPA REQUEST NUMBER 1250235-001

(8)     By email dated March 25, 2014, Plaintiff submitted a second FOIPA request to the FBI seeking any and all records pertaining to himself. By letter dated March 26, 2014, attached to the email, Plaintiff provided specific information concerning himself, including his full name, date of birth, place of birth, social security number, and work history, to assist the FBI in its efforts to locate records responsive to the request. Plaintiff also provided suggestions as to where the FBI should search for responsive records, including the FBI's electronic surveillance ("ELSUR") indices and the FBI's Electronic Case File ("ECF"), and he provided a certification of his identity.[2] **(Ex. C.)**

(9)     By letter dated May 6, 2014, the FBI acknowledged receipt of Plaintiff's request and notified Plaintiff that it had assigned the request FOIPA Request Number 1250235-001. The FBI informed Plaintiff that he could check the status of the request at www.fbi.gov/foia. **(Ex. D.)**

(10)     By letter dated September 25, 2014, the FBI advised Plaintiff that it had reviewed 21 pages and released 10 pages in full or in part. Exempt material was withheld pursuant to

---

[2] By email dated March 25, 2014, to the FBI Public Information Officer ("PIO"), Plaintiff provided a certification of his identity in the form of a U.S. Department of Justice Certification of Identity form (form DOJ-361). At this time, the FBI is unable to locate Plaintiff's completed form DOJ-361.

4

Privacy Act Exemption (j)(2)[3] and FOIA Exemptions (b)(6) and (b)(7)(C). The FBI also advised
Plaintiff that he could appeal the FBI's response to DOJ OIP within sixty (60) days of the date of
its letter. **(Ex. E.)**

(11)     By letter dated November 6, 2014, Plaintiff submitted an appeal to DOJ OIP
challenging the adequacy of the FBI's search for responsive records. **(Ex. F.)**

(12)     By letter dated November 6, 2014, OIP acknowledged receipt of Plaintiff's appeal
and advised Plaintiff that it assigned appeal number AP-2015-00491 to the appeal. **(Ex. G.)**

(13)     By letter sent via the appeal portal[4] to Plaintiff on February 23, 2015, OIP advised
Plaintiff that it was affirming the FBI's actions in response to Plaintiff's FOIPA Request Number
1250235-001, and, therefore, OIP was closing Plaintiff's appeal. Additionally, OIP advised
Plaintiff that the FBI properly conducted an adequate and reasonable search for responsive
records subject to the FOIA. Finally, OIP advised Plaintiff that if he was dissatisfied with the
action on his appeal, he could file a lawsuit in federal district court or seek mediation services
from the Office of Government Information Services ("OGIS"). **(Ex. H.)**

FOIPA REQUEST NUMBER 1450535-000

(14)     By electronic FOIA ("eFOIA"),[5] dated October 23, 2019, Plaintiff submitted a
third FOIPA request to the FBI seeking any and all records pertaining to himself. **(Ex. I.)**

---

[3] After further review, the FBI determined that it had inadvertently asserted Exemption (j)(2) on
the letter. However, the FBI has determined that Exemption (k)(2) is appropriate as these
records are exempt from disclosure in their entirety pursuant to the Privacy Act, Title 5, United
States Code, Section 552a(k)(2).

[4] DOJ OIP maintains an online electronic appeal portal through DOJ's public website,
www.justice.gov, where FOIPA requesters may submit administrative appeals to OIP and
receive correspondence from OIP regarding their appeal.

[5] An eFOIA is an electronic means by which requesters can submit FOIPA requests to the FBI,
online, through the FBI's public website, www.FBI.gov.

(15)    By letter dated October 29, 2019, the FBI advised Plaintiff that it had assigned the

request FOIPA Request Number 1450535-000 and that it had previously reviewed and released

responsive records to Plaintiff. Additionally, the FBI advised that it had conducted another

search of the CRS, but was unable to identify additional records responsive to Plaintiff's request.

The FBI advised Plaintiff that he could seek additional information regarding the FBI's

determinations by visiting www.fbi.gov/foia, he could appeal the FBI's response to DOJ OIP

within ninety (90) days of the date of its letter, he could contact the FBI's Public Liaison, or he

could seek dispute resolution services by contacting OGIS. **(Ex. J.)**

(16)    By email dated February 17, 2020, Plaintiff submitted an appeal to DOJ OIP

challenging the adequacy of the FBI's search for responsive records. **(Ex. K.)**

(17)    By letter dated February 20, 2020, OIP acknowledged receipt of Plaintiff's appeal

and advised Plaintiff that it had assigned appeal number A-2020-00197 to his appeal.[6] **(Ex. L.)**

(18)    By letter sent via email to Plaintiff on March 20, 2020, OIP advised Plaintiff that

it was affirming the FBI's actions in response to Plaintiff's FOIPA Request Number 1450535-

000 and, therefore, OIP was closing Plaintiff's appeal. Additionally, OIP advised Plaintiff that

the FBI properly conducted an adequate and reasonable search for records responsive to

Plaintiff's request. Finally, OIP advised Plaintiff that if he was dissatisfied with the action on his

appeal, he could file a lawsuit in federal district court or seek mediation services from OGIS.[7]

**(Ex. M.)**

(19)    On December 8, 2020, Plaintiff filed the Complaint in the instant action. (ECF

No. 1.)

---

[6] This letter from OIP is not signed. OIP has advised the FBI that the letter was not signed due to
an OIP computer system glitch.

[7] The FBI determined that OIP sent the letter to Plaintiff via email on March 20, 2020.

(20)    Upon Plaintiff's filing of the Complaint, the FBI conducted a new search of the CRS and reviewed all responsive records subject to the FOIPA previously located in response to Plaintiff's three FOIPA requests. By letter dated April 2, 2021, the FBI advised Plaintiff that it had reviewed 22 pages of records and released 15 pages in full or in part.[8] Exempt material was withheld pursuant to Privacy Act Exemption (k)(2) and FOIA Exemptions (b)(6) and (b)(7)(C). The FBI advised Plaintiff that duplicate copies of the same document were not processed and the records were provided at no charge. Finally, the FBI advised Plaintiff that he could appeal the FBI's response to OIP within ninety (90) days of the date of its letter, contact the FBI's Public Liaison, or seek dispute resolution services by contacting OGIS. **(Ex. N.)**

### THE FBI'S CENTRAL RECORDS SYSTEM

(21)    In response to FOIPA requests, RIDS conducts a search of the FBI's Central Records System ("CRS") for responsive records. The CRS is an extensive system of records consisting of applicant, investigative, intelligence, personnel, administrative, and general files compiled and maintained by the FBI in the course of fulfilling its mission and integrated functions as a law enforcement, counterterrorism, and intelligence agency to include performance of administrative and personnel functions. The CRS spans the entire FBI organization and encompasses the records of FBI Headquarters ("FBIHQ"), FBI field offices, and FBI legal attaché offices ("legats") worldwide.

(22)    The CRS consists of a numerical sequence of files, called FBI "classifications," which are organized according to designated subject categories. The broad array of CRS file

---

[8] In the records found in response to FOIPA Request Number 1250235-001 and released to Plaintiff on September 25, 2014, five pages were removed as "duplicates" of other pages in the release. In the FBI's April 2, 2021, release of reprocessed pages, the FBI determined that those five pages are not exact duplicates and therefore, the FBI reviewed these pages for all reasonably segregable, non-exempt information to be released to Plaintiff.

classification categories includes types of criminal conduct and investigations conducted by the FBI, as well as categorical subjects pertaining to counterterrorism, intelligence, counterintelligence, personnel, and administrative matters. For identification and retrieval purposes across the FBI, when a case file is opened, it is assigned a universal case file number ("UCFN") consisting of three sequential components: (a) the CRS file classification number, (b) the abbreviation of the FBI office of origin ("OO") initiating the file, and (c) the assigned individual case file number for that particular subject matter.[9]  Within each case file, pertinent documents of interest are "serialized," or assigned a document number in the order in which the document is added to the file, typically in chronological order.

THE CRS GENERAL INDICES AND INDEXING

(23)   The general indices to the CRS are the index or "key" to locating records within the enormous amount of information contained in the CRS.  The CRS is indexed in a manner which meets the FBI's investigative needs and priorities and allows FBI personnel to reasonably and adequately locate pertinent files in the performance of their law enforcement duties.  The general indices are arranged in alphabetical order and comprise an index on a variety of subjects to include individuals, organizations, events, and other subjects of investigative interest that are indexed for future retrieval.  The entries in the general indices fall into two categories:

> A: Main entry.  A main index entry is created for each individual or non-
> individual that is the subject or focus of an investigation.  Main subjects are
> identified in the case title of a file.

> B. Reference entry.  A reference index entry is created for an individual or non-

---

[9] For example, in fictitious file number "11Z-HQ-56789," "11Z" indicates the file classification, "HQ" indicates that FBI Headquarters is the FBI OO of the file, and "56789" is the assigned case specific file number.

individual associated with an investigation, but who is not the main subject or focus of the investigation. Reference subjects are typically not identified in the case title of a file.

(24)     FBI employees may index information in the CRS by individual (persons), by organization (entities, places, and things), and/or by event (*e.g.*, a terrorist attack or bank robbery). Indexing information in the CRS is done at the discretion of FBI investigators when information is deemed of sufficient significance to warrant indexing for future retrieval. Accordingly, the FBI does not index every individual name or other subject in the general indices.

AUTOMATED CASE SUPPORT

(25)     The Automated Case Support system ("ACS") was an electronic, integrated case management system that became effective for FBIHQ and all FBI field offices and legats on October 1, 1995. As part of the ACS implementation process, over 105 million CRS records were converted from automated systems previously utilized by the FBI into a single, consolidated case management system accessible by all FBI offices. ACS had an operational purpose and design to enable the FBI to locate, retrieve, and maintain information in its files in the performance of its mission and myriad functions.[10]

(26)     The Universal Index ("UNI") was the automated index of the CRS, searchable via ACS. It provided all offices of the FBI with a centralized, electronic means of indexing pertinent investigative information into FBI files for future retrieval via index searching. Individual names

---

[10] ACS was, and the next generation Sentinel system is, relied upon by the FBI daily to fulfill essential functions, such as conducting: criminal, counterterrorism, and national security investigations; background investigations; citizenship and employment queries; and security screening, to include presidential protection.

9

were recorded with applicable identifying information, such as date of birth, race, sex, locality, social security number, address, and/or date of an event. ACS implementation built upon and incorporated prior automated FBI indices; therefore, a search employing the UNI application of ACS encompassed data indexed in the prior automated systems superseded by ACS. As such, a UNI index search in ACS could locate FBI records in both paper and electronic formats created before its 1995 FBI-wide implementation.[11]

## ACS AND SENTINEL

(27)    Sentinel is the FBI's next generation case management system that became effective FBI-wide on July 1, 2012. Sentinel provides a web-based interface to FBI users and includes the same automated applications that were utilized in ACS. After July 1, 2012, all FBI generated records are created electronically in case files via Sentinel; however, Sentinel did not replace the relevance of ACS as an important FBI search mechanism. Just as pertinent information was indexed into UNI for records generated in ACS before July 1, 2012, when a record is generated in Sentinel, information is indexed for future retrieval.

(28)    On August 1, 2018, ACS was decommissioned and ACS data migrated into Sentinel, including the ACS indices data and digitized investigative records formerly available in ACS. Sentinel retains the index search methodology and function whereby the CRS is queried, now via Sentinel, for pertinent indexed main and reference entries in case files. All CRS index data from the UNI application previously searched via ACS is now searched through the "ACS Search" function within Sentinel.

(29)    ACS was still operational at the time of Plaintiff's first and second requests,

---

[11] Older CRS records that were not indexed into UNI as a result of the 1995 ACS consolidation remained searchable by manual review of index cards, known as the "manual indices."

FOIPA Request Numbers 1250235-000 and 1250235-001. At that time, RIDS's practice was to begin its FOIPA searching efforts by conducting an index search via the UNI application in ACS. If records were reasonably expected to have been created on or after July 1, 2012, RIDS would then conduct an index search of Sentinel records to ensure it captured all relevant data indexed after the implementation of Sentinel. After ACS was decommissioned, upon receipt of a FOIPA request[12] where the subject matter predates the implementation of Sentinel, RIDS generally begins its FOIPA searching efforts by conducting index searches via the "ACS Search" function in Sentinel. RIDS then builds on its ACS index search by conducting an index search of Sentinel records to ensure it captures all relevant data indexed after the implementation of Sentinel. A search of the CRS automated indices, available within Sentinel and via the ACS search function in Sentinel, in most cases, represents the most reasonable means for the FBI to locate records potentially responsive to FOIPA requests. This is because the automated indices provide access to a comprehensive, agency-wide set of indexed data on a wide variety of investigative and administrative subjects. Currently, the automated indices consist of millions of searchable records and are updated daily with material newly indexed in Sentinel.

(30)     The identification of records indexed to the subject of a FOIPA request does not automatically mean the indexed records are responsive to the subject. Index searches are the means by which potentially responsive records are located, but ultimately, a FOIPA analyst must consider potentially responsive indexed records against the specific parameters of individual requests. Responsiveness determinations are made once indexed records are gathered, analyzed, and sorted by FOIPA analysts who then make informed scoping decisions to determine the total

_____

[12] ACS was decommissioned at the time of Plaintiff's third request, FOIPA Request Number 1450535-000.

11

pool of records responsive to an individual request.

ELECTRONIC SURVEILLANCE INDICES

(31)    The electronic surveillance ("ELSUR") indices comprise records related to
electronic surveillance sought, administered, and/or conducted by the FBI.  The ELSUR indices
include records of: (a) targets of electronic surveillance obtained pursuant to court order,
consensual monitoring, or other authority; (b) owners, lessors, or licensors of the premises where
the FBI conducted electronic surveillance; (c) and individuals identified as participants of
recorded communications.  The ELSUR indices is a separate system of records, but this does not
mean that the data housed within the ELSUR indices is not also available in the CRS, because
targets of electronic surveillance are also indexed in the CRS.  Electronic surveillance is an
investigative technique pursued in furtherance of FBI investigations and the opening of an
investigation (and subsequent indexing of targets of the investigation) would be a prerequisite to
the initiation of electronic surveillance.  Thus, searches of the CRS, employing the UNI
application of ACS[13] or the Sentinel indices and ACS indices available through Sentinel, are
reasonably expected to locate records relating to electronic surveillance.

ELECTRONIC CASE FILE

(32)    The Electronic Case File ("ECF") was an automated application of ACS and
Sentinel.  When ACS was in use, electronic copies of paper documents were uploaded to the
ECF and index records were entered into the UNI application using terms related to the subjects
and references in the case so that relevant and useful investigative case information could later
be retrieved.  After ACS was decommissioned, the ACS data is accessed using the ACS

---

[13] As discussed in ¶¶ 28-29 *supra*, ACS was decommissioned on August 1, 2018.  Upon receipt
of FOIPA requests after August 1, 2018, the FBI conducts searches of the CRS employing the
Sentinel and ACS indices available through Sentinel.

12

automated search function found in Sentinel as stated above. *See* ¶ 28 *supra*. ECF is no longer an accessible application in ACS or Sentinel. However, its function is similar to a text search of electronically available text-based documents as it once served as the central electronic repository for the FBI's official text-based documents.

(33)  Plaintiff's second request, FOIPA Request Number 1250235-001, requested that the FBI conduct a search of the ECF. The FBI generally does not conduct full text searches in response to FOIA and Privacy Act requests without a bona fide factual indication that one is needed and the FBI's search would not be considered reasonable without such a text search. In most cases, this extraordinary measure of performing a text search in ECF is unduly burdensome and not reasonably calculated to locate responsive records because not all files are searchable through a text search and not all file serials have been converted to electronic format. While the FBI's indices are electronically searchable, as described *supra*, a large portion of the FBI records they correspond to are not in electronic form.

(34)  Searching the indices is the most reasonable way to locate records responsive to FOIPA requests because of the index-based structure of the CRS. Generally, subjects that are not indexed in the CRS (previously via ACS and, as of July 1, 2012, via Sentinel) are those deemed to have no long-lasting significance to the FBI. Such subjects are usually incomplete names and are often unaccompanied by any other identifying information. Text searches, sometimes even after search results are narrowed (or "filtered"), generally return a significant number of hits that are random and incomplete references. Performing such a search would require RIDS to review each one of these hits to determine whether it pertains to the specific subject of a request; thus, text searches are unduly burdensome and, as described *supra*, are not reasonably calculated to locate responsive records. Therefore, the net result of a text search is

13

typically a significant use of time and resources that may yield no additional responsive information.

(35)    There are limited situations when RIDS may conduct a text search of the CRS, such as when: (a) the FBI has a factual basis to conclude that responsive records exist in the CRS, but the index search failed to locate them; or (b) an index search of the CRS located a record that itself provided a clear and certain lead to the existence of another CRS record that was not located via the index search. This is not the case here because RIDS conducted its search using the requester's name and names of individuals are reasonably likely to be indexed in the CRS, and there is no basis to conclude that responsive records exist other than those identified. The FBI adheres to the legally supported principle of reasonableness when conducting searches for records in response to FOIPA requests. In response to Plaintiff's FOIPA requests for records on an individual, the FBI's search was reasonably designed to locate (and did locate) responsive records.

(36)    As discussed in ¶ 43 *infra*, any responsive records or information within the ECF would be duplicative of information available within the Sentinel indices and ACS indices available in Sentinel.

**ADEQUACY OF SEARCHES**

(37)    <u>Main and Reference Files</u>. At the administrative stage, in response to most FOIPA requests, RIDS policy is to conduct a search of the CRS focused on identifying only responsive main files. Subsequent to the filing of a complaint, per its policy, RIDS generally conducts an additional search of the CRS to locate main files not previously identified and to locate reference files. Upon Plaintiff's filing of the complaint in this litigation, RIDS conducted a fourth search of the CRS (via Sentinel and the ACS indices available through Sentinel) using

the search term "John Wilson."  As a result, RIDS identified the same reference file found in the

three searches conducted in response to FOIPA Request Numbers 1250235-000, 1250235-001,

and 1450535-000.  RIDS reprocessed the file because of a change in how RIDS handles

duplicate pages and to ensure it had released all reasonably segregable, non-exempt information

and to apply numerical codes that coincide with various categories of exempt information.

(38)     Index Searching.  As explained in ¶¶ 23-24 *supra*, to locate CRS information,

RIDS employs an index search methodology.  Index searches of the CRS are reasonably

expected to locate responsive material within the vast CRS since the FBI indexes pertinent

information into the CRS to facilitate retrieval to serve its law enforcement and intelligence

gathering functions.  Given the broad range of indexed material in terms of both time frame and

subject matter that it can locate in FBI files, a search of the automated indices available through

Sentinel (including through the ACS search function in Sentinel) is the mechanism RIDS

employs to conduct CRS index searches.

(39)     CRS Search and Results.  As explained in detail below, in response to Plaintiff's

first and second requests, FOIPA Request Numbers 1250235-000 and 1250235-001, RIDS

conducted an index search of the CRS employing the UNI application of ACS to identify

potentially responsive records.  In response to Plaintiff's third request, FOIPA Request Number

1450535-000, RIDS conducted an index search of the CRS employing the Sentinel and ACS

indices available through Sentinel to identify potentially responsive records.

FOIPA REQUEST NUMBER 1250235-000

(40)     In response to Plaintiff's first request, RIDS conducted a CRS index search for

potentially responsive records employing the UNI application of ACS using the search terms

"John C Wilson" and "John Wilson."  As a result of this search effort, RIDS identified one

15

reference file. However, because RIDS policy, generally, is to identify only main files responsive to a FOIPA request at the administrative stage, because Plaintiff did not ask for reference files in the first request letter, and because Plaintiff failed to provide information in the first request letter that could have allowed RIDS to determine that the reference file was responsive, that one identified reference file was not processed. *See* ¶ 37 *supra.*

## FOIPA REQUEST NUMBER 1250235-001

(41)     In response to Plaintiff's second request, RIDS conducted a CRS index search for potentially responsive records employing the UNI application of ACS using the search terms "John Christian Wilson," "John C Wilson," and "John Wilson." As a result of this search effort, RIDS identified one reference file.[14] In response to the second request, RIDS processed the reference file because in the second request letter, Plaintiff asked for the identification of both main and reference files and because he provided additional information that allowed RIDS to assess the responsiveness of the reference file. Thus, no new files were identified; instead, the previously identified file was processed as a result of this search effort.

## FOIPA REQUEST NUMBER 1450535-000

(42)     In response to Plaintiff's third request, RIDS conducted a CRS index search for potentially responsive records employing the Sentinel and ACS indices available through Sentinel using the search term "John Wilson."[15] As a result of this search effort, RIDS identified the same reference file identified in the previous two searches, but did not locate any additional

---

[14] The FBI located the same reference file that was found in the search effort for FOIPA Request Number 1250235-000. Due to Plaintiff's specific request for main and reference files, the FBI processed the reference file records and released the processed records to Plaintiff. *See* ¶ 10 *supra.*

[15] An automated search of the Sentinel indices incorporates multiple variations of the search term including: first and last names; first name, middle initial, and last name; and first, middle, and last names, as well as any spelling variations.

records potentially responsive to Plaintiff's request.

(43)    Scope of Search. RIDS conducted a search reasonably calculated to locate records responsive to Plaintiff's requests. Given its comprehensive nature and scope, the CRS, which is the FBI's principal records system, is the records system searched by RIDS to locate information responsive to most FOIPA requests, because the CRS is where the FBI indexes information about individuals, organizations, and other subjects of investigative interest for future retrieval. *See* ¶ 23 *supra*. Because Plaintiff's requests seek information about himself, such information would reasonably be expected to be located in the CRS via the index search methodology. In this case, any responsive records or information within the ELSUR indices or in ECF would be duplicative of information available within the Sentinel indices and ACS indices available in Sentinel; thus, a search of the Sentinel indices and ACS indices available in Sentinel accomplished the task of locating responsive records, if any, in the ELSUR indices and via an ECF text search.

(44)    RIDS search policy is grounded on the principle of reasonableness, not mere possibility. Plaintiff provided no information for RIDS to reasonably conclude that records would reside outside the CRS. Moreover, there is no indication within the records located via the CRS index searches that responsive records reside in any other location. Therefore, there is no basis for RIDS to conclude that a search elsewhere could reasonably be expected to locate additional responsive records.

(45)    Records Located. As discussed in ¶ 20 *supra*, the FBI reviewed 22 pages and released 15 of those pages in full or in part. The reference file located concerned the FBI's investigation of Plaintiff's complaint to DOJ's Office of the Inspector General ("OIG"). The OIG forwarded Plaintiff's allegation of misconduct by FBI employees to the FBI's Inspection

Division ("INSD"), which reviews and investigates allegations of criminal behavior and other types of misconduct of FBI employees. The file was opened after the OIG forwarded plaintiff's allegation to house any documentation of the INSD's review and investigation. As such, the records were compiled for a law enforcement purpose. No other records responsive to Plaintiff's requests were located.

(46)  <u>Review of Records</u>. All responsive records are exempt from mandatory disclosure pursuant to Privacy Act Exemption (k)(2) as the records were compiled for a law enforcement purpose, other than a criminal investigation. *See* ¶ 45 *supra*. However, all responsive records were reviewed under the access provisions of the FOIA to achieve maximum disclosure. Every effort was made to provide Plaintiff with all reasonably segregable, non-exempt information within the responsive records. The reviewed records have been consecutively numbered FBI(20-cv-10324)-1 through FBI(20-cv-10324)-22. Pages withheld in their entirety, because of exemptions or because they are duplicates, were referenced on a "Deleted Page Information Sheet," which identifies the reason and applicable FOIA exemption(s) relied upon to withhold the page in full, as well as the Bates numbers for the withheld pages. The Deleted Page Information Sheet and Bates-numbered pages released in full and in part were provided to Plaintiff as described in ¶ 20 *supra*. The exemptions asserted by the FBI to withheld information are FOIA Exemptions (b)(6) and (b)(7)(C).

**CONCLUSION**

(47)  The FBI performed adequate and reasonable searches for responsive records; properly determined that certain information should be withheld under the Privacy Act Exemption (k)(2) and FOIA Exemptions (b)(6) and (b)(7)(C); and released all reasonably segregable, non-exempt information from records responsive to Plaintiff's three FOIPA requests.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true

and correct, and that Exhibits A through N attached hereto are true and correct copies.

Executed this _____ 31st _____ day of August 2021.

MICHAEL G. SEIDEL
Section Chief
Record/Information Dissemination Section
Information Management Division
Federal Bureau of Investigation
Winchester, Virginia

# EXHIBIT 8



**U.S. Department of Justice**

_____

**Federal Bureau of Investigation**
*Washington, D.C. 20535*

April 2, 2021

MR. JOHN ▇▇▇▇▇▇ WILSON
C/O KATHERINE ADAMS
BELDOCK LEVINE & HOFFMAN LLP
26TH FLOOR
99 PARK AVENUE
NEW YORK, NY 10016

          FOIPA Civil Action No.: 20-CV-10324
          FOIPA Request Nos.: 1250235-000, 1250235-001,
          and 1450535-000
          Subject: WILSON, JOHN ▇▇▇▇▇▇

Dear Mr. Wilson:

The enclosed documents were reviewed under the Freedom of Information/Privacy Acts (FOIPA), Title 5, United States Code, Section 552/552a.  Below you will find checked boxes under applicable statutes for the exemptions asserted to protect information exempt from disclosure.  The appropriate exemptions are noted on the processed pages next to redacted information.  In addition, a deleted page information sheet was inserted to indicate where pages were withheld entirely pursuant to applicable exemptions.  An Explanation of Exemptions is enclosed to further explain justification for withheld information.

|  **Section 552** |  |  **Section 552a** |
|---|---|---|
| ☐ (b)(1) | ☐ (b)(7)(A) | ☐ (d)(5) |
| ☐ (b)(2) | ☐ (b)(7)(B) | ☐ (j)(2) |
| ☐ (b)(3) | ☑ (b)(7)(C) | ☐ (k)(1) |
| _____ | ☐ (b)(7)(D) | ☑ (k)(2) |
| _____ | ☐ (b)(7)(E) | ☐ (k)(3) |
| _____ | ☐ (b)(7)(F) | ☐ (k)(4) |
| ☐ (b)(4) | ☐ (b)(8) | ☐ (k)(5) |
| ☐ (b)(5) | ☐ (b)(9) | ☐ (k)(6) |
| ☑ (b)(6) | | ☐ (k)(7) |

22 pages were reviewed and 15 pages are being released.

Please see the paragraphs below for relevant information specific to your request and the enclosed FBI FOIPA Addendum for standard responses applicable to all requests.

☐ Document(s) were located which originated with, or contained information concerning, other Government Agency (ies) [OGA].

☐ This information has been referred to the OGA(s) for review and direct response to you.
☐ We are consulting with another agency.   The FBI will correspond with you regarding this information when the consultation is completed.

Please refer to the enclosed FBI FOIPA Addendum for additional standard responses applicable to your request.  **"Part 1"** of the Addendum includes standard responses that apply to all requests.   **"Part 2"** includes additional standard responses that apply to all requests for records about yourself or any third party individuals.

**"Part 3"** includes general information about FBI records that you may find useful.   Also enclosed is our Explanation of Exemptions.

Although your request is in litigation, we are required by law to provide you the following information:

If you are not satisfied with the Federal Bureau of Investigation's determination in response to this request, you may administratively appeal by writing to the Director, Office of Information Policy (OIP), United States Department of Justice, 441 G Street, NW, 6th Floor, Washington, D.C. 20530, or you may submit an appeal through OIP's FOIA STAR portal by creating an account following the instructions on OIP's website: https://www.justice.gov/oip/submit-and-track-request-or-appeal.   Your appeal must be postmarked or electronically transmitted within ninety (90) days of the date of my response to your request.   If you submit your appeal by mail, both the letter and the envelope should be clearly marked "Freedom of Information Act Appeal."   Please cite the FOIPA Request Number assigned to your request so it may be easily identified.

You may seek dispute resolution services by contacting the Office of Government Information Services (OGIS).   The contact information for OGIS is as follows: Office of Government Information Services, National Archives and Records Administration, 8601 Adelphi Road-OGIS, College Park, Maryland 20740-6001, e-mail at ogis@nara.gov; telephone at 202-741-5770; toll free at 1-877-684-6448; or facsimile at 202-741-5769.   Alternatively, you may contact the FBI's FOIA Public Liaison by emailing foipaquestions@fbi.gov.   If you submit your dispute resolution correspondence by email, the subject heading should clearly state "Dispute Resolution Services."   Please also cite the FOIPA Request Number assigned to your request so it may be easily identified.

Please direct any further inquiries about this case to the Attorney representing the Government in this matter.   Please use the FOIPA Request Number and/or Civil Action Number in all correspondence or inquiries concerning your request.

☑   See additional information which follows.

Sincerely,

Michael G. Seidel
Section Chief
Record/Information
   Dissemination Section
Information Management Division

Enclosures

In response to your Freedom of Information/Privacy Acts (FOIPA) request, enclosed is a processed copy of Bates stamped documents, FBI (20-cv-10324)-1 through FBI (20-cv-10324)-22. The enclosed documents represent the first and final release of information responsive to your FOIPA request.

The enclosed documents responsive to your request are exempt from disclosure in their entirety pursuant to the Privacy Act, Title 5, United States Code, section 552a, subsection (k)(2). However, these records have been processed pursuant to the Freedom of Information Act, Title 5, United States Code, Section 552, thereby affording you the greatest degree of access authorized by both laws.

This material is being provided to you at no charge.

Duplicate copies of the same document were not processed.

**FBI FOIPA Addendum**

As referenced in our letter responding to your Freedom of Information/Privacy Acts (FOIPA) request, the FBI FOIPA Addendum provides information applicable to your request.   Part 1 of the Addendum includes standard responses that apply to all requests.   Part 2 includes standard responses that apply to requests for records about individuals to the extent your request seeks the listed information.   Part 3 includes general information about FBI records, searches, and programs.

**Part 1: The standard responses below apply to all requests:**

(i)     **5 U.S.C. § 552(c).**   Congress excluded three categories of law enforcement and national security records from the requirements of the FOIPA [5 U.S.C. § 552(c)].   FBI responses are limited to those records subject to the requirements of the FOIPA.   Additional information about the FBI and the FOIPA can be found on the www.fbi.gov/foia website.

(ii)    **Intelligence Records.**   To the extent your request seeks records of intelligence sources, methods, or activities, the FBI can neither confirm nor deny the existence of records pursuant to FOIA exemptions (b)(1), (b)(3), and as applicable to requests for records about individuals, PA exemption (j)(2) [5 U.S.C. §§ 552/552a (b)(1), (b)(3), and (j)(2)].   The mere acknowledgment of the existence or nonexistence of such records is itself a classified fact protected by FOIA exemption (b)(1) and/or would reveal intelligence sources, methods, or activities protected by exemption (b)(3) [50 USC § 3024(i)(1)].   This is a standard response and should not be read to indicate that any such records do or do not exist.

**Part 2: The standard responses below apply to all requests for records on individuals:**

(i)     **Requests for Records about any Individual—Watch Lists.**   The FBI can neither confirm nor deny the existence of any individual's name on a watch list pursuant to FOIA exemption (b)(7)(E) and PA exemption (j)(2) [5 U.S.C. §§ 552/552a (b)(7)(E), (j)(2)].   This is a standard response and should not be read to indicate that watch list records do or do not exist.

(ii)    **Requests for Records about any Individual—Witness Security Program Records.**   The FBI can neither confirm nor deny the existence of records which could identify any participant in the Witness Security Program pursuant to FOIA exemption (b)(3) and PA exemption (j)(2) [5 U.S.C. §§ 552/552a (b)(3), 18 U.S.C. 3521, and (j)(2)].   This is a standard response and should not be read to indicate that such records do or do not exist.

(iii)   **Requests for Records for Incarcerated Individuals.**   The FBI can neither confirm nor deny the existence of records which could reasonably be expected to endanger the life or physical safety of any incarcerated individual pursuant to FOIA exemptions (b)(7)(E), (b)(7)(F), and PA exemption (j)(2) [5 U.S.C. §§ 552/552a (b)(7)(E), (b)(7)(F), and (j)(2)].   This is a standard response and should not be read to indicate that such records do or do not exist.

**Part 3: General Information:**

(i)     **Record Searches.**   The Record/Information Dissemination Section (RIDS) searches for reasonably described records by searching systems or locations where responsive records would reasonably be found.   A standard search normally consists of a search for main files in the Central Records System (CRS), an extensive system of records consisting of applicant, investigative, intelligence, personnel, administrative, and general files compiled by the FBI per its law enforcement, intelligence, and administrative functions.   The CRS spans the entire FBI organization, comprising records of FBI Headquarters, FBI Field Offices, and FBI Legal Attaché Offices (Legats) worldwide; Electronic Surveillance (ELSUR) records are included in the CRS.   Unless specifically requested, a standard search does not include references, administrative records of previous FOIPA requests, or civil litigation files.   For additional information about our record searches, visit www.fbi.gov/services/information-management/foipa/requesting-fbi-records.

(ii)    **FBI Records.**   Founded in 1908, the FBI carries out a dual law enforcement and national security mission.   As part of this dual mission, the FBI creates and maintains records on various subjects; however, the FBI does not maintain records on every person, subject, or entity.

(iii)   **Requests for Criminal History Records or Rap Sheets.**   The Criminal Justice Information Services (CJIS) Division provides Identity History Summary Checks – often referred to as a criminal history record or rap sheet.   These criminal history records are not the same as material in an investigative "FBI file."   An Identity History Summary Check is a listing of information taken from fingerprint cards and documents submitted to the FBI in connection with arrests, federal employment, naturalization, or military service.   For a fee, individuals can request a copy of their Identity History Summary Check.   Forms and directions can be accessed at www.fbi.gov/about-us/cjis/identity-history-summary-checks.   Additionally, requests can be submitted electronically at www.edo.cjis.gov.   For additional information, please contact CJIS directly at (304) 625-5590.

(iv)    **National Name Check Program (NNCP).**   The mission of NNCP is to analyze and report information in response to name check requests received from federal agencies, for the purpose of protecting the United States from foreign and domestic threats to national security.   Please be advised that this is a service provided to other federal agencies.   Private Citizens cannot request a name check.

**EXPLANATION OF EXEMPTIONS**

**SUBSECTIONS OF TITLE 5, UNITED STATES CODE, SECTION 552**

(b)(1)  (A) specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and (B) are in fact properly classified to such Executive order;

(b)(2)  related solely to the internal personnel rules and practices of an agency;

(b)(3)  specifically exempted from disclosure by statute (other than section 552b of this title), provided that such statute (A) requires that the matters be withheld from the public in such a manner as to leave no discretion on issue, or (B) establishes particular criteria for withholding or refers to particular types of matters to be withheld;

(b)(4)  trade secrets and commercial or financial information obtained from a person and privileged or confidential;

(b)(5)  inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency;

(b)(6)  personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal  privacy;

(b)(7)  records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information ( A ) could reasonably be expected to interfere with enforcement proceedings, ( B ) would deprive a person of a right to a fair trial or an impartial adjudication, ( C ) could reasonably be expected to constitute an unwarranted invasion of personal   privacy, ( D ) could reasonably be expected to disclose the identity of confidential source, including a State, local, or foreign agency or authority or any private institution which furnished information on a confidential basis, and, in the case of record or information compiled by a criminal law enforcement authority in the course of a criminal investigation, or by an agency conducting a lawful national security intelligence investigation, information furnished by a confidential source, ( E ) would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law, or ( F ) could reasonably be expected to endanger the life or physical safety of any individual;

(b)(8)  contained in or related to examination, operating, or condition reports prepared by, on behalf of, or for the use of an agency responsible for the regulation or supervision of financial institutions; or

(b)(9)  geological and geophysical information and data, including maps, concerning wells.

**SUBSECTIONS OF TITLE 5, UNITED STATES CODE, SECTION 552a**

(d)(5)  information compiled in reasonable anticipation of a civil action proceeding;

(j)(2)  material reporting investigative efforts pertaining to the enforcement of criminal law including efforts to prevent, control,   or reduce crime or apprehend criminals;

(k)(1)  information which is currently and properly classified pursuant to an Executive order in the interest of the national defense or foreign policy, for example, information involving intelligence sources or methods;

(k)(2)  investigatory material compiled for law enforcement purposes, other than criminal, which did not result in loss of a right, benefit or privilege under Federal programs, or which would identify a source who furnished information pursuant to a promise that his/her identity would be held in confidence;

(k)(3)  material maintained in connection with providing protective services to the President of the United States or any other individual pursuant to the authority of Title 18, United States Code, Section 3056;

(k)(4)  required by statute to be maintained and used solely as statistical records;

(k)(5)  investigatory material compiled solely for the purpose of determining suitability, eligibility, or qualifications for Federal civilian employment or for access to classified information, the disclosure of which would reveal the identity of the person who furnished information pursuant to a promise that his/her identity would be held in confidence;

(k)(6)  testing or examination material used to determine individual qualifications for appointment or promotion in Federal Government service the release of which would compromise the testing or examination process;

(k)(7)  material used to determine potential for promotion in the armed services, the disclosure of which would reveal the identity of the person who furnished the material pursuant to a promise that his/her identity would be held in confidence.

FBI/DOJ

**FEDERAL BUREAU OF INVESTIGATION**
**FOI/PA DELETED PAGE INFORMATION SHEET**
**FOIPA Request Nos.: 1250235-000, 1250235-001 and 1450535-000**
**Civil Action No.: 20-cv-10324**

**Total Withheld Page(s) = 7**

| Bates Page Reference | Reason for Withholding |
|---|---|
| | (i.e., exemptions with coded rationale, duplicate, sealed by order of court, etc.) |
| FBI (20-cv-10324)-10 | (b)(6)-1; (b)(7)(C)-1 |
| FBI (20-cv-10324)-12 through FBI (20-cv-10324)-15 | (b)(6)-1; (b)(7)(C)-1 |
| FBI (20-cv-10324)-18 | Duplicate to FBI (20-cv-10324)-6 |
| FBI (20-cv-10324)-22 | Duplicate to FBI (20-cv-10324)-10 |

```
XXXXXXXXXXXXXXXXXXXXXX
X   Deleted Page(s)    X
X   No Duplication Fee X
X   For this Page      X
XXXXXXXXXXXXXXXXXXXXXX
```



February 10, 2006

Mr. Barry A. Fisher
Fleishman and Fisher
1875 Century Park East
Suite 2130
Los Angeles, California 90067

Attention: Mr. John ███████ Wilson

Dear Mr. Wilson:

We are in receipt of your letter dated January 17, 2005, to the U.S. Department of Justice (DOJ), Office of Inspector General. DOJ forwarded this correspondence to the Initial processing Unit (IPU), Internal Investigations Section, Inspection Division, Federal Bureau of Investigation (FBI), for our review. The IIS is the FBI entity that provides thorough, high quality, fair, consistent, and timely review and investigation into complaints of criminality and/or serious misconduct against FBI employees.

In the above-referenced letter, you allege that an unidentified Undercover FBI Special Agent (SA) apparently disclosed confidential information to you originating from the U.S. State Department regarding a fatal Grasberg mining accident in Indonesia. You advised that you published an article about the accident at the Freeport McMoran owned Grasberg mine in 1996 and, since its publication, you allege having been contacted by numerous individuals who identified themselves to you as FBI agents, specifically SA Steven Garber, New York; SA Livingston Sutro, Arizona, and SA Susan Holmes, Washington, D.C. A review of our records revealed that the above-named individuals are not employed by the FBI.

Inasmuch as the information provided contains no credible allegations of misconduct by any FBI personnel, IPU has determined that your complaint does not warrant the initiation of an investigation. We consider this matter closed.

Sincerely,

/s/

███████████████████

Unit Chief
Initial Processing Unit
Inspection Division

b6 -1
b7C -1

1 - ███████ (Personal Attention)
1 - IPU
1 - ███████
MM:hmh (5)



 

February 10, 2006

Mr. Barry A. Fisher
Fleishman and Fisher
1875 Century Park East
Suite 2130
Los Angeles, California 90067

Attention: Mr. John███████Wilson

Dear Mr. Wilson:

We are in receipt of your letter dated January 17, 2005, to the U.S. Department of Justice (DOJ), Office of Inspector General. DOJ forwarded this correspondence to the Initial processing Unit (IPU), Internal Investigations Section, Inspection Division, Federal Bureau of Investigation (FBI), for our review. The IIS is the FBI entity that provides thorough, high quality, fair, consistent, and timely review and investigation into complaints of criminality and/or serious misconduct against FBI employees.

In the above-referenced letter, you allege that an unidentified Undercover FBI Special Agent (SA) apparently disclosed confidential information to you originating from the U.S. State Department regarding a fatal Grasberg mining accident in Indonesia. You advised that you published an article about the accident at the Freeport McMoran owned Grasberg mine in 1996 and, since its publication, you allege having been contacted by numerous individuals who identified themselves to you as FBI agents; specifically SA Steven Garber, New York; SA Livingston Sutro, Arizona, and SA Susan Holmes, Washington, D.C. A review of our records revealed that the above-named individuals are not employed by the FBI.

Inasmuch as the information provided contains no credible allegations of misconduct by any FBI personnel, IPU has determined that your complaint does not warrant the initiation of an investigation. We consider this matter closed.



Sincerely

Unit Chief
Initial Processing Unit
Inspection Division

b6  -1
b7C -1

1 ████████████ (Personal Attention)
1) - IPU
1 ████████
MMH\mmh (5)

☐ (INSD) (FBI)

b6 -1
b7C -1

**From:** ☐ (OPR) (FBI)
**Sent:** Wednesday, February 08, 2006 4:39 PM
**To:** ☐ (INSD) (FBI)
**Cc:** ☐ (INSD) (FBI)
**Subject:** RE: Hey it's the new guy

**UNCLASSIFIED**
**NON-RECORD**

☐ - First I saw of this was when ☐ brought it to me with you--- I think I forwarded ☐ another one. Anyway, it appears that the Complainant (Wilson) never got a copy of any letter from IPU advising him that he failed to identify any FBI employees who have engaged in misconduct. I will ask ☐ to draft a letter to send to OCA to send to Mr. Wilson (Complainant).

b6 -1
b7C -1

☐ -- I put the paperwork I had in your in-box with refernce to Complaint# 1245. We will address this tomorrow morning ☐

b6 -1
b7C -1

-----Original Message-----
**From:** ☐ (INSD) (FBI)
**Sent:** Wednesday, February 08, 2006 1:35 PM
**To:** ☐ (INSD) (FBI)
**Cc:** ☐ (OPR) (FBI)
**Subject:** RE: Hey it's the new guy

b6 -1
b7C -1

**UNCLASSIFIED**
**NON-RECORD**

☐ - did you say you put this complaint on ☐ desk?

-----Original Message-----
**From:** ☐ (INSD) (FBI)
**Sent:** Wednesday, February 08, 2006 12:35 PM
**To:** ☐ (INSD) (FBI)
**Subject:** Hey it's the new guy

b6 -1
b7C -1

**UNCLASSIFIED**
**NON-RECORD**

Do you have the hardcopy paperwork for complaint # 1245. ☐ received a call from Congressional Affairs (CA) on this matter. When you are available, may I come over and close the loop on this. I spoke to the CA a few minutes ago and they advised what information they are seeking, I am sure you already know what they want.

b6 -1
b7C -1

Thanks,

☐

**UNCLASSIFIED**

**UNCLASSIFIED**

**UNCLASSIFIED**

1

**U.S. Department** of **Justice**

Office of the Inspector General

#1245

b6 -1
b7C -1

*Washington, D.C. 20530*

DATE:        July 27, 2005

TO:          Charlene B. Thornton
             Assistant Director
             Inspection Division
             Federal Bureau of Investigation

FROM:        Glenn G. Powell
             Glenn G. Powell
             Special Agent in Charge
             Investigations Division

SUBJECT:     OIG Complaint No. 2005005905
             Subject: [          ] et al.
             New York Division
             FBI No.  OIG Initiated

b6 -1, 2
b7C -1, 2

■ We consider this a management matter.  The information is being provided to you
for whatever action you deem appropriate in accordance with your agency's policy
and regulations.  A copy of your findings and/or final action is not required by the
OIG.

☐ This matter is referred to your agency for investigation.  Please provide the OIG
with a copy of your final report on this matter.

☐ This complaint will be investigated by the OIG.

**IMPORTANT NOTICE**

Identifying information may have been redacted from the attached OIG Report/Referral pursuant to § 7 of the
IG Act or because an individual has (a) requested confidentiality or (b) expressed a fear of reprisal.  If you
believe that it is necessary that redacted information be made available to your Agency, you may contact the
Assistant Inspector General for Investigations.

Please be advised that, where adverse action is not contemplated, the subject of an investigation does not have a
right to have access to an OIG Report/Referral or to the identities of complainants or witnesses, and that, in all
cases, complainants and witnesses are entitled to protection from reprisal pursuant to the Inspector General
Act and the Whistleblower Protection Act.

**Attachment**

b6 -1
b7C -1

263-0-[    ]



OIG - INVESTIGATIONS DIVISION  -  IDMS

OIG NO.: LA-412-2005-005905-M

Received By:                                    Date Received:  05/01/2005     How Received:  M

b6 -1
b7C -1

SUBJECT OF A COMPLAINT:
Title:  SA
Component: FBI
Misc:   7/26/05 - FBI advised no record exist.
Home:
Phone:
Work:
Phone:

Pay Plan:
EOD Date:

ZIP:

ZIP:

SSNO:
D.O.B.:
Alien No.:
F.B.I.No.:
B.O.P.No.:
D/L No.:

b6 -2
b7C -2

SUBJECT OF A COMPLAINT:
Title:  SA
Component: FBI
Misc:
Home:
Phone:
Work:
Phone:

Pay Plan:
EOD Date:

ZIP:

ZIP:

SSNO:
D.O.B.:
Alien No.:
F.B.I.No.:
B.O.P.No.:
D/L No.:

b6 -1, 2
b7C -1, 2

SUBJECT OF A COMPLAINT:
Title:  SA
Component: FBI
Misc:   7/26/05 - FBI advised no record exist.
Home:
Phone:
Work:
Phone:

Pay Plan:
EOD Date:

ZIP:

ZIP:

SSNO:
D.O.B.:
Alien No.:
F.B.I.No.:
B.O.P.No.:
D/L No.:

b6 -2
b7C -2

COMPLAINANT:
Title:   CIVIL
Component: CITZN
Misc:
Home:
Phone:
Work:
Phone:
Confidential:

Watson, John
Pay Plan:
EOD Date:

ZIP:

ZIP:
Revealed:

SSNO:
D.O.B.:
Alien No.:
F.B.I.No.:
B.O.P.No.:
D/L No.:

Authority:  none

ALLEGATIONS:   412 Job Performance Failure
Occurrence Date:
CITY:                                    TIME:
                   State:              Zip:

Details:

The following information was provided by Complainant regarding allegations of misconduct
by FBI SAs.  In 1996, an UC FBI SA leaked information to the Complainant regarding a
"confidential" reprimand by the U.S. State Department regarding the Freeport-McMoran's
Grasberg mine in Indonesia.  According to the Complainant, the UC FBI SA gave him details
of the State Department's findings regarding an incident in which seven people associated
with the Grasberg mine were killed.  In 1996, the Complainant published information
regarding the killings.  (It should be noted that the Complainant does not provide any
specifics regarding his publication.)  The Complainant, a senior equity analyst, believes
the FBI is responsible for his inability to obtain a job in the financial services
industry.  The Complainant stated that he was interviewed "extensively" by the Subjects
following his 1996 publication.  According to the Complainant, he was unable to obtain any
information as a result of an October 2004 FOIA request to the FBI.

Page 1 of 2

OIG - INVESTIGATIONS DIVISION - IDMS                    OIG NO.: LA-412-2005-005905-M

DISPOSITION DATA: Date:  07/26/2005        Disposition: M        Approval:POWELL, GLENN G
Referred to Agency:                                              Component: CITZN
Civil Rights:  N                                                 Sensitive: N
Component Number:                          Consolidated Case Number:

Remarks:

7/27/05 - Acknol letter sent to the Complainant advising him that the matter was forwarded
to the FBI, Inspection Division.  (yht)

7/27/05 - Management referral to AD Thornton, FBI Inspection Division.  (yht)

Printed 07/27/2005        12:16:17

FBI (20-cv-10324)-6

John ████████ Wilson
c/o Barry A. Fisher
Fleishman & Fisher
1875 Century Park East Suite 2130
Los Angeles, CA 90067

16 April, 2005

Email: ████████████████████

US Department of Justice
Office of the Inspector General
950 Pennsylvania Avenue, N.W., Suite 4706
Washington, DC 20530-0001

Dear Sir:

I write as a follow up to the letter I sent to your office on 17 January, 2005 (copy enclosed). Could you please indicate your expected timing for a response to that letter.

Thank you.

Sincerely yours,

John Wilson

Encl.   Copy of letter sent to your office, dated 17 January, 2005



John [REDACTED] Wilson
c/o Barry A. Fisher
Fleishman & Fisher
1875 Century Park East Suite 2130
Los Angeles, CA 90067
Tel: 310-5571077

Email: [REDACTED]

17 January, 2005

1996
2005

US Department of Justice
Office of the Inspector General
950 Pennsylvania Avenue, N.W., Suite 4706
Washington, DC 20530-0001

Dear Sir:

I write because of the oversight responsibilities of your office. I was a mining company equity analyst on Wall Street from 1994 to 1998. I am a citizen of the U.S.A., was born in Australia, and have long lived in the United States, principally in New York and Philadelphia, where I received my MBA degree from Wharton. I am currently visiting family for an extended stay in Australia.

In 1996, in the course of performing my duties, information was leaked to me by a then undisclosed FBI agent who worked undercover as an environmentalist. This person gave me details of a State Department finding into an incident in which 7 people were recently killed in and around the publicly traded Freeport McMoran owned Grasberg mine in Indonesia. The information I received related to a confidential reprimand of the company by the U.S. Department of State for human rights and environmental abuses.

Since then, as set out below, I have been subjected to what appears to be a systematic retaliation campaign by persons associated with the FBI involving invasive and injurious tactics. Among other things, I have faced blacklisting in my industry. I have been unable to gain any employment in the financial services industry despite a recent boom in the mining sector and despite having worked on Wall Street for 6 years, mostly as a senior equity analyst.

For the many years following my 1996 publication regarding the Freeport McMoran killings, I have had many contacts with people who at some point revealed themselves as FBI agents on assignment connected to me, and who let me know that I angered important people by the publication. Some of these individuals engendered friendship with me under the auspices of other professional identities and each has interviewed me, two of them extensively. These include Steven Garber, now of White Plains, New York, formerly of New York City, Susan Holmes, now of Washington, D.C., formerly of New York City, and Livingston Sutro, of Sierra Vista, Arizona.

Aside from these agents, more than a dozen other people have identified themselves to me as having a high level of familiarity with these circumstances and appear to be FBI agents or associated with agents.

Given the fact that the source of the leaked information was itself an FBI agent and given the powerful business interests of Freeport, I am concerned that I am the subject of what appears to be either a case of FBI corruption or incompetence. The agent that passed to me the information about Freeport was a long term friend who targeted environmental extremists, and I am concerned I may have been maliciously profiled to justify the intense scrutiny I have faced.

An FOIA request to the FBI in October, 2004 yielded no information whatsoever.

I look forward to hearing from you. The most convenient means by which to correspond with me are through my attorney (details indicated above), alternatively via email.

Sincerely yours,


John Wilson



2 of 2

End of Data
02/10/06                    List Summary Response
13:19:29                                                              UNIO50MK

Type X, x, or / to view Full Response, then press Enter.

    Name: WILSON, JOHN, █████████
    M/R : M Case ID: HQ 263-0                    Serial: 8636
    Race: U  Sex: M  DOB/Event:           ID Info:
    Misc: NO ACTION                Entry Date: 10/13/2005 Class Level: SN

Command . . > ..........................................................
F1=Help,F3=Exit,F4=Prompt,F12=Cancel

4AÛ
                                                  06,002

FBI (20-cv-10324)-11






**U.S. Department** **Justice**

Office of the Inspector General

#1245

---

DATE:        July 27, 2005                    *Washington, D.C. 20530*

TO:          Charlene B. Thornton
             Assistant Director
             Inspection Division
             Federal Bureau of Investigation

FROM:        *Glenn G. Powell*
             Glenn G. Powell
             Special Agent in Charge
             Investigations Division

SUBJECT:     OIG Complaint No. 2005005905                    b6 -2
             Subject: [           ] et al.                   b7C -2
             New York Division
             FBI No.  OIG Initiated

■    **We consider this a management matter.  The information is being provided to you**
     **for whatever action you deem appropriate in accordance with your agency's policy**
     **and regulations.  A copy of your findings and/or final action is not required by the**
     **OIG.**

☐    **This matter is referred to your agency for investigation.  Please provide the OIG**
     **with a copy of your final report on this matter.**

☐    **This complaint will be investigated by the OIG.**

<u>IMPORTANT NOTICE</u>

Identifying information may have been redacted from the attached OIG Report/Referral pursuant to § 7 of the
IG Act or because an individual has (a) requested confidentiality or (b) expressed a fear of reprisal.  If you
believe that it is necessary that redacted information be made available to your Agency, you may contact the
Assistant Inspector General for Investigations.

Please be advised that, where adverse action is not contemplated, the subject of an investigation does not have a
right to have access to an OIG Report/Referral or to the identities of complainants or witnesses, and that, <u>in all
cases</u>, complainants and witnesses are entitled to protection from reprisal pursuant to the Inspector General
Act and the Whistleblower Protection Act.

① A-s [        ]  *No Action*                     b6 -1
   **Attachment**   *none of the individuals*       b7C -1
② [        ]  *named are FBI employees*
                *Unsubstantiated*
                *10-4-05/S*        *263-0-8636*

FBI (20-cv-10324)-16



OIG - INVESTIGATIONS DIVISION - IDMS

OIG NO.: LA-412-2005-005905-M                b6 -1

Received By: _____    Date Received: 05/01/2005   How Received: M      b7C -1

SUBJECT OF A COMPLAINT:                                                      b6 -2
Title:  SA                    Pay Plan:              SSNO:                    b7C -2
Component: FBI                EOD Date:              D.O.B.:
Misc:   7/26/05 - FBI advised no record exist.      Alien No.:
Home:                                                F.B.I.No.:
Phone:                                               B.O.P.No.:
                              ZIP:                   D/L No.:
Work:
Phone:                        ZIP:

SUBJECT OF A COMPLAINT:                                                      b6 -2
Title:  SA                    Pay Plan:              SSNO:                    b7C -2
Component: FBI                EOD Date:              D.O.B.:
Misc:                                                Alien No.:
Home:                                                F.B.I.No.:
Phone:                                               B.O.P.No.:
                              ZIP:                   D/L No.:
Work:
Phone:                        ZIP:

SUBJECT OF A COMPLAINT:                                                      b6 -2
Title:  SA                    Pay Plan:              SSNO:                    b7C -2
Component: FBI                EOD Date:              D.O.B.:
Misc:   7/26/05 - FBI advised no record exist.      Alien No.:
Home:                                                F.B.I.No.:
Phone:                                               B.O.P.No.:
                              ZIP:                   D/L No.:
Work:
Phone:                        ZIP:

COMPLAINANT:                  Wilson, John
Title:  CIVIL                 Pay Plan:              SSNO:
Component: CITZN              EOD Date:              D.O.B.:
Misc:                                                Alien No.:
Home:                                                F.B.I.No.:
Phone:                                               B.O.P.No.:
                              ZIP:                   D/L No.:
Work:
Phone:                        ZIP:
Confidential:                 Revealed:             Authority:   none

ALLEGATIONS:  412 Job Performance Failure
Occurrence Date:                        TIME:
CITY:                        State:              Zip:

Details:

The following information was provided by Complainant regarding allegations of misconduct
by FBI SAs.  In 1996, an UC FBI SA leaked information to the Complainant regarding a
"confidential" reprimand by the U.S. State Department regarding the Freeport-McMoran's
Grasberg mine in Indonesia.  According to the Complainant, the UC FBI SA gave him details
of the State Department's findings regarding an incident in which seven people associated
with the Grasberg mine were killed.  In 1996, the Complainant published information
regarding the killings.  (It should be noted that the Complainant does not provide any
specifics regarding his publication.)  The Complainant, a senior equity analyst, believes
the FBI is responsible for his inability to obtain a job in the financial services
industry.  The Complainant stated that he was interviewed "extensively" by the Subjects
following his 1996 publication.  According to the Complainant, he was unable to obtain any
information as a result of an October 2004 FOIA request to the FBI.

FBI (20-cv-10324)-17

John ████████Wilson                                        16 April, 2005
c/o Barry A. Fisher
Fleishman & Fisher
1875 Century Park East Suite 2130
Los Angeles, CA 90067

Email: ████████████████

US Department of Justice
Office of the Inspector General
950 Pennsylvania Avenue, N.W., Suite 4706
Washington, DC 20530-0001

Dear Sir:

I write as a follow up to the letter I sent to your office on 17 January, 2005 (copy enclosed). Could you please indicate your expected timing for a response to that letter.

Thank you.

Sincerely yours,

John Wilson

Encl.    Copy of letter sent to your office, dated 17 January, 2005



John ████ Wilson
c/o Barry A. Fisher
Fleishman & Fisher
1875 Century Park East Suite 2130
Los Angeles, CA 90067
Tel: 310-5571077

17 January, 2005

Email: ██████████████

US Department of Justice
Office of the Inspector General
950 Pennsylvania Avenue, N.W., Suite 4706
Washington, DC 20530-0001

Dear Sir:

I write because of the oversight responsibilities of your office. I was a mining company equity analyst on Wall Street from 1994 to 1998. I am a citizen of the U.S.A., was born in Australia, and have long lived in the United States, principally in New York and Philadelphia, where I received my MBA degree from Wharton. I am currently visiting family for an extended stay in Australia.

In 1996, in the course of performing my duties, information was leaked to me by a then undisclosed FBI agent who worked undercover as an environmentalist. This person gave me details of a State Department finding into an incident in which 7 people were recently killed in and around the publicly traded Freeport McMoran owned Grasberg mine in Indonesia. The information I received related to a confidential reprimand of the company by the U.S. Department of State for human rights and environmental abuses.

Since then, as set out below, I have been subjected to what appears to be a systematic retaliation campaign by persons associated with the FBI involving invasive and injurious tactics. Among other things, I have faced blacklisting in my industry. I have been unable to gain any employment in the financial services industry despite a recent boom in the mining sector and despite having worked on Wall Street for 6 years, mostly as a senior equity analyst.

For the many years following my 1996 publication regarding the Freeport McMoran killings, I have had many contacts with people who at some point revealed themselves as FBI agents on assignment connected to me, and who let me know that I angered important people by the publication. Some of these individuals engendered friendship with me under the auspices of other professional identities and each has interviewed me, two of them extensively. These include Steven Garber, now of White Plains, New York, formerly of New York City, Susan Holmes, now of Washington, D.C., formerly of New York City, and Livingston Sutro, of Sierra Vista, Arizona.

1 of 2

Aside from these agents, more than a dozen other people have identified themselves to me as having a high level of familiarity with these circumstances and appear to be FBI agents or associated with agents.

Given the fact that the source of the leaked information was itself an FBI agent and given the powerful business interests of Freeport, I am concerned that I am the subject of what appears to be either a case of FBI corruption or incompetence. The agent that passed to me the information about Freeport was a long term friend who targeted environmental extremists, and I am concerned I may have been maliciously profiled to justify the intense scrutiny I have faced.

An FOIA request to the FBI in October, 2004 yielded no information whatsoever.

I look forward to hearing from you. The most convenient means by which to correspond with me are through my attorney (details indicated above), alternatively via email.

Sincerely yours,


John Wilson


2 of 2