**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

JOHN WILSON,

                                        Plaintiff,

                        -v-

FEDERAL BUREAU OF INVESTIGATION,

                                        Defendant.

20 Civ. 10324 (LAK) (SDA)


**DEFENDANT'S REPLY MEMORANDUM OF LAW IN SUPPORT OF ITS**
**MOTION FOR SUMMARY JUDGMENT AND IN OPPOSITION TO PLAINTIFF'S**
**CROSS-MOTION FOR SUMMARY JUDGMENT**


DAMIAN WILLIAMS
United States Attorney
Southern District of New York
Counsel for Defendant
86 Chambers Street, 3rd Floor
New York, New York 10007
Telephone: (212) 637-2799
alexander.hogan@usdoj.gov

Of Counsel:

ALEXANDER J. HOGAN
Assistant United States Attorney

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ...................................................................................1

ARGUMENT ...........................................................................................................2

   I.  Adequacy of the Search ...................................................................................2

      A. Legal Standard ...................................................................................2

      B. Defendant's Searches Were Adequate ..................................................3

          1.  Reference File, Sentinel, and ESLUR...........................................3
          2.  137 and 270 Files.....................................................................5
          3.  Delta ....................................................................................7

   II.  The Claimed Exemptions are Proper ...............................................................8

      A. Standard of Review................................................................................9

      B. Defendant's Withholdings Pursuant to Exemptions (b)(6) and
         (b)(7)(C) Are Proper.........................................................................10

          1.  Exemption 6 ..........................................................................10
          2.  Exemption 7(C) ......................................................................13
          3.  Duplicate Pages ......................................................................16

   III.  In Camera Review is Not Warranted ...............................................................16

   IV.  Defendant Properly Segregated Releasable Portions of the
        Redacted Records............................................................................................17

CONCLUSION.........................................................................................................18

# TABLE OF AUTHORITIES

Page(s)

Cases

*ACLU v. DOJ,*
    655 F.3d 1 (D.C. Cir. 2011) ...................................................................................... 13

*ACLU v. U.S. Dep't of,*
    *Def.*, 901 F.3d 125 (2d Cir. 2018) ............................................................................ 10

*Adamowicz v. IRS,*
    552 F. Supp. 2d 355 (S.D.N.Y. 2008) ....................................................................... 3

*Amnesty Int'l v. CIA,*
    728 F. Supp. 2d 479 (S.D.N.Y. 2010) ................................................................. 6, 17

*Assadi v. U.S. Dep't of State,*
    No. 12-cv-1111 (LLS), 2014 WL 4704840 (S.D.N.Y. Sept. 22, 2014) ................... 10

*Associated Press v. Dep't of Defense,*
    554 F.3d 274 (2d Cir. 2009) .................................................................................... 13

*Associated Press v. United States Dep't of Justice,*
    549 F.3d 62 (2d Cir. 2008) ...................................................................................... 16

*Carney v. United States Dep't of Justice,*
    19 F.3d 807 (2d Cir. 1994) ............................................................................. *passim*

*CIA v. Sims,*
    471 U.S. 159 (1985) ................................................................................................... 9

*Cole v. Copan,*
    No. 19-cv-1183 (TSC), 2020 WL 7042814 (D.D.C. Nov. 30, 2020) ............ 6, 15, 17

*Competitive Enterprise Inst. v. Off. of Science & Tech. Polic,*
    241 F. Supp. 3d 14 (D.D.C. 2017) .......................................................................... 15

*DiGirolamo v. DEA,*
    No. 15-cv-5737 (ALC), 2017 WL 4382097 (S.D.N.Y. Sept. 29, 2017) ................... 15

*Dep't of the Interior v. Klamath Water Users Protective Ass'n,*
    532 U.S. 1 (2001) ................................................................................................. 9, 12

*Garcia v. U.S. Dep't of Justice,*
    181 F. Supp. 2d 356 (S.D.N.Y. 2002) ........................................................... 3, 15, 17

*Grand Cent. P'ship, Inc. v. Cuomo,*
    166 F.3d 473 (2d Cir. 1999) ................................................................................ 2, 15

*Halpern v. FBI,*
    181 F.3d 279 (2d Cir. 1999) ...................................................................................... 9

*John Doe Agency v. John Doe Corp.,*
    493 U.S. 146 (1989) ............................................................................................... 8, 9

*Judicial Watch, Inc. v. Export-Import Bank,*
    108 F. Supp. 2d 19 (D.D.C. 2000) ............................................................................ 2

*Ligorner v. Reno,*
    2 F. Supp. 2d 400 (S.D.N.Y. 1998) .................................................................. 14, 15

*Local 3, Int'l Brotherhood of Elec. Workers, AFLCIO v. N.L.R.B.,*
    845 F.2d 1177 (2d Cir. 1988) .................................................................................. 16

*Long v. Off. of Pers. Mgmt.*,
    692 F.3d 185 (2d Cir. 2012) ........................................................................ *passim*
*Martin v. DOJ*,
    488 F.3d 446 (D.C. Cir. 2007) .............................................................................. 9
*Maynard v. CIA*,
    986 F.2d 547 (1st Cir. 1993) ................................................................................. 3
*N.Y. Times Co. v. U.S. Dep't of Justice*,
    756 F.3d 100 (2d Cir. 2014) .................................................................................. 2
*New York Times Co. v. DOJ*,
    872 F. Supp. 2d 309 (S.D.N.Y. 2012) ................................................................... 8
*New York Times Co. v. Nat. Sec. Agency*,
    205 F. Supp. 3d 374 (S.D.N.Y. 2016) ................................................................. 17
*Pagan v. Treasury Inspector Gen. for Tax Admin.*,
    231 Fed. App'x 99 (2d Cir. 2007) ....................................................................... 14
*Pickering v. Dep't of Justice*,
    No. 19-cv-001F (LGF), 2021 WL 5810396 (W.D.N.Y. Dec. 7, 2021) ............... 6, 15
*Sack v. U.S. Dep't of Def.*,
    823 F.3d 687 (D.C. Cir. 2016) ............................................................................ 13
*U.S. Dep't of Def. v. Fed. Lab. Rel. Auth.*,
    510 U.S. 487 (1994) ............................................................................................ 11
*U.S. Dep't of State v. Washington Post Co.*,
    456 U.S. 595 (1982) ............................................................................... 10, 11, 14
*Vaughn v. Rosen*,
    484 F.2d 820 (D.C. Cir. 1973) ............................................................................ 10
*Wilner v. NSA*,
    592 F.3d 60 (2d Cir. 2009) ............................................................................... 9, 16
*Wood v. FBI*,
    432 F.3d 78 (2d Cir. 2005) .................................................................................. 10

Statutes

5 U.S.C. § 552 ............................................................................................... *passim*

Rules

Fed. R. Civ. P. 56(a) ............................................................................................ 9

Defendant the Federal Bureau of Investigation ("FBI"), respectfully submits this memorandum of law in further support of its motion for summary judgment and in opposition to Plaintiff John Wilson's cross-motion for summary judgment ("Pl. Mem." or "Plaintiff's Motion") in this action brought pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552.

## PRELIMINARY STATEMENT

In its memorandum of law in support of its summary judgment motion ("Def. Mem." or "Defendant's Motion"), *see* Dkt. No. 23, Defendant explained why its searches with respect to Plaintiff's FOIA requests were adequate. As described in the Declaration of Michael G. Seidel ("Seidel Decl."), *see* Dkt. No. 24, Defendant's searches identified 22 pages of records—eight pages were released in their entirety, seven pages were released in part and withheld in part, and seven pages were withheld in full (with two of those seven amounting to duplicates of pages accounted for elsewhere). *Id*. at ¶ 4. As stated in the Seidel Declaration, if the agency withheld information it did so pursuant to FOIA Exemptions (b)(6) and (b)(7)(C). *Id*. at ¶ 20; *see* 5 U.S.C. §§ 552(b)(6) and (b)(7)(C).

In Plaintiff's Motion, Plaintiff faults Defendant for not sufficiently justifying these withholdings. *See* Pl. Mem. at 10 ("The FBI therefore failed to meet its burden of demonstrating that it properly withheld documents in accordance with the claimed exemptions."). However, Defendant did not endeavor to justify these withholdings whatsoever in its motion because, as stated in the Seidel Declaration, "[b]y electronic mail ('email') dated July 27, 2021, Plaintiff's counsel represented to the United States Attorney's Office for the Southern District of New York that Plaintiff would not challenge the FBI's withholdings of records or portions of information within records. Therefore, the FBI's justification for withholding records or portions of information within records is not set forth herein." Seidel Decl. at ¶ 5. Similarly, in the parties'

1

joint letter to the Court in which a briefing schedule was set for this motion practice, the parties stated, "Plaintiff still intends to challenge the adequacy of the FBI's search."  *See* Dkt. No. 18.  No mention was made of challenging Defendant's withholdings.  *See also* Pl. Mem. at 5 ("The parties jointly informed the Court that Mr. Wilson intended to challenge the adequacy of Defendant's search and filed a proposed briefing schedule for summary judgment on April 26, 2021.").

Given Plaintiff now challenges certain withholdings, Defendant has set forth the basis for these withholdings in the Second Declaration of  Michael G. Seidel ("Second Seidel Declaration" or "Second Seidel Decl.").  Additionally, Defendant replies to Plaintiff's argument that its search was inadequate.

## ARGUMENT

### I.    Adequacy of the Search

#### A.    Legal Standard

"In order to prevail on a motion for summary judgment in a FOIA case, the defending agency has the burden of showing that its search was adequate."  *Long v. Off. of Pers. Mgmt.*, 692 F.3d 185, 190 (2d Cir. 2012) (quoting *Carney v. United States Dep't of Justice*, 19 F.3d 807, 812 (2d Cir. 1994)).  A search is judged by the efforts the agency undertook, not by its results.  *See Grand Cent. P'ship, Inc. v. Cuomo*, 166 F.3d 473, 489 (2d Cir. 1999).  In other words, the agency must simply demonstrate that its search was "reasonably calculated to discover the requested documents."  *Id.*; *see also N.Y. Times Co. v. U.S. Dep't of Justice*, 756 F.3d 100, 124 (2d Cir. 2014) ("The adequacy of a search is not measured by its results, but rather by its method.").  The search "need not be perfect, but rather need only be reasonable," *Grand Cent. P'ship*, 166 F.3d at 489, because "FOIA was not intended to reduce government agencies to full-time investigators on behalf of requesters." *Judicial Watch, Inc. v. Export-Import Bank*, 108 F. Supp. 2d 19, 27 (D.D.C. 2000) (citation omitted).  An agency's search may be reasonable even if it does not return every

responsive document.  *See Adamowicz v. IRS*, 552 F. Supp. 2d 355, 361 (S.D.N.Y. 2008).  "If an agency demonstrates that it has conducted a reasonable search for relevant documents, it has fulfilled its obligations under FOIA and is entitled to summary judgment on this issue." *Garcia v. U.S. Dep't of Justice*, 181 F. Supp. 2d 356, 366 (S.D.N.Y. 2002).  An agency may satisfy its burden of demonstrating an adequate search through "[a]ffidavits or declarations supplying facts indicating that the agency has conducted a thorough search." *Carney*, 19 F.3d at 812 (footnote omitted).  Such declarations may be made by the individuals supervising each agency's search, rather than by each individual who participated.  *Id.* at 814.  Where an agency's declaration demonstrates that it has conducted a reasonable search, "the FOIA requester can rebut the agency's affidavit only by showing that the agency's search was not made in good faith." *Maynard v. CIA*, 986 F.2d 547, 560 (1st Cir. 1993); *see also Carney*, 19 F.3d at 812. "[P]urely speculative claims about the existence and discoverability of other documents" are insufficient to overcome the good faith presumption.  *Carney*, 19 F.3d at 813 (internal quotation and citation omitted).  Thus, a court may award summary judgment if the affidavits provided by the agency are "adequate on their face." *Id.* at 812.

### B.    Defendant's Searches Were Adequate

#### 1.   Reference File, Sentinel, and ESLUR

As an initial matter, the first several alleged inadequacies in the search that Plaintiff identifies appear to be based on Plaintiff's mistaken assumption that Defendant has not searched certain databases.  Defendant has indeed searched the appropriate databases identified by Plaintiff. First, Plaintiff complains that Defendant did not search "reference files" in response to Plaintiff's

First Request.[1]  Pl. Mem. at 7.  In its Motion, Defendant explained its process with respect to reference files and why it did not search for them in response to Plaintiff's First Request.  *See* Def. Mem. at 11.  Regardless, Defendant did search for such a reference file in response to Plaintiff's Second Request, which it processed and released to Plaintiff (subject to certain withholdings).  *Id*. at 11-12; *see also* Pl. Mem. at 9 (noting that Defendant searched for and processed the reference file).

Second, Plaintiff faults Defendant for not searching the Sentinel case management system. *See* Pl. Mem. at 8.  Again, Defendant conducted a search of Sentinel in response to Plaintiff's Third Request.  *Id*. at 9 (noting that Defendant conducted this search); *see also* Def. Mem. at 12. True (though irrelevant), Defendant did not do so in response to Plaintiff's First Request because, as Defendant has explained, at the time of the First Request, Defendant was in the midst of transitioning to its usage of Sentinel.  Accordingly, Defendant's practice was to only search Sentinel to the extent it believed a document was created on or after the date that Sentinel became the case management system effective FBI-wide, which was July 1, 2012.  Given there was no reason to believe that was the case, Defendant did not conduct such a search as to Plaintiff's First Request.  *See* Second Seidel Decl. at ¶¶ 10, 13.  In any event, such a search did occur when Plaintiff submitted his Third Request, many years after Sentinel had gone into effect.  Seidel Decl. at ¶ 42. Consistent with Defendant's expectations, no additional records were identified as compared to those identified as to Plaintiff's prior requests.  *Id*.

The next database Plaintiff erroneously claims was not searched is the electronic surveillance ("ELSUR") indices, which is a records system that relates to electronic surveillance

---

[1] Capitalized terms used herein have the same meaning as those used in Defendant's Motion unless otherwise stated.

sought, administered, and/or conducted by the FBI.  *See* Seidel Decl. at ¶ 31.  As Defendant has explained, "[t]he ELSUR indices is a separate system of records, but this does not mean that the data housed within the ELSUR indices is not also available in the CRS [which Defendant has searched], because targets of electronic surveillance are also indexed in the CRS . . . Thus, searches of the CRS . . . are reasonably expected to locate records relating to electronic surveillance."  Seidel Decl. at ¶ 31.  Again, even though the search was not likely to identify responsive records, Defendant did search this system of records in response to Plaintiff's Second Request, and, as expected, that search did not lead to any responsive records.  *See* Second Seidel Decl. at ¶ 16.  With respect to Plaintiff's Third Request—there was no reason to believe that, since the date of his Second Request, any new information would be located via a search of the ELSUR, especially given a search of the overlapping CRS (which Defendant did undertake in response to the Third Request) did not identify any new records or leads that were not previously identified.  *Id*. at ¶¶ 21-22.

### 2.  137 and 270 Files

As part of its program relating to confidential human sources, the FBI maintains CRS file classification numbers of 137 and 270.  Second Seidel Decl. at ¶ 6.  These 137 and 270 files are used to compile law enforcement records that contain the identity of confidential sources and cooperating witnesses, respectively, along with the information furnished by confidential sources or cooperating witnesses, and information regarding law enforcement techniques, procedures, and guidelines related to the confidential human source program.  *Id*.  Plaintiff contends that Defendant should have searched these files.

However, if there was information relating to Plaintiff in a 137 or 270 file, then it would have been reflected when Defendant searched the CRS.  As explained in the Second Seidel

Declaration, "[i]f 137 or 270 file classifications exist concerning or mentioning Plaintiff, those files would have been indexed to Plaintiff, either as a main entry or a reference entry, and would have been located within the CRS indices via the searches conducted in response to Plaintiff's FOIPA requests."  Second Seidel Decl. at ¶ 5.

Accordingly, the search was reasonably calculated to uncover responsive records.  The databases that Defendant searched would reasonably be expected to alert it to the need to search other locations if such records existed.  *See Amnesty Int'l v. CIA*, 728 F. Supp. 2d 479, 498 (S.D.N.Y. 2010) ("An agency need only pursue leads that raise red flags pointing to the probable existence of responsive agency records that arise during its efforts to respond to a FOIA request.") (internal citation and quotation omitted).  Given the search that Defendant conducted gave it no reason to believe that records existed elsewhere, it need not search further.  Just as Defendant does not have an obligation to search every desk drawer within the agency, it need not search every electronic database.  Rather, it is reasonable to rely on  the primary, central database and then only pursue other leads if results from a search of the primary database indicate that such leads exist. *See Cole v. Copan*, No. 19-cv-1182 (TSC), 2020 WL 7042814 (D.D.C. Nov. 30, 2020) ("[A]n agency need not search every record system for its search to be considered reasonable; a search is reasonable if it includes all systems that are likely to turn up the information requested.") (internal citation and quotation omitted).

This was the result reached in a factually similar case—*Pickering v. Dep't of Justice*, No. 19-cv-001F (LGF), 2021 WL 5810396, at *8 (W.D.N.Y. Dec. 7, 2021).  There, "Plaintiff's FOIA request [sought] records pertaining to [an individual], who is a subject reasonably expected to be indexed within the automated indices available in Sentinel, and given the comprehensive nature of the information contained in the CRS, the CRS is the FBI system of records where responsive

6

records could reasonably be expected to be found." *Id*. (internal quotations omitted).  The court rejected Plaintiff's argument that the FBI's failure to search other records system amounted to an inadequate search and concluded that the plaintiff had not provided "any information upon which [the FBI] could reasonably conclude records, including records pertaining to [subjects], would reside outside the CRS." *Id*.  The court stated, "[s]ignificantly, the FBI is not required to search all records systems proposed by a requesting party, including those specified by Plaintiff in his FOIA Request." *Id*.  The same is true here—Plaintiff may want the FBI to search these files, but it is under no obligation to do so if it is not reasonable to believe that such a search will lead to responsive records.

### 3.   Delta

Delta is the FBI's official electronic record-keeping system for the management of confidential human sources.  Second Seidel Decl. at ¶ 12.  Plaintiff claims that Defendant should have searched Delta because he claims that third-party individuals discussed information with him, including their employment with the FBI in a possible informant capacity.  *See* Pl. Mem. at 8-9.  As discussed above, Defendant does not search databases unless there is reason to believe that a responsive record would exist therein, and nothing in the FBI's evaluation of Plaintiff's FOIA request or its searching indicated that such a record would exist in Delta.  As stated in the Second Seidel Declaration, Plaintiff "provided no justification for the FBI to search Delta and the FBI found no clear lead indicating such a search was warranted," as the "results of the CRS index search were insufficient to lead the FBI to believe that records would exist in Delta."  Second Seidel Decl. at ¶¶ 12, 17, 23.[2]

---

[2] In an "expert report" submitted in connection with his summary judgment motion, it is argued that Defendant's failure to search Delta, 137 files, and 270 files amounts to an inadequate search because while "targets" are indexed in the CRS, "references" are not.  *See* Dkt. No. 30-11 at 5.

## II.      The Claimed Exemptions are Proper

As noted above, Defendant's search identified 22 pages of records, of which the FBI released eight pages in full, released seven pages in part, and withheld in full seven pages of records (two of which were withheld in full as duplicates accounted for elsewhere in the FBI's production).  *See supra* at 1.  In Plaintiff's Opposition, he argues that "the FBI failed in this case to provide any declaration justifying its invocation of Exemptions 6 and 7(C) in withholding seven pages of responsive documents."  Pl. Mem. at 10; *see also id.* at 2 ("Plaintiff moves for summary judgment because Defendant has failed to . . . provide logical or plausible explanations for its withholding of seven pages of responsive documents under Exemptions 6 and 7(C).").  Plaintiff's Opposition continues to request that the Court conduct an *in camera* review.  In so doing, Plaintiff argues that "the FBI continues to withhold 7 pages of documents.  Of these pages, two . . . are purported to be duplicates . . . The FBI has withheld the five remaining pages . . . under FOIA exemptions (b)(6)-1 and (b)(7)(C)-1."  *Id.* at 10-11.  In light of Plaintiff limiting his motion for summary judgment (*i.e.* his opportunity to challenge the agency's response to his FOIA requests) to these seven pages withheld in full, Defendant only justifies these withholdings and not the seven pages that were released in part and withheld in part.[3]

---

This is flatly contradicted by both the Seidel Declaration and the relevant facts.  The search of the CRS did indeed reveal a reference file with respect to Plaintiff, so this conclusory assertion in this "expert" report is simply belied by the facts of this case—let alone a declaration by a section chief of the FBI's records and information division.

[3] As noted above, Plaintiff had already made a representation to Defendant as to what summary judgment briefing would entail in this action, which is why, in Defendant's Motion, it did not justify its withholdings—because Plaintiff said he would not challenge them.  *See supra* at 1-2. Plaintiff should not be permitted to change the scope of this summary judgment motion practice yet again, especially given, now, his position has been firmly set forth before the Court in his motion for summary judgment.

### A.  Standard of Review

The Freedom of Information Act, 5 U.S.C. § 552, represents a balance struck by Congress "'between the right of the public to know and the need of the Government to keep information in confidence . . . .'" *John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 152 (1989) (quoting H.R. Rep. 89-1497, 89th Cong., 2d Sess. 6 (1966)); *New York Times Co. v. DOJ*, 872 F. Supp. 2d 309, 314 (S.D.N.Y. 2012).  Thus, while FOIA requires disclosure under certain circumstances, the statute recognizes "that public disclosure is not always in the public interest," *CIA v. Sims*, 471 U.S. 159, 166-67 (1985), and mandates that records need not be disclosed if "the documents fall within [the] enumerated exemptions." *Dep't of the Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 7 (2001); *see also Martin v. DOJ*, 488 F.3d 446, 453 (D.C. Cir. 2007) ("Recognizing, however, that the public's right to information was not absolute and that disclosure of certain information may harm legitimate governmental or private interests, Congress created several exemptions to FOIA disclosure requirements.") (internal quotations omitted); *John Doe Agency*, 493 U.S. at 152 (FOIA exemptions are "intended to have meaningful reach and application").

Most FOIA actions are resolved by summary judgment.  *See, e.g., Carney*, 19 F.3d at 812; *New York Times Co. v. DOJ*, 915 F. Supp. 2d 508, 531 (S.D.N.Y. 2013).  Summary judgment is warranted if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In FOIA cases, the government meets its burden of demonstrating that it properly withheld documents if it produces declarations "giving reasonably detailed explanations why any withheld documents fall within an exemption are sufficient to sustain the agency's burden." *Carney*, 19 F.3d at 812.  An agency's declarations in support of its withholdings are "accorded a presumption of good faith."  *Id.* (internal citation and

quotation omitted); *see also Halpern v. FBI*, 181 F.3d 279, 295 (2d Cir. 1999).  "[A]n agency's justification for invoking a FOIA exemption is sufficient if it appears logical or plausible."  *Wilner v. NSA*, 592 F.3d 60, 73 (2d Cir. 2009) (citation and internal quotation marks omitted).

### B.  Defendant's Withholdings Pursuant to Exemptions (b)(6) and (b)(7)(C) Are Proper

Defendant withheld the five challenged pages pursuant to Exemptions 6 and 7(C), which protect from disclosure information the release of which would constitute an invasion of personal privacy and could reasonably be expected to constitute an invasion of personal privacy.  Defendant properly applied relevant exemptions to disclosure in making the challenged withholdings.  The factual basis for an agency's withholdings is typically put forward in declarations by agency personnel, *see Vaughn v. Rosen*, 484 F.2d 820, 826-27 (D.C. Cir. 1973), to enable a court to decide whether the exemptions are justified.  *See, e.g.*, *Carney*, 19 F.3d at 812; *Assadi v. U.S. Dep't of State*, No. 12-cv-1111 (LLS), 2014 WL 4704840, at *2 (S.D.N.Y. Sept. 22, 2014). "[T]he agency's justification is sufficient if it appears logical and plausible."  *ACLU v. U.S. Dep't of Def.*, 901 F.3d 125, 133-34 & n.9 (2d Cir. 2018), as amended (Aug. 22, 2018).   Through the Second Seidel Declaration, Defendant has satisfied this standard for both of the asserted exemptions.

#### 1.  Exemption 6

Exemption 6 exempts from disclosure information that "would constitute a clearly unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(6).  The purpose of Exemption 6 is to "protect individuals from the injury and embarrassment that can result from the unnecessary disclosure of personal information."  *U.S. Dep't of State v. Washington Post Co.*, 456 U.S. 595, 599 (1982).  The Second Circuit has adopted a two-part inquiry to determine whether information falls under Exemption 6: courts must first assess "whether the personal information is contained in a file similar to a medical or personnel file," and then "balance the public's need for the

information against the individual's privacy interest to determine whether . . . disclosure . . . would constitute a clearly unwarranted invasion of personal privacy." *Wood v. FBI*, 432 F.3d 78, 86 (2d Cir. 2005) (internal citation and quotation omitted).  As to the second step, "the bar is low: FOIA requires only a measurable interest in privacy to trigger the application of the disclosure balancing tests." *Long*, 692 F.3d at 191 (internal citation and quotation omitted).  Substantial privacy interests cognizable under the FOIA are generally found to exist in such personally identifiable information as a person's name, physical address, email address, image, computer user ID, phone number, date of birth, criminal history, medical history, and social security number.  *See Wash. Post Co.*, 456 U.S. at 600 (finding that "[i]nformation such as place of birth, date of birth, date of marriage, employment history, and comparable data is not normally regarded as highly personal, and yet . . . such information . . . would be exempt from any disclosure that would constitute a clearly unwarranted invasion of personal privacy").  If a protected privacy interest is found, then it "must be weighed against the public interest that would be advanced by disclosure." *Long*, 692 F.3d at 193.  But the "only relevant public interest in disclosure to be weighed in this balance is the extent to which disclosure would serve the core purpose of the FOIA, which is contribut[ing] *significantly* to public understanding *of the operations or activities of the government*." *U.S. Dep't of Def. v. Fed. Lab. Rel. Auth.*, 510 U.S. 487, 495 (1994) (first emphasis added) (internal citation and quotation omitted).

Here, as described in the Second Seidel Declaration, the five pages of records withheld in full are documents reflecting a "records check" done by the FBI on an FBI special agent ("SA"). These records contain personally identifiable information ("PII"), such as the SA's date of birth and social security number, the SA's FBI employment history, and his or her FBI personnel file number, General Schedule ("GS") classification, salary, and promotion history.  Second Seidel

Decl. at ¶ 39.   The FBI records check pages also include the SA's level of security clearance, assigned field office, building location, work phone number, office room number, and squad name. *Id*.   These facts easily satisfy the first step of the analysis noted above—these are indeed pieces of information akin to what is contained in a personnel file.

Moreover, these are the very types of information identified above in which individuals have a substantial privacy interest—such as a person's name, physical address, email address, phone number, date of birth, and social security number.   *See supra* at 10-11.   This alone is sufficient to warrant the invocation of Exemption 6.

Additionally, as further explained in the Second Seidel Declaration, revealing where or to what squad an FBI employee is assigned or what particular investigation he or she is working on may seriously prejudice his or her effectiveness in conducting investigations and in performing other day-to-day work.   Second Seidel Decl. at ¶ 40.   The privacy consideration is also applied to protect FBI SAs, as individuals, from unnecessary, unofficial questioning as to the conduct of investigative and other activities, regardless of current employment with the FBI.   *Id*.   FBI SAs investigate potential and actual criminal and national security violations.   The release of an SA's identity (including his or her location) could trigger hostility toward the SA as he or she investigates potential and actual criminal violations.   *Id*.   During an investigation, an SA may conduct searches and make arrests, both of which result in reasonable, but nonetheless, serious disturbances to people and their lives.   *Id*.   Persons targeted in investigations, and those sympathetic to those targeted, could seek to harass or even inflict violence on an SA based on his or her participation in an investigation.   *Id*.

As the Second Circuit has explained, "employees in both [ ] sensitive agencies and [ ] sensitive occupations have a cognizable privacy interest in keeping their names from being

disclosed wholesale"—particularly those working in "national security, homeland security, or law enforcement," as "the mission and nature of the work performed . . . render[s] not only individuals in specific occupations within the agencies, but any employee in the agency, vulnerable to harassment or attack." *Long*, 692 F.3d at 192.

On the other side of the equation, there is no public interest served by disclosing an SA's identity (and accompanying personal details) because his or her identity would not, itself, significantly increase the public's understanding of the FBI's operations and activities.  Here, a referral was made to the OIG based upon Plaintiff's complaint about alleged wrongful conduct by people allegedly associated with the FBI.  *See* Def. Mem. at 12-13.  It was determined that these allegations were not credible.  *Id*.  Revealing the identity of an SA on whom a "records check" was run does not "significant[ly]" add to the public interest—Plaintiff knows the listed individuals against whom he made complaints and he knows how the FBI adjudicated those complaints (it found the allegations not credible and closed the matter).  Learning the personal details noted above relating to the SA in no way informs any public interest in this matter.

### 2.  Exemption 7(C)

Exemption 7 protects from disclosure "records or information compiled for law enforcement purposes" where disclosure would result in one of six enumerated harms set forth in 5 U.S.C. § 552(b)(7)(A)-(F).  "Exemption 7 uses the term 'law enforcement' to describe 'the act of enforcing the law, both civil and criminal.'" *Sack v. U.S. Dep't of Def.*, 823 F.3d 687, 694 (D.C. Cir. 2016) (internal citation omitted).  Exemption 7(C) in particular  shields "records or information compiled for law enforcement purposes," the production of which "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C).  Similar to the analysis under Exemption 6, courts "must balance the public interest in disclosure

13

against the privacy interest Congress intended the Exemption to protect." *ACLU v. DOJ*, 655 F.3d 1, 6 (D.C. Cir. 2011) (internal quotation and citation omitted).  However, "Exemption 7(C) is more protective of privacy than Exemption 6 and thus establishes a lower bar for withholding material." *Id.* (internal quotation and citation omitted).  Indeed, the privacy interest at issue need only be "more than *de minimis*."  *Associated Press v. Dep't of Defense*, 554 F.3d 274, 286 (2d Cir. 2009).

The five fully withheld pages were withheld pursuant to both Exemptions 6 and 7(C), and Defendant has already explained why the higher bar of Exemption 6 is satisfied.  Accordingly, not only are the withholdings under Exemption 7(C) appropriate in light of this lower threshold, but, in any event, each of these five pages were withheld on both grounds.  Second Seidel Decl. at ¶¶ 37, 38.  Accordingly, so long as the Court determines that one ground is valid, then the withholdings are proper.

As a threshold matter for Exemption 7(C), these records were compiled for a law enforcement purpose.  As described in Defendant's Motion, the records Defendant identified relate to Defendant's investigation of Plaintiff's complaint to the Department of Justice Inspector General ("OIG").  *See* Def. Mem. at 12-13; *see also* Second Seidel Decl. at ¶ 33.  Specifically, the OIG forwarded Plaintiff's allegation of misconduct by FBI employees to the FBI's Inspection Division ("INSD"), which reviews and investigates allegations of criminal behavior and other types of misconduct of FBI employees.  *Id.*  "It is settled law that an Inspector General of a federal government agency engages in law enforcement activities within the meaning of FOIA."  *Ligorner v. Reno*, 2 F. Supp. 2d 400, 404 (S.D.N.Y. 1998) (internal citation and quotation omitted); *see also Pagan v. Treasury Inspector Gen. for Tax Admin.*, 231 Fed. App'x 99, 100 (2d Cir. 2007) ("Moreover, it is settled law in this Court that an Inspector General of a federal government agency

engages in law enforcement activities within the meaning of FOIA.") (internal citation and quotation omitted).

The question, then, is whether the disclosure of these records is unwarranted in light of personal privacy concerns. For the reasons discussed above, it has been found that the disclosure of the types of information withheld by Defendant would amount to "a clearly unwarranted invasion of personal privacy." *See Wash. Post Co*., 456 U.S. at 600. Surely, an individual has more than a *de minimis* interest in keeping this information private for the reasons discussed above. *See supra* at 12-13. And, again, on the other side of the equation, Plaintiff does not identify what revealing this information would add to the public's understanding of how the government functions. *See Pickering*, 2021 WL 5810396, at *14-15 (upholding FBI's invocation of Exemptions b(6) and b(7)(C) to protect personal information of an SA because there is a privacy interest in the information and its release would not further FOIA's "basic purpose of opening agency action to the light of public scrutiny"); *Garcia*, 181 F. Supp. 2d at 374 (upholding invocation of Exemption 7(C) to protect identities of FBI special agents); *Ligorner*, 2 F. Supp. 2d at 405-406 ("If the information sought through FOIA does not shed light on agency conduct, but rather focuses on isolated low-level, alleged government wrongdoers, it does not serve a substantial public interest."); *see also DiGirolamo v. DEA*, No. 15-cv-5737 (ALC), 2017 WL 4382097, at *4 (S.D.N.Y. Sept. 29, 2017) (explaining that given "law enforcement officers, government employees, and third-party individuals' interest in the nondisclosure of their identifying information," "the redaction of their identifying information . . . is a typical application of Exemption 7(C)") (citing *Grand Cent. P'ship*, 166 F.3d at 485).

15

### 3. Duplicate Pages

Lastly, Plaintiff challenges Defendant's withholding of two pages as duplicates of other pages accounted for elsewhere in the Defendant's processing of records. *See* Second Seidel Decl. at ¶ 3. However, "FOIA does not require agencies to produce duplicate records." *Competitive Enterprise Inst. v. Off. of Science & Tech. Polic*, 241 F. Supp. 3d 14, 22 (D.D.C. 2017) (collecting cases). Moreover, as noted above, agency declarations are accorded a presumption of good faith. *See supra* at 9. Plaintiff has offered no more than pure speculation to believe that Defendant is acting with anything but good faith. *See Cole*, 2020 WL 7042814, at *3 ("The court must accord agency affidavits a presumption of good faith, which cannot be rebutted by purely speculative claims about the existence and discoverability of other documents.") (internal citation and quotation omitted).

## III.   *In Camera* **Review is Not Warranted**

Plaintiff requests that the Court conduct an *in camera* review of the disputed records to determine whether they should be withheld under the claimed exemptions. *See* Pl. Mem. at 10-11. However, *in camera* review is "the exception, not the rule," and "the propriety of such review is a matter entrusted to the district court's discretion." *Local 3, Int'l Brotherhood of Elec. Workers, AFLCIO v. N.L.R.B.*, 845 F.2d 1177, 1180 (2d Cir. 1988). "*In camera* review is appropriate where the government seeks to exempt entire documents but provides only vague or sweeping claims as to why those documents should be withheld. Only if the government's affidavits make it effectively impossible for the court to conduct *de novo* review of the applicability of FOIA exemptions is *in camera* review necessary." *Associated Press v. United States Dep't of Justice*, 549 F.3d 62, 67 (2d Cir. 2008) (internal citations omitted).

"Summary judgment is warranted on the basis of agency affidavits when the affidavits describe the justifications for nondisclosure with reasonably specific detail, demonstrate that the

information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." *Wilner*, 592 F.3d at 73 (internal quotation and citation omitted).

The Second Seidel Declaration is sufficiently detailed to allow this Court to determine whether the withholdings are proper. Defendant's reasons for withholding are not "vague" nor are their claims to withholding "sweeping." *Associated Press*, 549 F.3d at 67. To the contrary, Defendant has specifically articulated its reasoning for all the withholdings that Plaintiff challenges and described the information contained therein—all of which is clearly the type of information routinely withheld to protect personal privacy. *See, e.g., New York Times Co. v. NSA*, 205 F. Supp. 3d 374, 385 (S.D.N.Y. 2016) (declining *in camera* review where no evidence contradicted agency declaration, declaration was "quite detailed," and there was "no evidence from which one could infer bad faith" on the agency's part); *Garcia*, 181 F. Supp. 2d at 371 (same).

## IV.   Defendant Properly Segregated Releasable Portions of the Redacted Records

FOIA provides that "[a]ny reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt under this subsection." 5 U.S.C. § 552(b). "[A]gencies are entitled to a presumption that they complied with the obligation to disclose reasonably segregable material." *Cole*, 2020 WL 7042814, at *7 (internal citation and quotation omitted). "[T]he law is clear that the reasonable segregation requirement of FOIA does not require [an agency] to commit significant time and resources to a task that would yield a product with little, if any, informational value." *Amnesty Int'l*, 728 F. Supp. 2d at 529 (internal citation and quotation omitted).

Here, Defendant reasonably segregated its release by conducting a review of the records with an eye toward whether it could segregate information. Second Seidel Decl. at ¶ 41. In so doing, Defendant determined that, for seven pages of records, information could be segregated

such that portions of the records could be released. *Id.* However, as to those records withheld in full, Defendant determined that "any non-exempt information on these pages is so intertwined with exempt information that no information can be reasonably segregated for release. Any further segregation of this intertwined information would employ finite resources only to produce disjointed words, phrases, or sentences, that taken separately or together, would have minimal or no informational content." *Id.*

Moreover, Plaintiff offers no basis to rebut the presumption to which Defendant is entitled, especially in light of Defendant's explanation articulated above and the fact that Defendant did indeed produce some records in part—thus evidencing its analysis to determine whether such segregation was possible. Accordingly, the Court should find that all "reasonably segregable portion[s]" of the responsive records have been provided to Plaintiff. *See* 5 U.S.C. § 552(b).

## CONCLUSION

For the reasons stated herein, Defendant's motion for summary judgment should be granted in its entirety and Plaintiff's motion should be denied.

Dated: January 20, 2022
   New York, New York


                                        Respectfully submitted,

                                        DAMIAN WILLIAMS
                                        United States Attorney
                                        Southern District of New York

                                By:     */s/ Alexander J. Hogan*
                                        ALEXANDER J. HOGAN
                                        Assistant United States Attorney
                                        86 Chambers Street, Third Floor
                                        New York, New York 10007
                                        Telephone: (212) 637-2799
                                        Facsimile: (212) 637-2686
                                        E-mail: alexander.hogan@usdoj.gov