UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JOHN WILSON,<br><br>    Plaintiff,<br><br>          v.<br><br>FEDERAL BUREAU OF INVESTIGATON,<br><br>    Defendant. | Civil Action No. 20-cv-10324-LAK-SDA |

## **SECOND DECLARATION OF MICHAEL G. SEIDEL**

I, Michael G. Seidel, declare as follows:

(1)     I am the Section Chief of the Record/Information Dissemination Section ("RIDS"), Information Management Division ("IMD"), Federal Bureau of Investigation ("FBI"), Winchester, Virginia. My background and qualifications are provided in my first declaration filed September 13, 2021 (ECF No. 24) (hereinafter "First Seidel Declaration").

(2)     Because of the nature of my official duties, I am familiar with the procedures followed by the FBI in responding to requests for information from its files pursuant to the provisions of the FOIA, 5 U.S.C. § 552, and the Privacy Act, 5 U.S.C. § 552a. Specifically, I am aware of the FBI's handling of Plaintiff's Freedom of Information/Privacy Act ("FOIPA") requests for records pertaining to himself.

(3)     This declaration is submitted in response to Plaintiff's Memorandum of Law in Support of Plaintiff's Cross-Motion for Summary Judgment and Opposition to Defendant's Motion for Summary Judgment dated November 15, 2021 (ECF No. 29) (hereafter referred to as

1

"Plaintiff's Opposition") and supplements and incorporates by reference the information provided in the First Seidel Declaration. This declaration provides, in response to Plaintiff's Opposition, further details supporting the adequacy of the FBI's search for responsive records; and, in accordance with *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973), this declaration provides additional justification for withholding records in their entirety pursuant to FOIA Exemptions 6 and 7(C), 5 U.S.C. §§ 552(b)(6) and (b)(7)(C). In response to Plaintiff's three requests, the FBI processed a total of 22 pages of responsive records subject to the FOIPA. Of these pages, the FBI released eight (8) pages in their entirety, released seven (7) pages in part, and withheld seven (7) pages in full, two (2) of which were duplicates of pages accounted for elsewhere in the FBI's production.[1]

## THE ADEQUACY OF THE FBI'S SEARCH

(4) Plaintiff challenges the adequacy of the FBI's search, arguing that the FBI failed to conduct a search reasonably designed to identify and locate responsive records. Plaintiff argues that the FBI failed to search for reference files and failed to search other databases likely to hold records responsive to the request, including the electronic surveillance ("ELSUR") indices, Sentinel, the confidential human source database Delta, 137 files, and 270 files.

(5) RIDS search policy is to conduct an index search of the CRS using an individual's name, an organization's name, or an event. If 137 or 270 file classifications exist concerning or mentioning Plaintiff, those files would have been indexed to Plaintiff, either as a main entry or a reference entry, and would have been located within the CRS indices via the searches conducted

---

[1] Plaintiff's Opposition challenges the FBI's withholding of seven (7) pages in full, to include the FBI's use of Exemptions 6 and 7(C) to withhold in full five (5) of those seven pages, and the withholding of two (2) of those seven pages in their entirety as duplicates; and the adequacy of the FBI's search for responsive records.

in response to Plaintiff's FOIPA requests.

(6) As a part of the FBI's Confidential Human Source ("CHS") program, the FBI maintains CRS file classification numbers 137 and 270 for purposes of compiling law enforcement records, which contain the identity of confidential sources and cooperating witnesses, the information furnished by confidential sources or cooperating witnesses, and information regarding law enforcement techniques, procedures, and guidelines related to the CHS program.

(7) As described in the First Seidel Declaration, ¶¶ 37-44, the FBI conducted adequate searches of the Central Records System ("CRS") to reasonably locate records in response to Plaintiff's FOIPA requests. Overall, the FBI searched for main and reference files in the locations reasonably expected to contain records, if any, responsive to Plaintiff's requests. *Id.* As stated in the First Seidel Declaration, ¶¶ 43-44, the FBI conducted a search reasonably calculated to locate records responsive to Plaintiff's requests. There is no indication within the records located via the CRS index searches that responsive records reside in any other location. Therefore, there is no basis for the FBI to conclude that a search elsewhere could reasonably be expected to locate additional responsive records. Below, I describe the search undertaken as to each of Plaintiff's requests and explain why the search was adequate.

FOIPA REQUEST NUMBER 1250235-000

(8) In Plaintiff's Opposition, Plaintiff argues that the FBI did not conduct an adequate search by failing to search for reference files responsive to Plaintiff's first FOIPA request and by failing to search other databases for responsive records. In response to Plaintiff's first request, the FBI (through RIDS) conducted a CRS index search for potentially responsive records. As described in the First Seidel Declaration, a search of the CRS indices is the most reasonable way

3

to locate records in response to FOIPA requests because of its index-based structure. Given its comprehensive nature and scope, the CRS, which is the FBI's principal records system, is the records system searched by the FBI to locate information responsive to most FOIPA requests, because the CRS is where the FBI indexes information about individuals, organizations, and other subjects of investigative interest for future retrieval. *See* First Seidel Decl., ¶¶ 23 and 34. Because Plaintiff's request seeks information about himself, such information would reasonably be expected to be located in the CRS via the index search methodology.

(9)     At the time of Plaintiff's first request, the Universal Index ("UNI") was the automated index of the CRS, searchable via the Automated Case Support ("ACS") system. Thus, the FBI conducted a CRS index search employing the UNI application of ACS. As a result of this search effort, no main files were located that were indexed to Plaintiff. One reference file was identified. However, it is RIDS policy to identify only main files responsive to a FOIPA request at the administrative stage in the absence of a specific request for reference files. Plaintiff did not ask for reference files in the first request letter and failed to provide information in the first request letter that could have allowed the FBI to determine that the identified reference file was responsive.

(10)    Based on the result of the CRS indices search effort, there was no reason for the FBI to believe that records existed elsewhere (outside of a CRS index search). In Plaintiff's Opposition, he asserts that the FBI should have conducted a search of the FBI's ESLUR and Delta databases, Sentinel, 137 files, and 270 files. However, with no reason to believe that responsive records would exist, it is RIDS policy to not undertake such a search.

(11)    Regarding the ELSUR database (described in the First Seidel Declaration as the ELSUR indices), this is another system of records, but the data housed within the ELSUR indices

4

is also housed within the CRS, because the targets of electronic surveillance are also indexed in the CRS. *See* First Seidel Decl., ¶ 31. Thus, a search of the CRS, employing the ACS indices, is reasonably expected to locate any ELSUR records.

(12) Regarding Delta, as described in the Department of Justice ("DOJ") Office of Inspector General ("OIG") audit of the FBI's management of its CHS validation processes, Delta is the FBI's official electronic record-keeping system for CHS management.[2] The plaintiff provided no justification for the FBI to search Delta and the FBI found no clear lead indicating such a search was warranted.

(13) Regarding a search of Sentinel, as described in the First Seidel Declaration, ¶ 29, and in ¶ 8 *supra*, at the time of Plaintiff's first request, the search practice was to search ACS via the UNI application. If records were reasonably expected to have been created on or after July 1, 2012 (the date that Sentinel became the case management system effective FBI-wide), then the FBI would conduct a search of the Sentinel indices. There was no indication from the results of the ACS search that a search of Sentinel would identify responsive records.

(14) Regarding a search of the FBI's 137 and 270 files, the FBI does not search by case classification and Plaintiff did not provide information suggesting that responsive records would be located in a "137 file," which is a CHS file nor in a "270 file," which is a cooperating witness file.[3] Similarly, nothing in the CRS search results indicated that any records would be found in

---

[2] *See Audit of the Federal Bureau of Investigation's Management of its Confidential Human Source Validation Processes*, Nov. 2019, available at https://oig.justice.gov/reports/2019/a20009.pdf (last visited December 9, 2021).

[3] Specifically, this classification concerns individuals, other than foreign counterintelligence assets, who furnish information to the FBI concerning criminal violations on a continuing and confidential basis.

either a 137 file or a 270 file.

FOIPA REQUEST NUMBER 1250235-001

(15)   In response to Plaintiff's second request, the FBI (through RIDS) again conducted a CRS index search employing the UNI application of ACS and as a result of this search effort, the FBI identified one reference file.[4] In Plaintiff's second request letter, he asked for the identification of both main and reference files and provided additional information that allowed the FBI to assess the responsiveness of the reference file, therefore the FBI processed the reference file.

(16)   In Plaintiff's Opposition, page 9, he asserts that the FBI should have conducted a search of the FBI's ESLUR and Delta databases, Sentinel, 137 files, and 270 files. Regarding a search of the ELSUR indices, the FBI did conduct such a search, but did not locate responsive records.

(17)   Regarding a search of Delta, in Plaintiff's Opposition, he claims that third-party individuals discussed information with him, to include their employment with the FBI in a possible informant capacity. Plaintiff asserts that this information was of "sufficient detail" such that the FBI should have known to search Delta. *See* Plaintiff's Opposition, pages 8-9. However, the information provided by Plaintiff and the results of the CRS index search were insufficient to lead the FBI to believe that records would exist in Delta.

---

[4] Upon further review of the search history in response to Plaintiff's requests, the FBI realized that it inadvertently did not describe all the search efforts taken in response to Plaintiff's second request (Request Number 1250235-001) in the First Seidel Declaration. In response to Plaintiff's second request, the FBI also conducted an ELSUR indices search and Electronic Case File ("ECF") search for potentially responsive records. At the time of Plaintiff's second request, ECF was an automated application of ACS. ECF served as the central electronic repository for the FBI's official text-based documents. The FBI conducted an ECF search to search within the CRS as a whole for records mentioning Plaintiff. As a result of these search efforts, FBI did not identify any additional records responsive to Plaintiff's request.

(18) Regarding a search of Sentinel, as described in the First Seidel Declaration, ¶ 29, at the time of Plaintiff's second request, the search practice was to search ACS via the UNI application. If records were reasonably expected to have been created on or after July 1, 2012 (the date that Sentinel became the case management system effective FBI-wide), then the FBI would conduct a search of the Sentinel indices. There was no indication from the results of the ACS search that a search of Sentinel would identify responsive records.

(19) Regarding a search of the FBI's 137 and 270 files, as stated at ¶ 14 *supra*, the FBI does not search by case classification and Plaintiff did not provide information suggesting that responsive records would be located in a "137 file," which is a CHS file, nor in a "270 file," which is a cooperating witness file.

FOIPA REQUEST NUMBER 1450535-000

(20) In response to Plaintiff's third request, submitted after the FBI decommissioned ACS, the FBI (through RIDS) conducted a CRS index search for potentially responsive records employing the Sentinel indices and ACS indices available through Sentinel. *See* First Seidel Decl., n.12. As discussed in the First Seidel Declaration at ¶ 27, Sentinel is the FBI's next generation case management system and includes the same automated applications that were utilized in ACS. Upon receipt of FOIPA requests dated after August 1, 2018, the FBI conducts searches of the CRS employing the Sentinel indices and ACS indices available through Sentinel. *See* First Seidel Decl., n.13. As a result of this search effort, the FBI identified the same reference file identified in the previous two searches, but did not locate any additional responsive records.

(21) Plaintiff argues the FBI failed to search other databases, such as ELSUR, Delta, and the 120 and 137 files for potentially responsive records. However, any responsive records within the ELSUR indices would be duplicative of information within the Sentinel indices and

7

ACS indices available in Sentinel. The search resulted in no new files identified, thus identifying no leads to search additional databases.

(22) Regarding the ELSUR indices, as stated above, the data housed within the ELSUR indices is also housed within the CRS, because the targets of electronic surveillance are also indexed in the CRS. *See* First Seidel Decl., ¶ 31. Thus, a search of the CRS, employing the ACS indices, is reasonably expected to locate any ELSUR records. Moreover, a search of the ELUSR indices, conducted in response to Plaintiff's second request, produced no results.

(23) Regarding a search of Delta, as noted above, the plaintiff provided no justification for the FBI to search Delta and the FBI found no clear lead indicating that such a search was warranted.

(24) Regarding a search of the FBI's 137 and 270 files, as stated at ¶ 14 *supra*, the FBI does not search by case classification and Plaintiff did not provide information suggesting that responsive records would be located in a 137 file, which is a CHS file, nor in a 270 file, which is a cooperating witness file.

### THE FBI'S PROPER WITHHOLDING OF RECORDS

(25) Plaintiff challenges the FBI's use of Exemptions (b)(6) and (b)(7)(C)[5] to withhold five pages of records in their entirety. However, previously, on July 27, 2021, Plaintiff's counsel informed the Assistant United States Attorney in the United States Attorney's Office for the Southern District of New York representing the FBI in this matter, that Plaintiff would not challenge the FBI's withholdings in the records. *See* First Seidel Decl., ¶ 5. Therefore, the FBI

---

[5] In Plaintiff's Opposition, Plaintiff does not challenge the FBI's denial of access to the records under the Privacy Act, 5 U.S.C. § 552a, Exemption (k)(2). Thus, the FBI does not provide further justification for withholding the records pursuant to the Privacy Act herein.

did not provide justification for its withholding in the First Seidel Declaration. In this second declaration, the FBI now provides the Court and Plaintiff with the FBI's justification for properly withholding records in full pursuant to FOIA Exemptions (b)(6) and (b)(7)(C).

(26)  Plaintiff also challenges the FBI's withholding of two (2) pages as duplicates. On April 2, 2021, in response to Plaintiff's three FOIPA requests, the FBI processed a total of 22 pages of responsive records subject to the FOIPA. Of these pages, the FBI withheld seven pages in full, two of which were duplicates of pages accounted for elsewhere in the FBI's production.[6] It is the FBI's standard practice not to process duplicate pages, as the net result is that no additional information is released to the requester. Therefore, the FBI properly withheld two pages in full as duplicates.

## JUSTIFICATION FOR NON-DISCLOSURE UNDER THE FOIA

(27)  The FBI processed all records responsive to Plaintiff's requests to achieve maximum disclosure consistent with the access provisions of the FOIA. Every effort was made to provide Plaintiff with all information in the public domain and with all reasonably segregable, non-exempt information. The FBI did not withhold any reasonably segregable, non-exempt portions from Plaintiff. Further description of the information withheld, beyond what is provided in this declaration, could identify the actual exempt information protected by the FBI. The FBI numbered all pages of its production consecutively as FBI (20-cv-10324)-1 through FBI (20-cv-10324)-22. On the pages released in full or in part, these numbers are typically located at the bottom of each page.

(28)  Additionally, on the Bates-numbered pages provided to Plaintiff, the FBI further

---

[6] Bates-numbered pages FBI (20-cv-10324)-18 and FBI (20-cv-10324)-22 are duplicate copies of Bates-numbered pages FBI (20-cv-10324)-6 and FBI (20-cv-10324)-10, respectively.

categorized its application of exemptions to better explain the nature of the information withheld pursuant to the provisions of the FOIA.[7] Specifically, the FBI applied a numerical code that coincides with the categories of exempt information. The coded categories are provided to aid the Court's and Plaintiff's review of the FBI's explanation of the FOIA exemptions asserted to withhold information.[8] The coded, Bates-numbered pages together with this declaration demonstrate that information withheld by the FBI on the five pages challenged by Plaintiff is so intertwined with protected information that segregation is not possible without revealing the underlying protected information. Plaintiff challenges the FBI's withholding of records on Bates-numbered pages FBI (20-cv-10324)-10 and FBI (20-cv-10324)-12 through FBI (20-cv-10324)-15.

(29) Each instance of information withheld pursuant to a FOIA exemption is accompanied by a coded designation that corresponds to the categories listed below. In the records at issue, the numerical designation of "1" following the "(b)(7)(C)" designation narrows the main category into a more specific subcategory, such as "Name and Other Identifying Information of an FBI Special Agent."

(30) Listed below are the categories used to explain the FOIA exemptions the FBI asserted to withhold records, specifically Bates-numbered pages FBI (20-cv-10324)-10 and FBI (20-cv-10324)-12 through FBI (20-cv-10324)-15:

**EXEMPTION JUSTIFICATION CATEGORY**

---

[7] As a part of the FBI's production, on April 2, 2021, the FBI provided Plaintiff with a Deleted Page Information Sheet that states the reasons for withholding pages in their entirety (i.e., application of specific exemptions with coded rationale or duplicate).

[8] As a part of the FBI's production, on April 2, 2021, the FBI withheld portions of information on seven (7) pages pursuant to FOIA Exemptions (b)(6) and (b)(7)(C), protecting the name and other identifying information of an FBI Special Agent and names of professional staff members. In Plaintiff's Opposition, he does not challenge the FBI's use of FOIA Exemptions (b)(6) and (b)(7)(C) to withhold portions of information within the records. Therefore, additional justification for withholding portions of information within the records is not set forth herein.

| CODED CATEGORY | INFORMATION WITHHELD |
|---|---|
| Exemptions 6 & 7(C) | Unwarranted/Clearly Unwarranted Invasion of Personal Privacy |
| (b)(6)-1 and (b)(7)(C)-1 | Name and Other Identifying Information of an FBI Special Agent |

## EXEMPTION 7 THRESHOLD

(31) Before an agency can invoke any of the harms enumerated in Exemption (b)(7), it must first demonstrate that the records or information at issue were compiled for law enforcement purposes. Law enforcement agencies must demonstrate that the records are related to the enforcement of federal law and that the investigation or activity is within their respective law enforcement duty.

(32) Pursuant to 28 U.S.C. §§ 533 and 534, Executive Order 12333 as implemented by the Attorney General's Guidelines for Domestic FBI Operations (AGG-DOM), and 28 C.F.R. § 0.85, the FBI is the primary investigative agency of the federal government with authority and responsibility to investigate all violations of federal law not exclusively assigned to another agency; to conduct investigations and activities to protect the United States and its people from terrorism and threats to the national security; and to further the foreign intelligence objectives of the United States. Under this investigative authority, the records responsive to Plaintiff's request were compiled for the following law enforcement purpose.

(33) The records responsive to Plaintiff's request concern the FBI's investigation of Plaintiff's complaint to the DOJ OIG. The OIG forwarded Plaintiff's allegation of misconduct by FBI employees to the FBI's Inspection Division ("INSD"), which reviews and investigates allegations of criminal behavior and other types of misconduct of FBI employees. The file houses any documentation of the INSD's review and any investigation concerning potential misconduct of FBI employees. As such, the records were compiled for a law enforcement purpose.

11

**THE FBI'S USE OF FOIA EXEMPTIONS (b)(6) AND (b)(7)(C): CLEARLY UNWARRANTED AND UNWARRANTED INVASION OF PERSONAL PRIVACY**

(34)   Exemption (b)(6) exempts from disclosure "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). All information that applies to a particular person falls within the scope of Exemption (b)(6).

(35)   Exemption (b)(7)(C) similarly exempts from disclosure "records or information compiled for law enforcement purposes ... [when disclosure] could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C).[9]

(36)   When withholding information pursuant to these two exemptions, the FBI is required to balance the privacy interests of the individuals mentioned in the records against any public interest in disclosure. In asserting these exemptions, each piece of information was scrutinized to determine the nature and strength of the privacy interest of the individual whose name or other identifying information appears in the records at issue. A public interest exists only when information about an individual, such as the individual's name or other identifying information,[10] would shed light on the FBI's performance of its mission to protect and defend the United States against terrorist and foreign intelligence threats, to uphold and enforce the criminal

---

[9] The practice of the FBI is to assert Exemption 6 in conjunction with Exemption 7(C). Although the balancing test for Exemption 6 uses a "would constitute a clearly unwarranted invasion of personal privacy" standard and the test for Exemption 7(C) uses the lower standard of "could reasonably be expected to constitute an unwarranted invasion of personal privacy," the analysis and balancing required by both exemptions are sufficiently similar to warrant a consolidated discussion. The privacy interests are balanced against the public's interest in disclosure under both exemptions.

[10] As used in this declaration, the term "identifying information" includes, but is not limited to, a date of birth, a social security number, and an SA's FBI employment history and employment information, such as an FBI personnel file number, General Schedule ("GS") classification, salary, and promotion history.

12

laws of the United States, and to provide criminal justice services to federal, state, municipal, tribal, and international agencies and partners. In each instance where information has been withheld pursuant to Exemptions (b)(6) and (b)(7)(C), the FBI determined that the individual's privacy interest outweighs any public interest in disclosure.

### (b)(6)-1 AND (b)(7)(C)-1: NAME AND OTHER IDENTIFYING INFORMATION OF AN FBI SPECIAL AGENT

(37) Plaintiff argues in his opposition that the FBI failed to justify its invocation of Exemptions (b)(6) and (b)(7)(C) in the five fully withheld documents and requests that the Court conduct an *in camera* review of the pages withheld in full. The FBI provides the Court with the following information to justify the FBI's withholdings.

(38) As stated above, within FOIA Exemptions categories (b)(6)-1 and (b)(7)(C)-1, the FBI withheld five pages that contained the name and other identifying information of an FBI Special Agent ("SA"). The five pages withheld in full are FBI records check documents. FBI records check documents are printouts of queries of internal FBI databases. Specifically, the five pages are ACS printouts of two search queries for an FBI SA.

(39) The FBI properly withheld the records pursuant to Exemptions (b)(6) and (b)(7)(C) because the FBI records check documents contain the name and other identifying information of an SA. The records contain personal identifiable information ("PII"), such as the SA's date of birth and social security number, the SA's FBI employment history, and his or her FBI personnel file number, General Schedule ("GS") classification, salary, and promotion history. The FBI records check documents also include the SA's level of security clearance, assigned field office, building location, work phone number, office room number, and squad name.

(40) Assignments of SAs to their respective field office and squad and to particular investigations are not by their choice. Publicity, adverse or otherwise, arising from when an FBI

13

employee is assigned to a particular squad or investigation, may seriously prejudice his or her effectiveness in conducting investigations and in performing other day-to-day work. The privacy consideration is also applied to protect FBI SAs, as individuals, from unnecessary, unofficial questioning as to the conduct of investigative and other activities, regardless of current employment with the FBI. FBI SAs investigate potential and actual criminal and national security violations. The publicity associated with the release of an SA's identity (including his or her location) could trigger hostility toward the SA as he or she investigates potential and actual criminal violations within an assigned area of responsibility ("AOR"). During an investigation, an SA may engage with all strata of society, conducting searches and making arrests, both of which result in reasonable, but nonetheless, serious disturbances to people and their lives. Persons targeted in investigations, and those sympathetic to those targeted, could seek to harass or even inflict violence on an SA based on his or her participation in an investigation. This is because individuals targeted by law enforcement actions may carry a grudge against those involved with an investigation, which may last for years. These individuals may seek revenge on SAs (and other law enforcement employees) involved in a particular investigation or working on a particular squad in a particular location. Thus, disclosure of names and other identifying information would constitute a clearly unwarranted invasion of personal privacy; whereas there is no public interest served by disclosing an SA's identity because his or her identity would not, itself, significantly increase the public's understanding of the FBI's operations and activities. Therefore, the FBI properly withheld this information pursuant to Exemptions (b)(6) and (b)(7)(C).

## SEGREGABILITY

(41)     As discussed in ¶ 3 *supra*, the FBI identified a total of 22 responsive pages and released in full ("RIF") eight (8) pages, released in part ("RIP") seven (7) pages, and withheld in full ("WIF") seven (7) pages. Each of these categories is discussed below to further address segregability.[11]

> a. <u>Pages RIF</u>. Following its segregability review, the FBI determined eight pages could be released in full without redaction as there is no foreseeable harm to an interest protected by a FOIA exemption.
>
> b. <u>Pages RIP</u>. Following its segregability review, the FBI determined that seven pages could be released in part with redactions per the identified FOIA exemptions herein. These pages comprise a mix of information that could be segregated for release and information that has been withheld as release would trigger foreseeable harm to one or more interests protected by the cited FOIA exemptions on these pages.
>
> c. <u>Pages WIF</u>. Following its segregability review, the FBI determined that seven pages required withholding in their entirety. Five pages were withheld in full pursuant to the FOIA exemptions identified herein. The FBI determined that any non-exempt information on these pages is so intertwined with exempt information that no information can be reasonably segregated for release. Any further segregation of this intertwined information would employ finite resources only to produce disjointed words, phrases, or sentences, that taken separately or together, would have minimal or no informational content. The FBI withheld two pages in full because they are duplicates of pages accounted for

---

[11] In Plaintiff's Opposition, he does not challenge the FBI's production of the eight (8) pages RIF, the seven (7) pages RIP, or the FBI's assertion of FOIA Exemptions (b)(6) and (b)(7)(C) to withhold portions of information within the RIP pages.

elsewhere in the FBI's production. It is the FBI's standard practice not to process duplicate pages, as the net result is that no additional information is released to the requester.

## CONCLUSION

(42) The FBI performed adequate and reasonable searches for responsive records in response to Plaintiff's three FOIPA requests and properly determined that certain records subject to the FOIA should be withheld in their entirety pursuant to FOIA Exemptions (b)(6) and (b)(7)(C). The FBI carefully examined the records and determined that the information withheld from Plaintiff in this case is so intertwined with protected information that segregation is not possible without revealing the underlying protected material, and, if disclosed, would cause a clearly unwarranted invasion of personal privacy or could reasonably be expected to constitute an unwarranted invasion of personal privacy. After extensive review of the records at issue, the FBI determined that there is no further non-exempt information that can be reasonably segregated and released without revealing exempt information.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed this 19th day of January 2022.

MICHAEL G. SEIDEL
Section Chief
Record/Information Dissemination Section
Information Management Division
Federal Bureau of Investigation
Winchester, Virginia