UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

John Wilson,

                              Plaintiff,

      -against-

Federal Bureau of Investigation,

                             Defendant.

1:20-cv-10324 (LAK) (SDA)

**REPORT AND RECOMMENDATION**

**STEWART D. AARON, UNITED STATES MAGISTRATE JUDGE.**

**TO THE HONORABLE LEWIS A. KAPLAN, UNITED STATES DISTRICT JUDGE:**

      Plaintiff John Wilson ("Plaintiff" or "Wilson") brings this action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, against the Federal Bureau of Investigation ("Defendant" or "FBI") seeking the disclosure and release of all agency records pertaining to him. (*See* Compl., ECF No. 1.) Presently before the Court are Defendant's motion for summary judgment (Def.'s Mot., ECF No. 35) and Plaintiff's cross-motion for summary judgment. (Pl.'s Cross-Mot., ECF No. 38.) For the reasons set forth below, I respectfully recommend that Defendant's motion be GRANTED IN PART and DENIED IN PART and that Plaintiff's cross-motion be GRANTED IN PART and DENIED IN PART.

**BACKGROUND**

      Wilson, a former Wall Street mining analyst, is a dual citizen of the United States and Australia, who currently resides in Sydney, Australia. (*See* Wilson Decl., ECF No. 40-1, ¶¶ 3-4.) From June 2013 to October 2019, he submitted three FOIA requests to the FBI seeking the disclosure of the agency's records pertaining to him. (*See* Compl., ¶¶ 8, 16; Adams Decl., Ex. B, ECF No. 40-2; Adams Decl., Ex. D, ECF No. 40-4; Adams Decl., Ex. H, ECF No. 40-8.) According to

Wilson, in March 1996, he had authored a report that flagged concerns about the U.S.-based mining company Freeport McMoran, including that the company was under investigation by the U.S. Department of State following the deaths of indigenous protestors at its Grasberg Mine in West Papua, Indonesia, among other human rights concerns. (*See* Wilson Decl. ¶¶ 9-10.) Wilson contends that he submitted his FOIA requests following decades of harassment and interference by persons holding themselves out to be acting on behalf of the FBI, which occurred after publication of his report. (*See id*. ¶ 20; Pl.'s Mem., ECF No. 39, at 1.)

Certain documents were produced to Wilson by the FBI. (*See* Compl. ¶¶ 9-10.) However, he alleges that the FBI conducted insufficient searches in response to his FOIA requests and that the FBI improperly withheld seven documents. (*See id*. ¶ 20; Pl.'s Mem. at 9-10.)

After exhausting his agency appeals, Wilson commenced this action on December 8, 2020. (*See* Compl.) On March 31, 2021, the parties appeared for a telephone conference with the Court, at which time counsel for the FBI informed the Court that the FBI would be making a revised production to Plaintiff in response to his FOIA request in early April 2021. (*See* 4/26/21 Joint Ltr., ECF No. 17.) On April 2, 2021, the FBI made such production. (*See* Adams Decl*.,* Ex. J, ECF No. 40-10.) After Plaintiff reviewed the revised production, counsel for Plaintiff informed counsel for the FBI that, notwithstanding the revised production, Plaintiff still intended to challenge the adequacy of the FBI's search, and the parties agreed to proceed to motion practice. (*See* 4/26/21 Joint Ltr.)

This report and recommendation addresses the parties' pending cross-motions for summary judgment.

**LEGAL STANDARDS**

FOIA was enacted "to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed." *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978). "In order to prevail on a motion for summary judgment in a FOIA case, the defending agency has the burden of showing that its search was adequate and that any withheld documents fall within an exemption to the FOIA." *Carney v. U.S. Dep't of Just.*, 19 F.3d 807, 812 (2d Cir. 1994) (citing 5 U.S.C. § 552(a)(4)(B)).

**I.     Adequacy Of Search**

In measuring adequacy, courts ask "whether the search was reasonably calculated to discover the requested documents, not whether it actually uncovered every document extant." *Grand Cent. P'ship, Inc. v. Cuomo*, 166 F.3d 473, 489 (2d Cir. 1999) (citation omitted); *accord Schoenman v. FBI*, 764 F. Supp. 2d 40, 45 (D.D.C. 2011) (agency "must show beyond material doubt . . . that it has conducted a search reasonably calculated to uncover all relevant documents" (citing *Weisberg v. U.S. Dep't of Just.*, 705 F.2d 1344, 1351 (D.C. Cir. 1983)).[1]

Adequacy "may be established solely on the basis of the Government's relatively detailed, non-conclusory affidavits that are submitted in good faith," *Adamowicz v. I.R.S.*, 552 F. Supp. 2d 355, 361 (S.D.N.Y. 2008), "setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials . . . were searched."[2]

---

[1] The Second Circuit recognizes that the D.C. Circuit is "something of a specialist" in adjudicating FOIA disputes, "given the nature of much of its caseload." *Whitaker v. Dep't of Com.*, 970 F.3d 200, 206 n.25 (2d Cir. 2020) (citation omitted).

[2] Agency submissions are "accorded a presumption of good faith such that discovery relating to the agency's search . . . generally is unnecessary if the agency's submissions are adequate on their face." *Junk*

3

*Iturralde v. Comptroller of Currency*, 315 F.3d 311, 314-15 (D.C. Cir. 2003) (citation omitted). "Conversely, summary judgment in the agency's favor is inappropriate 'where the agency's response raises serious doubts as to the completeness of the agency's search, where the agency's response is patently incomplete, or where the agency's response is for some other reason unsatisfactory.'" *NAACP Legal Def. & Educ. Fund, Inc. v. U.S. Dep't of Just.*, 463 F. Supp. 3d 474, 483 (S.D.N.Y. 2020) (quoting *Nat'l Day Laborer Org. Network v. U.S. Immigr. & Customs Enf't Agency*, 877 F. Supp. 2d 87, 96 (S.D.N.Y. 2012)). In such cases, a district court may "direct the defendant to conduct additional searches," *Immigr. Def. Project v. U.S. Immigr. & Customs Enf't Agency*, 208 F. Supp. 3d 520, 527 (S.D.N.Y. 2016), conduct an *in camera* review, "elicit[ ] additional detail from the government" or permit further discovery, where appropriate. *Assadi v. U.S. Citizenship & Immigr. Servs.*, No. 12-CV-01374 (RLE), 2015 WL 1500254, at *2 (S.D.N.Y. Mar. 31, 2015).

"There is no requirement that an agency search every record system in response to a FOIA request." *Brunetti v. F.B.I.*, 357 F. Supp. 2d 97, 103 (D.D.C. 2004) (citing *Meeropol v. Meese*, 790 F.2d 942, 952-53 (D.C. Cir. 1986)). However, the agency must identify, and search, each record system in which responsive documents are likely to be found. *See Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990).

II. **Withholdings Pursuant To FOIA Exemptions**

The Court reviews the applicability of a particular FOIA exemption *de novo*. *See Azmy v. U.S. Dep't of Def.*, 562 F. Supp. 2d 590, 597 (S.D.N.Y. 2008). The exemptions are construed

---

*v. Bd. of Governors of Fed. Rsrv. Sys.*, No. 19-3125-CV, 2022 WL 363776, at *1 (2d Cir. Feb. 8, 2022) (cleaned up).

4

narrowly, *see Bloomberg, L.P. v. Bd. of Governors of the Fed. Rsrv. Sys.*, 601 F.3d 143, 147 (2d Cir. 2010) ("To implement [the] presumption for disclosure, FOIA exemptions 'have been consistently given a narrow compass.'") (quoting *U.S. Dep't of Just. v. Tax Analysts*, 492 U.S. 136, 151 (1989)), and "doubts as to the applicability of [an] exemption must be resolved in favor of disclosure." *Florez v. Cent. Intell. Agency*, 829 F.3d 178, 182 (2d Cir. 2016).

"[A]n agency is entitled to summary judgment when it has . . . articulated reasonably detailed explanations why any withheld documents fall within an exemption." *Kuzma v. U.S. Dep't of Just.*, No. 13-CV-00675 (WMS), 2016 WL 9446868, at *3 (W.D.N.Y. Apr. 18, 2016), *aff'd sub nom. Kuzma v. U.S. Dep't of Just.*, 692 F. App'x 30 (2d Cir. 2017) (citing *Carney*, 19 F.3d at 812). Conversely, "[a] plaintiff is entitled to summary judgment in a FOIA case 'when an agency seeks to protect material which, even on the agency's version of the facts, falls outside the proffered exemption.'" *Id*. (quoting *New York Times Co. v. U.S. Dep't of Def.*, 499 F. Supp. 2d 501, 509 (S.D.N.Y. 2007)).

To carry its burden, an agency may rely on declarations/affidavits that describe "with reasonable specificity the nature of the documents at issue and the justification for nondisclosure." *See Kuzma*, 2016 WL 9446868, at *3 (citing *Lesar v. U.S. Dep't of Just.*, 636 F.2d 472, 481 (D.C. Cir. 1980)). "[T]he description provided in the affidavits must show that the information logically falls within the claimed exemption." *Id*.

Agency affidavits are presumed to have been made in good faith. *See Carney*, 19 F.3d at 812. "Thus, the agency's justification is sufficient if it appears logical and plausible." *Am. Civil Liberties Union v. U.S. Dep't of Def.*, 901 F.3d 125, 133 (2d Cir. 2018), *as amended* (Aug. 22, 2018). "If the agency's submissions are facially adequate, summary judgment is warranted unless the

plaintiff can make a showing of bad faith on the part of the agency or present evidence that the exemptions claimed by the agency should not apply." *Garcia v. U.S. Dep't of Just., Off. of Info. & Priv.*, 181 F. Supp. 2d 356, 366 (S.D.N.Y. 2002) (citing *Carney*, 19 F.3d at 812); *see also Ctr. for Const. Rts. v. C.I.A.*, 765 F.3d 161, 166 (2d Cir. 2014) (agency declarations "are accorded a presumption of good faith," and "when such declarations are 'not controverted by either contrary evidence in the record nor by evidence of agency bad faith,' summary judgment for the government is warranted.") (citing *Wilner v. Nat'l Sec. Agency*, 592 F.3d 60, 73 (2d Cir. 2009))).

## DISCUSSION

### I. Adequacy Of Defendant's Search

As discussed below, the Court finds that the FBI has carried its burden of showing its search was adequate, except in one respect. On June 14, 2013, Plaintiff sent his first FOIA request seeking "all files, correspondence or other records concerning [him]self." (*See* Adams Decl., Ex. B.) According to the FBI's first Declaration, in response to Plaintiff's first request, its Record/Information Dissemination Section ("RIDS") conducted a Central Records System ("CRS")[3] index search for potentially responsive records, employing in the Automated Case Support system ("ACS")[4] the automated Universal Index ("UNI") application, using the search terms "John C Wilson" and "John Wilson." (*See* First Seidel Decl. ¶ 40.) As a result of this search effort, RIDS

---

[3] The CRS, which spans the entire FBI organization, is a system of records consisting of applicant, investigative, intelligence, personnel, administrative and general files compiled and maintained by the FBI in the course of fulfilling its mission and integrated functions. (*See* First Seidel Decl., ECF No. 37, ¶ 21.)

[4] ACS is an electronic, integrated case management system designed to enable the FBI to locate, retrieve and maintain information in its files. (*See* First Seidel Decl. ¶ 25.)

located one reference file, but did not produce it, ostensibly due to RIDS's policy.[5] (*See id*.) This reference file, however, was produced in response to Plaintiff's second request, discussed below.

On March 26, 2014, Plaintiff sent his second FOIA request seeking "disclosure of all agency records concerning, naming, or relating to [him]." (*See* Adams Decl., Ex. D.) In his second request, Plaintiff provided additional information and "specifically request[ed]" that the FBI "identify all potentially responsive main and cross-reference files." (*See id*.) According to the FBI's first Declaration, in response to Plaintiff's second request, RIDS conducted a CRS index search for potentially responsive records employing the UNI application of ACS using the search terms "John Christian Wilson," "John C Wilson" and "John Wilson." (*See* First Seidel Decl. ¶ 41.) As a result of this search effort, the FBI located the same reference file discussed above, but this time it was produced because "Plaintiff asked for the identification of both main and reference files and because he provided additional information that allowed RIDS to assess the responsiveness of the reference file." (*See id*.)

On October 23, 2019, Plaintiff submitted his third FOIA request through the FBI's eFOIPA portal seeking all agency records concerning himself. (*See* Adams Decl., Ex. H.) According to the FBI's Declaration, in response to the third request, RIDS conducted a CRS index search for potentially responsive records employing the Sentinel indices and ACS indices available through

---

[5] According to Seidel, "RIDS policy, generally, is to identify only main files responsive to a request at the administrative stage," and not reference files. (*See* First Seidel Decl. ¶ 40.)

Sentinel[6] using the search term "John Wilson." (*See* First Seidel Decl. ¶ 42.) As a result of this search effort, RIDS did not locate any additional records. (*See id*.)

Upon Plaintiff's filing of the Complaint in this action, the FBI conducted a new search of the CRS and reviewed all responsive records previously located in response to Plaintiff's three requests. (*See* First Seidel Decl. ¶ 20.) As set forth in the Background Section above, the FBI made a supplemental production on April 2, 2021. (*See* Adams Decl*.,* Ex. J.)

In total, the searches the FBI performed in response to the three requests and after the Complaint was filed identified one reference file resulting in the review of 22 pages of records, of which the FBI released 15 pages in whole or in part. (*See* First Seidel Decl. ¶¶ 41, 45.) The reference file located concerned a complaint that Plaintiff had made to the Department of Justice's Office of the Inspector General ("OIG").[7] (*See id*. ¶ 45.)

Based upon its review of the two Seidel Declarations submitted by Defendant, the Court finds that Defendant has made the required showing regarding the adequacy of its search, except in one respect — *i.e.*, Defendant's failure to search the Delta record-keeping system, which is addressed below. Putting the Delta record-keeping system to the side, the issues raised by Plaintiff regarding the adequacy of Defendant's search are easily disposed:

- Plaintiff asserts that, in response to the first search, the reference file should have been produced. (*See* Pl.'s Mem. at 7-8.) However, Plaintiff admits that the reference

---

[6] Sentinel, the FBI's next generation case management system that became effective FBI-wide on July 1, 2012, provides a web-based interface to FBI users and includes the same automated applications that were utilized in ACS. (*See* First Seidel Decl. ¶ 27.)

[7] The OIG had forwarded Plaintiff's allegation of misconduct by FBI employees to the FBI's Inspection Division ("INSD"), which reviews and investigates allegations of criminal behavior and other types of misconduct of FBI employees. (*See* First Seidel Decl. ¶ 45.)

file was produced in response to Plaintiff's second request (*see id*. at 9), thereby curing any defect in the first search.

- Plaintiff asserts that, in response to the first and second requests, Defendant failed to search the Sentinel database. (*See* Pl.'s Mem. at 8-9.) However, Plaintiff admits that Defendant searched the Sentinel database in response to his third request (*see id*. at 9), thereby curing any defect in the first two searches regarding use of the Sentinel database.

- Plaintiff asserts that Defendant failed to search electronic surveillance (referred to as "ESLUR") indices. (*See* Pl.'s Mem. at 9.) However, as Defendant explained, it expected that searches of the CRS would locate records relating to electronic surveillance. (*See* First Seidel Decl. ¶ 31; Second Seidel Decl., ECF No. 42, ¶ 22.) In any event, Defendant conducted a search of the ESLUR indices in response to Plaintiff's second request, and that search produced no results. (*See* Second Seidel Decl. ¶ 22.)

- Plaintiff asserts that Defendant failed to search its so-called 137 and 210 files. (*See* Pl.'s Mem. at 9.) As a part of its Confidential Human Source ("CHS") program, the FBI maintains CRS file classification numbers 137 and 270 for purposes of compiling law enforcement records, which contain the identity of confidential sources and cooperating witnesses, the information furnished by confidential sources or cooperating witnesses, and information regarding law enforcement techniques, procedures and guidelines related to the CHS program. (*See* Second Seidel Decl. ¶ 6.) The FBI's second Declaration states that, if 137 or 270 file classifications existed concerning or mentioning Plaintiff, those files would have been indexed to Plaintiff,

9

either as a main entry or a reference entry, and would have been located within the CRS indices via the searches conducted in response to Plaintiff's requests.[8] (*See id.* ¶ 5.) Thus, there was no need for Defendant to separately search these files.

The search of Defendant's Delta record-keeping system requires further discussion. Plaintiff asserts that Defendant improperly failed to search its Delta record-keeping system. (*See* Pl.'s Mem. at 9.) Delta is the FBI's official electronic record-keeping system for the management of confidential human sources, *i.e.*, informants. (*See* Second Seidel Decl. ¶ 12.) Defendant admittedly did not search the Delta record-keeping system. (*See* Def.'s Reply Mem., ECF No. 41, at 7.) In its second Declaration, Defendant states that Plaintiff "provided no justification for the FBI to search Delta." (*See* Second Seidel Decl. ¶ 23.) However, this is not the case. Defendant itself notes in its reply memorandum the justification provided by Plaintiff for searching Delta: "Plaintiff claims that Defendant should have searched Delta because he claims that third-party individuals discussed information with him, including their employment with the FBI in a possible informant capacity."[9] (Def.'s Reply Mem. at 7 (citing Pl.'s Mem. at 8-9).) Thus, contrary to Defendant's assertion, Plaintiff has provided a justification for searching the Delta system.

In addition, Defendant asserts that "the FBI found no clear lead indicating that . . . a search [of Delta] was warranted," and that the information provided by Plaintiff and the "results of the

---

[8] The Court has reviewed the opinion of former FBI agent Jennifer Coffindaffer that "137 and 270 files contain information not discoverable through CRS, ACS and Sentinel searches." (*See* Adams Decl., Ex. K-1, at 4.) This opinion, however, is not inconsistent with the sworn statement made by the FBI's current Section Chief of RIDS's Information Management Division, which is presumed to have been made in good faith, that if 137 or 270 file classifications existed concerning or mentioning Plaintiff, those files would have been indexed to Plaintiff and located within the CRS. (*See* Second Seidel Decl. ¶ 5.)

[9] In his second request, Plaintiff stated: "I have been approached by undercover agents/employees/others that work for or on behalf of the FBI and which include multiple meetings with each during various periods between 1996 and 2010." (*See* Adams Decl., Ex. D, at PDF p. 3.)

10

CRS index search were insufficient to lead the FBI to believe that records would exist in Delta." (*See* Second Seidel Declaration ¶¶ 17, 23.) However, Defendant does not provide any explanation for why the information and search results are insufficient. Notably, Defendant does not state, as it did with respect to the 137 or 270 file classifications, that information in the Delta system would be located or referenced in the CRS. In these circumstances, the Court finds Defendant's response regarding search of the Delta system to be unsatisfactory. Accordingly, the Court recommends that Defendant be ordered to search the Delta system for responsive information.

## II.      Defendant's Withholdings

Defendant's searches in response to Plaintiff's requests identified 22 pages of records. (*See* First Seidel Decl. ¶ 4.) Of those, eight pages were released in their entirety, seven pages were released in part and withheld in part, and seven pages were withheld in full (with two of those seven amounting to duplicates of pages accounted for elsewhere). (*See id*.) Defendant's withholdings were premised upon FOIA Exemptions (b)(6) ("Exemption 6") and (b)(7)(C) ("Exemption 7(C)"). (*See id*. ¶ 20.) Plaintiff belatedly challenges Defendant's withholdings.[10]

Exemption 6 exempts from disclosure "personal and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). To determine whether identifying information may be withheld pursuant to

---

[10] Plaintiff had led Defendant to believe that he only was challenging the adequacy of Defendant's search. (*See* First Seidel Decl. ¶ 5 ("By electronic mail . . . dated July 27, 2021, Plaintiff's counsel represented to the United States Attorney's Office for the Southern District of New York that Plaintiff would not challenge the FBI's withholdings of records or portions of information within records.").) Nevertheless, in his memorandum in support of his cross-motion for summary judgment, Plaintiff took the position that "[t]he FBI has provided no basis on which it has withheld the records under these [FOIA Exemptions (b)(6) and (b)(7)(C)]." (*See* Pl.'s Mem. at 11.) This change in position required Defendant to provide in the Second Seidel Declaration the basis for each of its withholdings. (*See* Second Seidel Decl. ¶¶ 27-40.)

11

Exemption 6, the court "must: (1) determine whether the identifying information is contained in 'personnel and medical files and similar files;' and (2) balance the public need for the information against the individual's privacy interest in order to assess whether disclosure would constitute a clearly unwarranted invasion of personal privacy." *Associated Press v. U.S. Dep't of Def.*, 554 F.3d 274, 291 (2d Cir. 2009) (quoting *Wood v. F.B.I.*, 432 F.3d 78, 86 (2d Cir. 2005)). "The determination of whether Exemption 6 applies requires balancing an individual's right to privacy against the preservation of FOIA's basic purpose of opening agency action to the light of public scrutiny." *Id*. (citing *Dep't of the Air Force v. Rose*, 425 U.S. 352, 372 (1976)). "Only where a privacy interest is implicated does the public interest for which the information will serve become relevant and require a balancing of the competing interests." *Id*. (quoting *Fed. Lab. Rels. Auth. v. U.S. Dep't of Veterans Affs.*, 958 F.2d 503, 509 (2d Cir. 1992)). To prevail over the public interest in disclosure, "[a]n invasion of more than a *de minimis* privacy interest protected by Exemption 6 must be shown to be 'clearly unwarranted.'" *Id*. "Under Exemption 6, therefore, the government's burden in establishing the required invasion of privacy is heavier than the burden in establishing invasion of privacy under Exemption 7(C)." *Id*. (citing *U.S. Dep't of State v. Ray*, 502 U.S. 164, 172 (1991)).

Exemption 7(C) similarly exempts from disclosure "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . (C) could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C). Exemption 7(C) may be invoked where no public interest would be served by disclosure of information that implicates privacy interests. *See U.S. Dep't of Just. v. Rptrs. Comm. for Freedom of Press*, 489 U.S. 749, 775 (1989) "[W]hether disclosure of a private document under Exemption 7(C) is warranted must turn on the nature of

the requested document and its relationship to the basic purpose of the Freedom of Information Act to open agency action to the light of public scrutiny, rather than on the particular purpose for which the document is being requested." *Id*. at 772 (cleaned up).

Defendant explains that the five non-duplicate pages that were withheld in full are FBI records check documents containing personal identifiable information of an FBI special agent, such as his or her name, date of birth, social security number, FBI employment history, FBI personnel file number, GS classification, salary, promotion history, level of security clearance, assigned field office, building location, work phone number, office room number and squad name. (*See* Second Seidel Decl. ¶¶ 38-39.) The special agent plainly has a privacy interest in these documents. *See Long v. Off. of Pers. Mgmt.*, 692 F.3d 185, 191 (2d Cir. 2012) ("the bar is low: 'FOIA requires only a measurable interest in privacy to trigger the application of the disclosure balancing tests'" (citation omitted)). Disclosure of the names of federal law enforcement personnel, like the special agent in this case, "could permit the targeting of [them] and their families outside the workplace" and subject them to "an increased risk of harassment or attack." *See id*. at 192.

Under Exemption 6, the special agent's privacy interest "must be weighed against the public interest that would be advanced by disclosure." *See Long*, 692 F.3d at 193 (citation omitted). "The only public interest cognizable under FOIA is the public 'understanding of the operations or activities of the government.'" *Id*. (quoting *Rptrs. Comm. for Freedom of Press*, 489 U.S. at 775). The Court finds that disclosure of the name and personal identifying information of the special agent in this case will not further public understanding of the operations or activities of the government. Such an understanding can be discerned from the documents already

13

produced to Plaintiff, which reflect the INSD investigation that was done of the complaint he filed with the OIG. (*See* Adams Decl., Ex. J.)

Defendant's withholding of the subject records also was appropriate under the lower threshold of Exemption 7(C). The records were compiled for law enforcement purposes. *See Pagan v. Treasury Inspector Gen. for Tax Admin.*, 231 Fed. App'x 99, 100 (2d Cir. 2007) ("[I]t is settled law in this Court that an Inspector General of a federal government agency engages in law enforcement activities within the meaning of FOIA.") (internal citation and quotation omitted). And, again, disclosing the records would not add to the public's understanding of how the government functions. *See Garcia*, 181 F. Supp. 2d at 374 (upholding invocation of Exemption 7(C) to protect identities of FBI special agents).[11]

Finally, Plaintiff invites the Court to conduct an *in camera* review of the withheld records. (*See* Pl.'s Mem. at 10-11; Pl.'s Reply Mem., ECF No. 43, at 9-10.) "If an agency affidavit or declaration is conclusory, contradicted in the record, or there is evidence in the record of agency bad faith, then summary judgment is not appropriate and a court may grant *in camera* review as a last resort." *Khatchadourian v. Def. Intel. Agency*, 453 F. Supp. 3d 54, 76 (D.D.C. 2020) (cleaned up) (citing *Hayden v. Nat'l Sec. Agency/Cent. Sec. Serv.*, 608 F.2d 1381, 1387 (D.C. Cir. 1979)). "A reviewing court has broad discretion to decide whether *in camera* review is necessary." *Id*. (cleaned up) (citing *100Reporters LLC v. U.S. Dep't of Just.*, 248 F. Supp. 3d 115, 166 (D.D.C. 2017)). The Court, in its discretion, declines to conduct an *in camera* review. The Second Seidel

---

[11] The Court also finds that Defendant has satisfied its obligation under FOIA to provide reasonably segregable portions of the redacted records to Plaintiff. (*See* Def.'s Reply at 17-18.)

Declaration provides reasonable specificity as to the nature of the documents at issue and the justification for nondisclosure.

## CONCLUSION

For the foregoing reasons, I respectfully recommend that Defendant's motion for summary judgment be GRANTED IN PART and DENIED IN PART and that Plaintiff's cross-motion for summary judgment be GRANTED IN PART and DENIED IN PART. Specifically, I recommend that Defendant only be compelled to conduct a search of its Delta record-keeping system for records responsive to Plaintiff's requests.

Dated:   New York, New York
         February 16, 2022

*/s/ Stewart D. Aaron*
STEWART D. AARON
United States Magistrate Judge

\*               \*               \*

**NOTICE OF PROCEDURE FOR FILING OBJECTIONS TO THIS REPORT AND RECOMMENDATION**

The parties shall have fourteen (14) days (including weekends and holidays) from service of this Report and Recommendation to file written objections (to those portions other than with respect to the motion to strike), pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure. *See also* Fed. R. Civ. P. 6(a), (d) (adding three additional days when service is made under Fed. R. Civ. P. 5(b)(2)(C), (D) or (F)). A party may respond to another party's objections within fourteen days after being served with a copy. Fed. R. Civ. P. 72(b)(2). Such objections, and any response to objections, shall be filed with the Clerk of the Court. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b). Any requests for an extension of time for filing objections must be addressed to Judge Kaplan.

**FAILURE TO OBJECT WITHIN FOURTEEN (14) DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW.** *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b); *Thomas v. Arn,* 474 U.S. 140 (1985).