**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------- X

JOHN WILSON,

                          Plaintiff,

-against-                                           No. 20-CV-10324 (LAK) (SDA)

FEDERAL BUREAU OF INVESTIGATION,

                          Defendant.

-------------------------------------------------------------------- X

## MEMORANDUM OF LAW IN SUPPORT OF
## PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND COSTS

BELDOCK LEVINE & HOFFMAN LLP
99 Park Avenue, PH/26th Floor
New York, New York 10016
(212) 490-0400

*Attorneys for Plaintiff John Wilson*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................... III

PRELIMINARY STATEMENT ........................................................................................ 1

BACKGROUND ............................................................................................................... 1

ARGUMENT ..................................................................................................................... 5

   I.  Plaintiff Should Recover Full Attorneys' Fees. .................................................... 5

      A.  The Lodestar Method is Appropriate for Determining a Reasonable Fee ........................ 6

      B.  The Hours Expended on Plaintiff's Behalf Are Reasonable. ............................................ 6

      C.  Plaintiff's Counsel Achieved Favorable Results. ............................................................. 7

      D.  Plaintiff is Eligible for and Entitled to Attorneys' Fees Under FOIA.............................. 8

          i.     Plaintiff is eligible for attorneys' fees because he substantially prevailed by obtaining a judicial order in his favor and a voluntary change in position by the FBI. ................... 8

          ii.    Plaintiff is entitled to an award of attorneys' fees because the Pietrangelo factors weigh in his favor. ....................................................................................................... 11

      E.  Plaintiff's Attorneys Request Reasonable Rates Comparable to Rates that Courts in this District Award for Attorneys of Their Experience and Reputation. .................... 13

          i.     David B. Rankin's Hourly Rate of $575 Is Reasonable. ......................................... 14

          ii.    Katherine "Q" Adams's Hourly Rate of $325 is Reasonable. ................................ 15

   II. Plaintiff Should Fully Recover for His Reasonable Out-of-Pocket Costs. ........................... 15

CONCLUSION.................................................................................................................. 16

# TABLE OF AUTHORITIES

**Cases**

*Abdell v. City of New York*, No. 05 Civ 8452, 2015 WL 898974 (S.D.N.Y. Mar. 2, 2015)........ 15

*Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany*, 522 F.3d 182 (2d Cir. 2008) ................................................................................................................................... 12, 13

*Centro de la Comunidad Hispana de Locust Valley v. Town of Oyster Bay*, 2019 U.S. Dist. LEXIS 102840 (E.D.N.Y. Jun 18, 2019) ........................................................................... 15

*Copeland v. Marshall*, 641 F.2d 880 (D.C. Cir. 1980) .................................................... 6

*Ctr. for Popular Democracy v. Bd. of Governors of the Fed. Res. Sys.*, 2021 U.S. Dist. LEXIS 159489 (E.D.N.Y. Aug. 20, 2021)................................................................ 9, 11, 12

*Davy v. Cent. Intel. Agency*, 550 F.3d 1155 (D.C. Cir. 2008) ...................................... 12

*Elec. Privacy Info. Ctr. v. U.S. Dep't of Homeland Sec.*, 218 F. Supp. 3d 27 (D.D.C. 2016) ...... 11

*Grant v. Martinez*, 973 F.2d 96 (2d Cir. 1992)............................................................... 7

*Green v. Torres*, 361 F.3d 96 (2d Cir. 2004) .................................................................. 6

*Greenburger v. Roundtree*, 2020 U.S. Dist. LEXIS 8658, at *34 (S.D.N.Y. Jan. 16, 2020) ....... 14

*Hensley v. Eckerhart*, 461 U.S. 424 (1983) ............................................................... 6, 7

*Jordan v. U.S. Department of Justice*, 76-0276 (D.D.C. 1981)...................................... 6

*Kassim v. City of Schenectady*, 415 F.3d 246 (2005) .................................................... 7

*LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748 (2d Cir. 1998)........................................ 7

*Leevson v. Aquafile USA Inc.*, 770 F. App'x 577 (2d Cir. 2019) ................................... 6

*Lilly v. City of New York*, No. 16 Civ. 322, 2017 WL 3493249 (S.D.N.Y. Aug. 15, 2017)........ 15

*Lunday v. City of Albany*, 42 F.3d 131 (2d Cir. 1994).................................................. 8

iii

*Matteo v. Kohl's Dep't Stores, Inc.*, No. 09 Civ. 7830(RJS), 2012 WL 5177491 (S.D.N.Y. Oct.19, 2012) *aff'd*, 533 F. App'x 1 (2d Cir. 2013) ............................................................................. 15

*McLaughlin v. IDT Energy*, No. 14 CV 4107, 2018 WL 3642627 (E.D.N.Y. July 30, 2018) ..... 15

*Medina v. Bother*, 2019 U.S. Dist. LEXIS 156139 (S.D.N.Y. 2019) ........................................... 14

*New York Times Co. v. Cent. Intel. Agency*, 251 F. Supp. 3d 710 (S.D.N.Y. 2017) ............... 8, 11

*Parrish v. Sollecito*, 280 F. Supp. 2d 145 (S.D.N.Y. 2003) ........................................................... 8

*People for the Ethical Treatment of Animals v. Nat'l Inst. of Health*, 130 F. Supp. 3d 156 (D.D.C. 2015) .......................................................................................................................................... 11

*Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542 (2010) .......................................................... 6, 12

*Pietrangelo v. U.S. Army*, 568 F.3d 341 (2d Cir. 2009) ......................................................... 8, 11

*Quaratino v. Tiffany & Co.*, 166 F.3d 422 (2d Cir. 1999) ............................................................. 6

*Ravina v. Columbia Univ.*, No. 16-CV-2137 (RA), 2020 U.S. Dist. LEXIS 39478 (S.D.N.Y. Mar. 6, 2020) ......................................................................................................................................... 13

*Reiter v. Maxi-Aids, Inc.*, No. 14 CV 3712, 2019 WL 1641306 (E.D.N.Y. Apr. 16, 2019) ......... 15

*Restivo v. Hessemann*, 846 F.3d 547 (2d Cir. 2017) ..................................................................... 6

*Themis Capital v. Democratic Republic of Congo*, No. 09 CIV. 1652 PAE, 2014 WL 4379100 (S.D.N.Y. Sept. 4, 2014) ............................................................................................................. 15

*Velez v. Novartis Pharms. Corp.*, 2010 U.S. Dist. LEXIS 125945 (S.D.N.Y. Nov. 30, 2010) .... 14

*Vista Outdoor Inc. v. Reeves Family Jr.*, 16 Civ. 5766, 2018 WL 3104631 (S.D.N.Y. May 24, 2018) .......................................................................................................................................... 13

*Warren v. Colvin*, 744 F.3d 841 (2d Cir. 2014) ............................................................................. 9

**Statutes**

5 U.S.C. § 552(a)(4)(E)(i) ..................................................................................................... 1, 5, 9

5 U.S.C. § 552(a)(4)(E)(ii)..................................................................................... 6, 9

5 U.S.C. §§552............................................................................................................. 1

## PRELIMINARY STATEMENT

This is an action under the Freedom of Information Act ("FOIA"), 5 U.S.C. §§552 et seq.,

seeking the production of agency records improperly withheld by Defendant United States Federal

Bureau of Investigation ("FBI"), in response to requests properly made by Plaintiff John Wilson

("Mr. Wilson").

FOIA provides for an award of reasonable attorneys' fees and expenses to firms, such as

those that represented the Plaintiff herein, including Beldock Levine & Hoffman LLP ("BLH"), to

a Plaintiff who has "substantially prevailed." 5 U.S.C. § 552(a)(4)(E)(i) (2006), *amended by* OPEN

Government Act of 2007, Pub. L. No. 110-175, 121 Stat. 2524. BLH amassed $54,410.00 in legal

fees over the past eighteen months of litigation and continues to amass additional fees. Mr. Wilson

and BLH have also expended thousands in out-of-pocket costs without reimbursement over the

course of this litigation.

Accordingly, Plaintiff, by his attorneys, respectfully submits this memorandum of law in

support of his motion for interest and for attorneys' fees and costs for BLH in this litigation

pursuant to FOIA's fee shifting provision. Plaintiff substantially prevailed in his litigation against

Defendant FBI by obtaining relief through a judicial order and a voluntary change in position by

the FBI and is both eligible for and entitled to an award of attorneys' fees. Plaintiff seeks

reasonable attorneys' fees in the amount of $54,410.00 to BLH. Plaintiff also requests out-of-

pocket costs both he and his attorneys expended in the amount of $9,470.43.

## BACKGROUND

Mr. Wilson is a former Wall Street mining analyst who served as an employee of SG

Warburg from 1994 to 1997. Affidavit of John Wilson ("Wilson"), Declaration of Katherine "Q"

Adams ("Adams") Exh. A., Dkt. No. 30 at ¶ 4. In March of 1996, Mr. Wilson authored a report

("the Report") that flagged concerns about the U.S. based mining company Freeport McMoran, including that the company was under investigation by the United States Department of State following the deaths of indigenous protestors at its Grasberg Mine in West Papua, Indonesia, among other human rights concerns. Wilson at ¶ 9. The 1996 allegations against Freeport McMoran were of significant interest to the U.S. government, as demonstrated by documents produced by the U.S. State Department ("DOS") in 2014 in response to a FOIA request not presently at issue in the instant case. Wilson at 10, *see* also 2014 DOS FOIA Request and Subsequent Production on the Grasberg Mine, Wilson at Exh. B.

Following the publication of Mr. Wilson's report, Mr. Wilson experienced a campaign of interference and harassment by individuals who identified themselves as working for the FBI, which was eventually a factor in Mr. Wilson's moving away from the United States following interference with his employment, social and professional networks, and privacy. Wilson at ¶14. The individuals representing themselves to Mr. Wilson as working with or on behalf of the FBI gave Mr. Wilson the strong impression, and even directly told him on one occasion, that he was the subject of an FBI investigation due to the Report. Wilson at ¶¶ 38, 43, 51, and 52. One of the individuals subjected Mr. Wilson to intense questioning and represented that the interview was being undertaken at the behest of a U.S. government agency. Wilson at ¶¶ 54-55. The individual had a large amount of detailed private information on Mr. Wilson that suggested extensive research and investigation beyond the capacity of an individual in the late 1990s and early 2000s. Wilson at ¶ 97.

After more than a decade of experiencing alarming, intimidating, and harassing behavior, Mr. Wilson began undertaking efforts to understand the scope and nature of the FBI's investigation into him through a series of FOIA requests at issue in this litigation. On June 14, 2013, Mr. Wilson

submitted a FOIA request to Defendant FBI for "all files, correspondence, or other records" concerning himself ("First Request"). Adams Exh. B. Mr. Wilson included with the First Request included all required identifiers, including his full name, date of birth, place of birth, and social security number. *Id*. On January 29, 2014, Defendant sent Mr. Wilson a letter indicating they had searched only conducted a search of CRS and were unable to identify a main file record responsive to the FOIA requested by the Plaintiff. Adams Exh. C.

On March 26, 2014, Plaintiff submitted a FOIA request to the FBI via email, stating "I request disclosure of all agency records concerning, naming, or relating to me. I specifically request that the FBI perform a complete and thorough search of all filing systems and locations for all records maintained by the Bureau pertaining to me. Such a search should include, but not be limited to, files and documents captioned in (or whose captions include) my name in the title. The FBI should search the Central Records System, Electronic Surveillance Records (ELSUR), and Electronic Case File (ECF). Further, I specifically request that the Bureau conduct a text search of the ECF to identify all potentially responsive main and cross-reference files. The FBI's search should include 'main' files and 'see references.'" ("Second Request"). Adams Exh. D. The Second Request provided further information regarding the basis for Mr. Wilson's request, including his allegations of misconduct by individuals holding themselves out to be FBI employees, as well as his social security number and US passport number. *Id.*

On September 25, 2014, Defendants responded to Mr. Wilson's Second Request, indicating that 21 pages were reviewed and released 10 pages with redactions. Adams Exh. E. The pages included a February 10, 2006 letter from the Initial Processing Unit, Internal Investigations Section, Inspection Division of the FBI, to counsel for Plaintiff, responding to Plaintiff's January 17, 2005 letter alleging misconduct by FBI personnel. *Id.* Other pages include intra-agency emails

on the topic of Plaintiff's letter and the resulting investigation; OIG's letter to Charlene B. Thornton, Assistant Director, Inspection Division of the FBI with their conclusions regarding the OIG complaint; a letter from Plaintiff following up on his January 17, 2005 letter; Plaintiff's original January 17, 2005 letter; and a list summary response entry for Mr. Wilson's complaint. *Id.*

On November 6, 2014, Plaintiff appealed the FBI's September 25, 2014 production, disputing the adequacy of the FBI's search for records responsive to his FOIA request. Adams Exh. F. On February 23, 2015, the U.S. Department of Justice ("DOJ") responded to Plaintiff's appeal and affirmed the FBI's actions on Plaintiff's FOIA request, finding the FBI had conducted an adequate and reasonable search for records responsive to Mr. Wilson's FOIA request. Adams Exh. G.

Mr. Wilson submitted another FOIA request through the FBI's eFOIPA portal on October 23, 2019 ("Third Request"), again seeking all agency records concerning, naming, or relating to himself. Adams Exh. H. On October 29, 2019, Defendant responded to Mr. Wilson's request, stating the FBI had released all relevant records and no additional records could be located. Adams Exh. I.

Given the apparent inadequacy of the FBI's search, Mr. Wilson initiated this action on December 8, 2020. *See* Dkt. No. 1. Defendant filed their answer to the Complaint on March 15, 2021. *See* Dkt. No. 13 ("Defendant's Response").

On April 2, 2021, in response to this lawsuit, Defendant reviewed 22 pages of documents and released 5 new, additional pages of documents with redactions. Adams Exh. J.

The parties jointly informed the Court that Mr. Wilson intended to challenge the adequacy of Defendant's search and filed a proposed briefing schedule for summary judgment on April 26,

2021. *See* Dkt. No. 17. The Court approved the summary judgment briefing schedule on April 27, 2021. *See* Dkt. No. 18. On September 13, 2021, Defendant filed a motion for summary judgment. *See* Dkt. Nos. 22-24. On November 17, 2021, Plaintiff filed an opposition to Defendant's motion and a cross-motion for summary judgment. *See* Dkt. No. 28. On November 19, 2021, both parties agreed to and the Court so-ordered a modified briefing schedule calling for both parties' cross-motions and reply briefs to be filed on February 3, 2022. *See* Dkt. 34. Accordingly, on February 3, 2022, Defendant filed a motion for summary judgment and their reply and opposition to Plaintiff's cross-motion for summary judgment. *See* Dkt. Nos. 35-37; 41-42. Also on February 3, 2022, Plaintiff filed their cross-motion for summary judgment and opposition to Defendant's motion for summary judgment, and their reply to Defendant's opposition of Plaintiff's cross-motion. *See* Dkt. Nos. 38-40; 43.

On February 16, 2022, the Honorable Stewart D. Aaron, United States Magistrate Judge, issued a Report and Recommendation finding the FBI had failed to meet its burden to conduct an adequate search for the records requested by Plaintiff and compelling the FBI to conduct a search of its Delta database.  Dkt. No. 44. On April 4, 2022, the Court so-ordered the February 16, 2022 Report and Recommendation. Dkt. No. 49.

## ARGUMENT

### I.    Plaintiff Should Recover Full Attorneys' Fees.

FOIA contains an explicit provision for attorneys' fees that allows the Courts to "assess against the United States reasonable attorney fees and other litigation costs reasonably incurred in any case under this section in which the complainant has substantially prevailed." 5 U.S.C. § 552(a)(4)(E)(i). Mr. Wilson substantially prevailed in this action as he has "obtained relief through… a judicial order" requiring the FBI to run an additional search for records responsive to

his request, and "through… a voluntary or unilateral change in position by the agency" in which the FBI conducted a new search and produced new documents in response to Plaintiff's lawsuit. 5 U.S.C. § 552(a)(4)(E)(ii). Accordingly, Mr. Wilson is a prevailing party and is eligible for an award of attorneys fees under FOIA. Furthermore, Mr. Wilson is *entitled to* attorneys' fees, as the four *Pietrangelo* factors for determining entitlement under FOIA weigh in his favor. Given Plaintiff's attorneys' reasonable rates, expended hours, and favorable results, Plaintiff should recover full attorneys' fees and costs for this litigation.

**A. The Lodestar Method is Appropriate for Determining a Reasonable Fee.**

The "lodestar" method of calculating and awarding attorneys' fees has been held applicable to the fee-setting inquiry in FOIA litigation. *Jordan v. U.S. Department of Justice*, 76-0276 (D.D.C. 1981) (citing *Copeland v. Marshall*, 641 F.2d 880 (D.C. Cir. 1980)). The lodestar method multiplies the number of hours that a prevailing party's attorneys reasonably expended by reasonable hourly rates. *Hensley v. Eckerhart*, 461 U.S. 424 (1983), *Restivo v. Hessemann*, 846 F.3d 547, 589 (2d Cir. 2017) (citing *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 552 (2010)). There is a "strong presumption" that the resulting figure is a reasonable fee. *Green v. Torres*, 361 F.3d 96, 99 (2d Cir. 2004); *Quaratino v. Tiffany & Co.*, 166 F.3d 422, 425 (2d Cir. 1999)).

**B. The Hours Expended on Plaintiff's Behalf Are Reasonable.**

For attorneys' fees, Plaintiff requests $54,410.00 for the work of BLH. The detailed and contemporaneous time entries accompanying this memorandum of law are attached as Exhibit 1 to Declaration of Katherine "Q" Adams ("Adams Decl.") and they indicate "for each attorney, the date, the hours expended, and the nature of the work done." *See Leevson v. Aquafile USA Inc.*, 770 F. App'x 577, 583 (2d Cir. 2019) (citations omitted).

Determining the reasonableness of the hours expended is not a question of "whether

hindsight vindicates an attorney's time expenditures, but instead, if "at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures." *Grant v. Martinez*, 973 F.2d 96, 99 (2d Cir. 1992) (declining to engage in "an *ex post facto* determination of whether attorney hours were necessary to the relief obtained.").

BLH allocated significant resources to the litigation, all of which were reasonable.

Defendant moved for judgment as a matter of law under Federal Rule of Civil Procedure 50(a) on all of Plaintiff's claims, including the Claim upon which he ultimately prevailed. Plaintiff's counsel accordingly spent time drafting a response to defendant's motion. Plaintiff's counsel also spent time preparing the fee petition, and respectfully requests leave to supplement his fees and costs for counsel's work on the fee petition itself following its completion.

### C.  Plaintiff's Counsel Achieved Favorable Results.

The lodestar is presumed reasonable, however, to the extent that a court examines factors outside the lodestar, "the most critical factor is the degree of success obtained." *Hensley*, 461 U.S. at 433–36. A Court should not limit a fee award "simply because the plaintiff failed to prevail on every contention raised in the lawsuit." *Id*. at 435–36. Indeed, plaintiffs "*in good faith may raise alternative legal grounds for a desired outcome, and the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee.*" *LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 762 (2d Cir. 1998) (quoting *Hensley*, 461 U.S. at 435) (emphasis in original).

Even when plaintiffs do achieve limited success, courts do not reduce fee awards for cases that "involve a common core of facts" or are "based on related legal theories." *Kassim v. City of Schenectady*, 415 F.3d 246, 253 (2005) (internal quotations and citations omitted); *see Grant*, 973 F.2d at 101. As long as the claims are not wholly unrelated, "hours spent on the unsuccessful claims need not be excluded from the lodestar amount." *Lunday v. City of Albany*, 42 F.3d 131,

134 (2d Cir. 1994); *Parrish v. Sollecito*, 280 F. Supp. 3d 145, 172 (S.D.N.Y. 2003).

Evaluating FOIA fee applications is a three-step process, in which the Court must determine i) whether the plaintiff is eligible for attorneys' fees; ii) whether the plaintiff is entitled to attorneys' fees, and iii) whether the fee requested by an eligible and entitled applicant is presumptively reasonable under the lodestar approach generally applied to fee applications. *New York Times Co. v. Cent. Intel. Agency*, 251 F. Supp. 3d 710, 713 (S.D.N.Y. 2017).

**D.  Plaintiff is Eligible for and Entitled to Attorneys' Fees Under FOIA.**

The Plaintiff in this case is both eligible for and entitled to an award of attorneys' fees and costs under FOIA. Plaintiff is eligible for such an award as he has satisfied the statutory requirements of eligibility by obtaining relief in the form of a judicial order requiring Defendant FBI to run a new search of its Delta database in response to Plaintiff's lawsuit, and in the form of a voluntary change in position by the FBI in which they produced five new pages of documents to Plaintiff after the initiation of this lawsuit. Furthermore, Plaintiff is entitled to such an award as all four *Pietrangelo* factors weigh in favor of his entitlement: (1) the public benefit derived from the case; (2) the commercial benefit to the plaintiff; (3) the nature of the plaintiff's interest in the records; and (4) whether the agency had a reasonable basis for withholding requested information. *Pietrangelo v. U.S. Army*, 568 F.3d 341, 343 (2d Cir. 2009). Given his eligibility and entitlement to an award of attorneys' fees under FOIA, this Court should grant him full attorneys' fees as well as reimbursement for costs expended in the course of this litigation

**i.    Plaintiff is eligible for attorneys' fees because he substantially prevailed by obtaining a judicial order in his favor and a voluntary change in position by the FBI.**

For the purposes of determining eligibility for an award of attorneys' fees, the Courts look to FOIA's provision that a court "may assess against the United States reasonable attorney fees and

other litigation costs reasonably incurred in any case under this section in which the complainant has substantially prevailed." 5 U.S.C. § 552(a)(4)(E)(i). The plaintiff bears the burden of showing that it substantially prevailed in the FOIA litigation. *Warren v. Colvin*, 744 F.3d 841, 844 (2d Cir. 2014). The statute provides, in relevant part, that "a complainant has substantially prevailed if the complainant has obtained relief through either—(I) a judicial order . . . or (II) a voluntary or unilateral change in position by the agency, if the complainant's claim is not insubstantial." 5 U.S.C. § 552(a)(4)(E)(ii). The Plaintiff in this case obtained relief under both prongs of the statute and therefore substantially prevailed in the litigation.

Plaintiff obtained relief through a judicial order, unambiguously meeting the requirements of prong (I). A plaintiff substantially prevails in FOIA litigation for the purpose of determining eligibility for attorneys' fees where he obtains a judicial order requiring an agency to conduct an expanded search for requested records. *Ctr. for Popular Democracy v. Bd. of Governors of the Fed. Res. Sys.*, 2021 U.S. Dist. LEXIS 159489, at *12 (E.D.N.Y. Aug. 20, 2021). On February 16, 2022, the Honorable Stewart D. Aaron, United States Magistrate Judge, issued a Report and Recommendation finding the FBI had failed to meet the burden of conducting an adequate search for the requested records given its failure to search the Delta record-keeping system, and compelling Defendant to conduct a new search:

> In its Second Declaration, Defendant states that Plaintiff 'provided no justification for the FBI to search Delta.' However, this is not the case. Defendant itself notes in its reply memorandum the justification provided by Plaintiff for searching Delta: 'Plaintiff claims that Defendant should have searched Delta because he claims that third-party individuals discussed information with him, including their employment with the FBI in a possible informant capacity.' Thus, contrary to Defendant's assertion, Plaintiff has provided a justification for searching the Delta system.
> In addition, Defendant asserts that 'the FBI found no clear lead indicating that… a search [of Delta] was warranted," and that the information provided by Plaintiff and the 'results of the CRS index search were insufficient to lead the FBI to believe that records would exist in Delta.' However, Defendant does not provide

9

any explanation for why the information and search results are insufficient. Notably, Defendant does not state… that information in the Delta system would be located or referenced in the CRS. In these circumstances, the Court finds Defendant's response regarding search of the Delta system to be unsatisfactory. Accordingly, the Court recommends that Defendant be ordered to search the Delta system for responsive information.

Dkt. No. 44 (internal citations omitted).

On April 4, 2022, the Court agreed and so-ordered the Report and Recommendation. Dkt. No. 49. Having obtained this judicial order, Plaintiff has substantially prevailed for the purposes of the FOIA fee-shifting provision and is eligible for an award of attorneys' fees.

Plaintiff also obtained relief through a voluntary change in position by the FBI and therefore similarly met the requirements of prong (II). Known as the "catalyst theory" of fee eligibility, a plaintiff satisfies prong (II) where they "show[ ] that the lawsuit was reasonably necessary and the litigation substantially caused the requested records to be released." *Ctr. for Popular Democracy*, 2021 U.S. Dis. LEXIS 159489 at *11 (citing *Schwartz v. U.S. Drug Enf't Admin.*, No. 13 Civ. 5004 (CBA) (ST), 2019 U.S. Dist. LEXIS 34165 at *3 (E.D.N.Y. Mar. 1, 2019) (internal quotation omitted)). "[T]he plaintiff has the burden of showing that it is more probable than not that the government would not have performed the desired act absent the lawsuit." *Id.* (citing *Grand Canyon Tr. V. Bernhardt*, 947 F.3d 94, 97, 445 U.S. App. D.C. 39 (D.C. Cir. 2020). On April 2, 2021, in response to this lawsuit, the FBI reviewed 22 pages of documents and released 5 new, additional pages of documents with redactions to Mr. Wilson. It is obvious that the FBI would not have conducted this search or released the additional documents if not for this litigation. Despite multiple requests and appeals by Mr. Wilson over the span of many years, the FBI refused to release any additional records between the time it first produced an initial ten pages to Mr. Wilson in 2014 and the commencement of this lawsuit in 2020. This lawsuit was clearly the catalyst for the FBI's renewed search and production of documents, and Plaintiff has

therefore established eligibility for attorneys' fees under prong (II) of FOIA.

ii.   **Plaintiff is entitled to an award of attorneys' fees because the Pietrangelo factors weigh in his favor.**

Plaintiff is entitled to an award of attorneys' fees under FOIA as the four *Pietrangelo* factors weigh in favor of a finding of such entitlement.  The four factors weighed by the Court to determine if a plaintiff is entitled to an award of attorneys' fees are: (1) the public benefit derived from the case; (2) the commercial benefit to the plaintiff; (3) the nature of the plaintiff's interest in the records; and (4) whether the agency had a reasonable basis for withholding requested information. *Pietrangelo v. U.S. Army*, 568 F.3d 341, 343 (2d Cir. 2009); *New York Times Co. v. Cent. Intel. Agency*, 251 F. Supp. 3d 710, 713 (S.D.N.Y. 2017).

Regarding the first factor, a case may be found to benefit the public where the agency records at issue are "likely to add to the fund of information that citizens use in making vital political choices." *Elec. Privacy Info. Ctr. v. U.S. Dep't of Homeland Sec.*, 218 F. Supp. 3d 27, 44 (D.D.C. 2016) (quotation & citation omitted). The records requested by Plaintiff inarguably adds to exactly such a fund of information. The public benefits greatly from learning what records the Government keeps on a U.S. citizen who experienced a campaign of interference and harassment by individuals who identified themselves as working for the FBI following the lawful publication of a report detailing human rights abuses at a U.S. based mining company operating abroad. *See* Affidavit of John Wilson, Declaration of Katherine "Q" Adams Exhibit A, Dkt. No. 30.  The public is further benefited by the expansion of the FBI's FOIA search methodology under the Court's so-ordered Report and Recommendation, which found the FBI's refusal to search the Delta database for the requested records unreasonable. Dkt. No. 44.

The second and third factors for determining entitlement to attorneys' fees under FOIA—the commercial benefit to the plaintiff and the nature of plaintiff's interest—are often considered

together. *See New York Times*, 251 F. Supp. 3d at 713. These factors discourage awards of attorneys' fees where the plaintiff is a for-profit operation or otherwise intends to use the requested records for commercial gain and encourage awards where the plaintiff instead seeks information for public informational purposes only. *Ctr. for Popular Democracy,* 2021 U.S. Dist. LEXIS 159489 at *22 (citing *People for the Ethical Treatment of Animals v. Nat'l Inst. of Health*, 130 F. Supp. 3d 156, 165 (D.D.C. 2015)).  The Plaintiff in the instant case has no commercial motivation in seeking the requested records. Instead, Mr. Wilson requested the documents to expose to the public any records that may have shown that individuals affiliated with the FBI participated in an intentional campaign of harassment against him in retaliation for his reporting on human rights abuses by U.S.-owned companies abroad. As discussed in the preceding paragraph, this is highly pertinent information for the U.S. public, and the second and third factor therefore weigh in favor of granting Plaintiff an award of attorneys' fees.

The fourth factor—the agency's reasonable basis for withholding requested information— "considers whether the agency's opposition to disclosure had a reasonable basis in law, and whether the agency had not been recalcitrant in its opposition to a valid claim or otherwise engaged in obdurate behavior." *Ctr. for Popular Democracy,* 2021 U.S. Dist. LEXIS 159489 at *22 (quoting *Davy v. Cent. Intel. Agency*, 550 F.3d 1155, 1162 (D.C. Cir. 2008) (internal quotations & citations omitted)). This fourth factor is met where the Court issues an order compelling an agency to conduct a new search in order to meet the standard of conducting a reasonable search for the requested records. *Id.* at *25-26. Such an order was issued in this case when the Court so-ordered the February 16, 2022 Report and Recommendation finding the FBI had failed to meet the burden of conducting an adequate search for the requested records given its failure to search the Delta record-keeping system, and compelling Defendant to conduct a new search. Dkt. No. 49. The

fourth and final factor therefore also weighs in Plaintiff's favor, and Plaintiff is therefore entitled to an award of attorneys' fees.

**E.  Plaintiff's Attorneys Request Reasonable Rates Comparable to Rates that Courts in this District Award for Attorneys of Their Experience and Reputation.**

When determining a reasonable hourly rate, Courts look to each attorney's experience in the field, fees that similar attorneys in the district charge, and the fees clients are willing to pay for similar services. *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany*, 522 F.3d 182, 191 (2d Cir. 2008). The lodestar method "looks to the prevailing market rates in the relevant community." *Perdue*, 559 U.S. 542, 552; *see also Arbor Hill*, 522 F.3d at 191 (the "community" is presumed to be the district in which the case is litigated).

To determine reasonableness, courts also look to the rates counsel typically charges paying clients. *Arbor Hill*, 522 F.3d at 190 (finding that a "reasonable hourly rate is the rate a paying client would be willing to pay"). BLH's reputation supports the rates requested. A higher rate has been deemed appropriate for "premier civil rights firms," compared to solo practitioners or attorneys from less-well known firms. *Ravina v. Columbia Univ.*, No. 16-CV-2137 (RA), 2020 U.S. Dist. LEXIS 39478, at *14 (S.D.N.Y. Mar. 6, 2020) (noting that the firm of plaintiff's counsel had a "record of achieving significant victories in complex litigation and has been recognized as a premier civil rights firm"). As demonstrated by the experience and skills of its attorneys, as well as its reputation for obtaining multimillion-dollar verdicts and advancing groundbreaking civil rights litigation, BLH is similarly situated as a premier civil rights firm in New York City. *See* Rankin Decl. at ¶¶ 20-22. The $575 rate requested below for a partner is thus reasonable. *Ravina*, 2020 U.S. Dist. LEXIS 39478, at *14. These rates pale in comparison to the rates found reasonable for large, commercial firms in New York City, which may receive, for example, $1,260 for partners and $693.75 for associates. *See, e.g., Vista Outdoor Inc. v. Reeves Family Jr.*, 16 Civ. 5766, 2018

WL 3104631, at *6–7 (S.D.N.Y. May 24, 2018).

     i.     **David B. Rankin's Hourly Rate of $575 Is Reasonable.**

Mr. Rankin's rate of $575 per hour reflects market rates for partners of similar skill, experience, and reputation. *See* Rankin Decl. at ¶¶ 30-37 ("Rankin Decl."). Mr. Rankin has been lead counsel on seven jury trials and four bench trials and served as the second chair on 10 jury trials. Rankin Decl. ¶¶ 27. In his 16 years of practicing law, Mr. Rankin has litigated over 250 federal lawsuits, over 100 state court civil actions, conducted hundreds of depositions, and drafted motions of many varieties. *Id*. at 28. Further justification for the $575 rate for Mr. Rankin can be found in his declaration.

An award of $575 places his rate within a reasonable range, if not below, the rate for an attorney of his caliber and experience. *Velez v. Novartis Pharms. Corp.*, 2010 U.S. Dist. LEXIS 125945, at *22 (S.D.N.Y. Nov. 30, 2010) (approving lodestar hourly rates of $750, $700, and $600 for senior attorneys); *Barbour*, 788 F. Supp. 2d 216, *aff'd*, 700 F.3d 631 (approving $625 hour rate in a police misconduct case for solo practitioner civil rights lawyer); *Rozell*, 576 F. Supp. 2d at 546 (awarding experienced civil rights litigator fees at $600 per hour). It is also considerably less than the $1,260 rates found reasonable for partners at large, commercial firms in New York City. *See Vista Outdoor Inc.*, 2018 WL 3104631, at *6–7.

Mr. Rankin's rate is reasonable in light of prior awards for his work. In January 2020, Mr. Rankin's rate of $500 was approved. *Greenburger*, 2020 U.S. Dist. LEXIS 8658, at *34 (S.D.N.Y. Jan. 16, 2020). There, the case involved a "single-plaintiff, single-defendant Section 1983 action in which the Complaint [was] seven pages long and in which the defendant defaulted." 2020 U.S. Dist. 147673, at *17. A $575 hourly rate is appropriate in a hard-fought case. *Medina v. Bother*, 2019 U.S. Dist. LEXIS 156139, *26 (S.D.N.Y. 2019) (finding a "hard-fought case" supported a

higher fee).

### ii.      Katherine "Q" Adams's Hourly Rate of $325 is Reasonable.

Ms. Adams's rate of $325 per hour reflects market rates for mid-level associates of similar skill, experience, and reputation. *See* Adams Decl. at ¶¶ 20. Ms. Adams is an experienced civil rights associate attorney with three years of experience litigating FOIA and N.Y. FOIL lawsuits. *Id.* at ¶¶ 19. Further justification for the $325 rate for Ms. Adams can be found in Ms. Adams's declaration.

Ms. Adams's hourly rate of $325 is reasonable in light of her prior work and the established rates for plaintiffs' attorneys of similar experience and caliber in the Southern District of New York. "Precedent in the Southern District of New York demonstrates that a reasonable hourly rate for a civil rights attorney can range from $250 to $650." *Lilly v. City of New York*, No. 16 Civ. 322, 2017 WL 3493249, at *1 (S.D.N.Y. Aug. 15, 2017) (citing *Abdell v. City of New York*, No. 05 Civ. 8452, 2015 WL 898974, at *3 (S.D.N.Y. Mar. 2, 2015)). Similar cases in the Eastern District, where fee awards tend to be slightly lower (*see Centro de la Comunidad Hispana de Locust Valley v. Town of Oyster Bay*, 2019 U.S. Dist. LEXIS 102840 (E.D.N.Y. Jun 18, 2019) (report and recommendation)), have found similar hourly rates appropriate for associates. *See Reiter v. Maxi-Aids, Inc.*, No. 14 CV 3712, 2019 WL 1641306, at *4 (E.D.N.Y. Apr. 16, 2019) (noting propriety of a rate of $325 for associates in fee shifting cases); *McLaughlin v. IDT Energy*, No. 14 CV 4107, 2018 WL 3642627, at *17 (E.D.N.Y. July 30, 2018) (noting propriety of an award of $300 for associates with three to five years of experience) (report and recommendation).

## II.      Plaintiff Should Fully Recover for His Reasonable Out-of-Pocket Costs.

Pursuant to the FOIA, Plaintiff also seeks an award of reasonable out-of-pocket expenses including expert fees and other costs. Plaintiff has already paid out-of-pocket costs on much of the

litigation, and Plaintiff's costs include expert fees. Plaintiff worked with an expert who was crucial to his efforts to demonstrate that Defendant FBI had not conducted a full and reasonable search. Like attorneys' fees, reasonableness of expert fees is determined by multiplying the reasonable hourly rate by the reasonable number of hours expended." *Matteo v. Kohl's Dep't Stores, Inc.*, No. 09 Civ. 7830(RJS), 2012 WL 5177491, at *5 (S.D.N.Y. Oct.19, 2012) *aff'd*, 533 F. App'x 1 (2d Cir. 2013). Courts in this District "routinely reimburse prevailing parties for the costs of expert witnesses." *Themis Capital v. Democratic Republic of Congo*, No. 09 CIV. 1652 PAE, 2014 WL 4379100, at *9 (S.D.N.Y. Sept. 4, 2014) (citations omitted).

Plaintiff retained Eagle Security Group, Inc. to demonstrate the inadequacy of the FBI's search. Without Plaintiff's expert, Plaintiff would not have been aware of the Delta database and could not have obtained the Court's order compelling the FBI to search that database for the requested records.  Thus, Plaintiff should recover out-of-pocket costs for all work done by the expert. Plaintiff attaches an invoice for this expert, which is sufficiently detailed for the court to assess the nature of the expert services. Adams Decl. at Exh. 2.

## CONCLUSION

Plaintiff is both eligible for and entitled to an award of attorneys' fees under FOIA, as he substantially prevailed in his litigation against Defendant FBI by obtaining relief through a judicial order and a voluntary change in position by the FBI, and the four *Pietrangelo* factors weigh in favor of his entitlement. Plaintiff's attorneys charged reasonable rates with precedent in case law, expended a reasonable number of hours on this case, and achieved favorable results. Based on the foregoing, Plaintiff should recover full attorneys' fees and costs for this litigation. Accordingly, Plaintiff respectfully requests that the Court award $54,410.00 in fees and $9,470.43 in costs. Plaintiff seeks leave to supplement his fee application for fees and cost expended in preparing the

application itself if it is successful.

Dated:  New York, New York

        July 1, 2022

                                    Respectfully submitted,

                                    BELDOCK LEVINE & HOFFMAN LLP

                                    By: _____
                                         David B. Rankin
                                         Katherine "Q" Adams

                                         BELDOCK LEVINE & HOFFMAN LLP
                                         99 Park Avenue PH/26th Fl.
                                         New York, NY 10016-1601
                                         t: 212-277-5825
                                         e: DRankin@blhny.com

                                    *Attorneys for Plaintiff John Wilson*

17