UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

JOHN WILSON,

                              Plaintiff,

- against -

FEDERAL BUREAU OF INVESTIGATION,

                              Defendant.

**DECLARATION OF DAVID B. RANKIN IN SUPPORT OF PLAINTIFF'S ATTORNEYS' FEES APPLICATION**

20-CV-10324 (LAK) (SDA)

---

I, DAVID B. RANKIN, an attorney duly licensed to practice law in this Court, pursuant to 28 U.S.C. § 1746, do hereby declare under penalties of perjury:

1.    I am an Attorney at Beldock Levine & Hoffman, LLP, 99 Park Avenue, PH/26th Floor, New York, NY 10016, and one of attorneys for Plaintiff John Wilson in the above-referenced action. I submit this declaration based on personal knowledge, in support of the Plaintiff's application for attorneys' fees.

2.    The Court, in its Report and Recommendation dated February 16, 2022 (Dkt. No. 44), so-ordered on April 4, 2022 (Dkt. No. 49), found that the FBI failed to meet the burden of showing its search was adequate under the Freedom of Information Act ("FOIA") given its failure to search the Delta record-keeping system, and compelled Defendant to conduct a new search. As discussed in Plaintiff's Memorandum of Law in Support of Plaintiff's Motion for Attorneys' Fees and Costs, Mr. Wilson has substantially prevailed under FOIA and is therefore entitled to reasonable legal fees and expenses incurred in this litigation.

3.    On Plaintiff's behalf, I seek costs and reasonable attorneys' fees in the amount of $63,880.43. This combines the 20.60 hours of work I did at the hourly rate of $575.00 as well as the 126.90 hours of work Associate Katherine "Q" Adams did at the hourly rate of $325.00, the

1

6.70 hours of work done by Paralegals Abigail Robinson and Elizabeth Leader at the hourly rate of $175.00, and the 1.00 hour of work done by Paralegal Sophie Nettesheim at the hourly rate of $150.00. The figure also includes Petitioner's out-of-pocket costs of $9,470.43 to cover expert witnesses and investigators, filing fees, postage, computer assisted law research, and process service fees. The calculation of these amounts is demonstrated in the Declaration of Katherine "Q" Adams ("Adams") Exhibit 1.

## Counsel's Billing Records

4. My and Ms. Adams's time records for the prosecution of the FOIA proceeding are attached to Adams as Exhibit 1. These time sheets are based on contemporaneous records and, in an effort to make a reasonable demand, do not include the work spent preparing this fee application.

5. The work that Ms. Adams and I have performed to date, and for which Petitioner seeks to recover its costs and reasonable attorney's fees, includes, among other tasks:

- Reviewing the administrative record;
- Legal research on the FOIL exemption that Respondent used to deny Petitioner's FOIA request;
- Drafting the FOIA Petition;
- Communicating with Respondent's counsel about a resolution to this litigation;
- Communicating with Petitioner about case strategy;
- Drafting the reply to Respondent's Answer;

6. The time sheet does not include any further work that may be necessary in this action, such as time spent on any appeal that Respondent may choose to take or time spent litigating this fee application.

7. Plaintiff also incurred out-of-pocket costs associated with this action consisting of $402.00 in filing fees, $153.55 in postage and courier fees, $37.04 in computer assisted law research, $8,788.75 in expert, investigator, and professional services, and $89.09 in telephone conference service fees. The receipts for these costs are attached to Adams as <u>Exhibits 1 and 2</u>.

### **David B. Rankin's Qualifications**

<u>Education and Bar Pre-Admission Experience</u>

8. I completed my undergraduate work at Reed College in Portland, Oregon, where I received a B.A. in Economics in 1999.

9. From 2000 to 2002, before attending law school, I worked as a paralegal in the single person law office of George P. Fisher. Mr. Fisher's practice focused primarily on employment discrimination and federal labor law violations. I assisted him with numerous federal employment cases at each stage of litigation.

10. I received my J.D. from New York Law School in 2005.

11. During law school, I worked for Nadine Strossen, who was then the President of the American Civil Liberties Union. I assisted in numerous research projects involving government misconduct.

12. In 2004, I worked as a coordinator for the New York City Chapter of the National Lawyers Guild in connection with its efforts to defend the civil liberties of the demonstrators attending the Republican National Convention. I helped coordinate nearly 1,000 law students, lawyers, and legal workers. This work provided the basis for a finding by Judge John Cataldo that the City of New York had violated his court-ordered release of 650 people.[1]

13. After law school and before I opened my own practice, I worked with various attorneys, including Gideon O. Oliver. During my relationship with Mr. Oliver, we defended a

---

[1] https://www.cnn.com/2004/ALLPOLITICS/09/02/convention.protests/

criminal trial of a number of critical mass bicycle riders.  As a result of our efforts, the trial judge struck down New York City's parade permitting regulation, NYC Admin. Code § 10-110, as unconstitutional. *See People v. Beziak*, 11 Misc.3d 424 (Crim. Ct. N.Y. Co., Jan 09, 2006).

Law Office of David B. Rankin

14. From May 2006 to July 2011, I was the principle in the Law Office of David B. Rankin, located at 350 Broadway in Manhattan. That office employed numerous attorneys and many paralegals and interns.

Rankin & Taylor, PLLC

15. I was the senior partner at Rankin & Taylor, PLLC from July 2011 to June 2017. Our office was located at both 350 Broadway in Manhattan and then at 11 Park Place, also in Manhattan.

16. Rankin & Taylor employed between six and eight attorneys, two paralegals, and one receptionist.

17. Rankin & Taylor's primary focus was on civil rights litigation.  The majority of our cases were litigated in the Federal Courts.

18. A collection of news-worthy items I litigated or helped litigate may be found at https://drmtlaw.com/press/.

Beldock Levine & Hoffman, LLP

19. I became a member and partner in Beldock Levine & Hoffman LLP ("The Firm") in June of 2017.

20. The Firm specializes in civil rights and employment litigation, and has offices at 99 Park Avenue, 26th Floor, New York, New York 10016.

21. The Firm, which was formed in 1964, has historically fought for the rights of those subjected to discrimination or other wrongful or arbitrary conduct, including a successful race discrimination class action against the New York City Parks Department which led to a $21 million settlement. *Wright v. Stern*, 01-cv-4437 (S.D.N.Y.), 553 F.Supp.2d 337 (S.D.N.Y. 2008) and 450 F.Supp.2d 335 (S.D.N.Y. 2006).

22. The Firm was also counsel for four of the five members of the Central Park Five. *McRay, Richardson, Santana, Wise, and Salaam*, 03-cv-9685 (DAB)(RLL)(SDNY).

23. My civil rights practice at The Firm includes cases involving police and governmental misconduct, wrongful death, class actions, false arrests and imprisonment, and employment discrimination, and freedom of information work.

Selected Professional Accomplishments

24. I have frequently lectured on litigation and policing issues. I have given presentations at Harvard Law School, Yale Law School, and all of the New York City Law Schools.

25. I have conducted trainings for attorneys at the Center for Constitutional Rights and numerous CLEs, including:

   a. Lawline.com – Filming the Police: The First Amendment Retaliation Claim – January 24, 2017;

   b. New York County Lawyers' Association – Depositions and Examinations – December 2, 2016;

   c. Federal Bar Counsel – Trial Ad. Training for Pro Bono Lawyers – Opening Statements CLE – May 5, 2016;

   d. New York County Lawyers' Association – Protest Lawyering CLE – January 22, 2013;

   e. Practicing Law Institute Speaker – Protest and the First Amendment, Bridge the Gap CLE – August 16, 2012; and

  f. Legal Aid Society Speaker – Civil Remedies for Criminal Defendants CLE – October 3, 2011.

26. A few noteworthy case results include:

  a. *3.65 million dollar settlement* on October 9, 2018 in *Z. v. The City of New York* (Kings Co. Sup. Ct.). Mr. Z. was assaulted by members of the NYPD causing a post traumatic seizure disorder;

  b. *2.5 million dollar jury verdict* on February 17, 2013 in *Alla v. The City of New York*, 11-cv-00892 (E.D.N.Y.). Mr. Gad Alla was punched in the head by a police officer causing a mild traumatic brain injury;

  c. *1.5 million dollar settlement* for the family of Carlos Mercado. Mr. Mercado died in Rikers Island Jail when the NYC Department of Corrections refused to give him insulin. *Mercado v. The City Of New York*, 14-cv-06775 (S.D.N.Y.);[2]

  d. *1.4 million dollar settlement* for the family of Christian Haley. Mr. Haley died while in the custody of the NYC Department of Corrections due to a sudden cardiac event. *Fernandez v. The City of New York*, 17-cv-02431 (S.D.N.Y.);

  e. *1.1 million dollar settlement* for the Family of Shereese Francis. Ms. Francis, a mentally challenged woman, was killed by NYPD Officers who responded before EMTs when her family called for emergency medical care. *Francis et al v. The City of New York*, 13-cv-0050 (E.D.N.Y.);

  f. *965,000 dollar settlement* on behalf of 81 Critical Mass bicyclists arrested over the course of many months. *Sheila Callaghan, et al. v. The City of New York*, 07-cv-9611 (S.D.N.Y.);[3]

  g. *Obtained court-ordered re-training of the NYPD Midtown North Precinct* on how New York City's disorderly conduct statute does not allow Officers to arrest homeless persons for simply being present in midtown Manhattan. *Hardeman v. The City of New York*, 11-cv-03424 (S.D.N.Y.);[4] and

  h. *Obtained court-ordered re-training of Rikers Island Corrections Officers* on how they relate to LGBTQ individuals they come in contact with. *Hamm v. City of New York*, 15-cv-06238 (S.D.N.Y.);[5] and

---

[2] https://www.nytimes.com/video/nyregion/100000003884279/countdown-to-death-at-rikers-island.html
[3] https://www.nytimes.com/2010/10/19/nyregion/19critical.html
[4] https://www.nytimes.com/2011/08/30/nyregion/panhandler-on-fifth-avenue-wins-respite-from-arrests.html?_r=1
[5] https://gothamist.com/2018/09/12/rikers_gay_beating_lawsuit.php

6

  i. *Obtained the partial unsealing of a government search warrant* and supporting documents stemming from a federal inquiry into emails belonging to Huma Abedin, a top aide to Hillary Clinton, from Judge Castel. 16-mc-00464-PKC *In Re:Search Warrant issued on October 30, 2016*. This action sought the search warrant materials which were used to obtain access to email messages involving Hillary R. Clinton located on the computers of Anthony Weiner and Huma Abedin.[6]

27. I have been lead counsel on eight jury trials and four bench trials. I have been the second chair on 10 jury trials.

28. I have been counsel on over 250 federal civil lawsuits. I have been counsel on over 100 New York state court civil actions. I have conducted hundreds of depositions and drafted motions of many varieties.

29. I have appeared as counsel in the Second Circuit on 12 occasions and argued one case.

Hourly Rate History

30. My private clients are charged $575.00 per hour for my time.

31. This is the rate that I charge in The Firm's civil rights retainer agreements in the event I am to be compensated on a *quantum meruit* basis (*e.g.*, if I were to be discharged by a client who was ultimately successful in the litigation).

32. In *Tucker v. City of New York*, 704 F. Supp.2d 347, 361 (S.D.N.Y. 2010), Magistrate Judge Michael H. Dolinger awarded our client fees for the work I performed at the hourly rate of $275.

33. In *Long v. The City of New York*, 09 Civ. 6099, 2010 U.S. Dist. LEXIS 81020, *3 (S.D.N.Y. Aug. 9, 2010), Judge Hellerstein awarded our client fees for the work I performed at the hourly rate of $325. While a review of Judge Hellerstein's decision does not identify my hourly rate, I represent as an Officer of the Court that was in fact the awarded rate.

---

[6] https://nytimes.com/2016/12/19/nyregion/hillary-clinton-emails-huma-abedin-fbi.html

7

34. In *Cruceta v. The City of New York*, 10 CV 5059, 2012 U.S. Dist. LEXIS 97740, *3 (E.D.N.Y. Feb. 7, 2012), Magistrate Judge James Orenstein recognized that my then billing rate of $325 per hour was reasonable.

35. In *Herrara v. 12 Water St. Gourmet Café,* 13 CV 4370, 2016 U.S. Dist. LEXIS 25565 (S.D.N.Y. Feb. 29, 2016), $325 was not found to excessive for my time in working on a FLSA default motion and inquest.

36. In *Greenburger v. Roundtree*, 17 Civ. 3295, 2020 U.S. Dist. LEXIS 147673 (S.D.N.Y. August 16, 2020), $500 an hour was not found to be excessive for my work on a civil rights default inquest.

37. In *Emamian v. Rockefeller University*, 1:07-cv-0319 (PGG) (SDA) (S.D.N.Y. Dec. 28, 2021), I sought an hourly rate of $575. The Honorable Stewart D. Aaron issued a Report and Recommendation, Dkt. No. 354, finding an hourly rate of $500 to be reasonable for my work, and we timely filed a currently pending objection to the reduction, Dkt. No. 361.

38. The hours listed for me in the Declaration of David B. Rankin are accurate and contemporaneously recorded.

### Abigail Robinson's Qualifications

39. Beginning in 2013, Ms. Robinson has been the chief paralegal both at Rankin & Taylor, PLLC and now at The Firm.

40. Ms. Robinson received her Bachelor of Arts in 2008 from the University of South Florida.

41. Ms. Robinson became a member of Mutant Legal, a legal collective focused on providing legal support and education to peoples' movements and marginalized communities traditionally excluded from access to meaningful justice.

42. In addition to Mutant Legal, Ms. Robinson works on the Just Info Hotline providing legal information to New York City residents with questions regarding the criminal justice system.

43. A $175 dollar an hour rate for Ms. Robinson is reasonable.

## Fees and Costs Sought

44. As set forth above, Plaintiff respectfully requests $63,880.43 in total costs and reasonable attorney's fees. This figure combines the $9,470.43 incurred in out-of-pocket expenses with the 126.90 hours of work that Ms. Adams did at an hourly rate of $325.00, the 20.60 hours of work that I did at an hourly rate of $575.00, the 6.70 hours of work that Ms. Robinson and Ms. Leader did at an hourly rate of $175.00, and the 1.00 hour of work Mx. Nettesheim did at an hourly rate of $150.00. See Adams Exhibit 1.

45. The combined 155.20 hours spent litigating this action were reasonable and necessary to achieve success.

Dated:	July 1, 2022
	New York, New York

									Respectfully submitted,

							By:_____
									David B. Rankin, Esq.
									BELDOCK LEVINE & HOFFMAN LLP
									99 Park Avenue PH/26th Fl.
									New York, NY 10016-1601
									t: 212-277-5825
									e: DRankin@blhny.com

9