**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

JOHN WILSON,

                               Plaintiff,

                   -v-

FEDERAL BUREAU OF INVESTIGATION,

                         Defendant.

No. 20 Civ. 10324 (LAK) (SDA)


**DEFENDANT'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S**
**MOTION FOR ATTORNEYS' FEES AND COSTS**


DAMIAN WILLIAMS
United States Attorney
Southern District of New York
86 Chambers Street, 3rd Floor
New York, New York 10007
Telephone: (212) 637-2633
Email: tara.schwartz@usdoj.gov


Of Counsel:

TARA SCHWARTZ
Assistant United States Attorney

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ................................................................................................. 1

BACKGROUND ................................................................................................................... 2

ARGUMENT ....................................................................................................................... 6

I.    Legal Standard for Award of Attorneys' Fees and Costs Under FOIA ............................. 6

II.   Plaintiff Has Not Demonstrated Eligibility for An Award of Attorneys' Fees and Costs 9

III.  Plaintiff Has Not Demonstrated Entitlement to An Award of Attorneys' Fees and Costs 10

IV.   Plaintiff's Requested Attorneys' Fees and Costs are Unreasonable ............................. 12

CONCLUSION .................................................................................................................... 16

# <u>TABLE OF AUTHORITIES</u>

**Cases**

*Am. Oversight v. U.S. Dep't of Justice*, 375 F. Supp. 50 (D.D.C. 2019) ........................................ 7

*Anderson v. HHS*, 80 F.3d 1500 (10th Cir. 1996) ........................................................................ 7

*Audubon Soc'y of Portland v. U.S. Nat. Res. Conservation Serv.*, No. 10 Civ. 1205, 2012 WL 4829189 (D. Or. Oct. 8, 2012), *aff'd*, 573 F. App'x 640 (9th Cir. 2014) ........................ 15

*Bangor Hydro-Elec. Co. v. U.S. Dep't of Interior*, 903 F. Supp. 169 (D. Me. 1995) .................... 7

*Barnard v. U.S. Dep't of Homeland Sec.*, 656 F. Supp. 2d 91 (D.D.C. 2009) .............................. 8

*Bloomgarden v. U.S. Dep't of Justice*, 253 F. Supp. 3d 166 (D.D.C. 2017) ................................ 13

*Bolze v. Exec. Off. for U.S. Att'ys*, No. 17 Civ. 2858 (FYP), 2021 WL 5564633 (D.D.C. Nov. 29, 2021) ..................................................................................................................................... 11

*Brayton v. Office of U.S. Trade Representative*, 641 F.3d 521 (D.C. Cir. 2011) .......................... 7

*Bryant v. CIA*, 818 F. Supp. 2d 153 (D.D.C. 2011) .................................................................... 11

*Conservation Force v. Jewell*, 160 F. Supp. 3d 194 (D.D.C. 2016) ............................................ 13

*Cotton v. Heyman*, 63 F.3d 1115 (D.C. Cir. 1995) .................................................................... 11

*Ctr. for Popular Democracy v. Bd. of Governors of the Fed. Rsrv. Sys.*, 16 Civ. 5829 (NGG) (VMS), 2021 WL 4452202 (E.D.N.Y. Aug. 20, 2021) ................................................ 7, 8

*Datiz v. Int'l Recovery Assocs., Inc.*, No. 15 Civ. 3549, 2020 WL 3790348 (E.D.N.Y. July 7, 2020) ..................................................................................................................................... 15

*Davy v. CIA*, 550 F.3d 1155 (D.C. Cir. 2008) ...................................................................... 8, 12

*EFF v. Office of Dir. of Nat'l Intelligence*, No. C0705278, 2008 WL 2331959 (N.D. Cal. June 4, 2008) ..................................................................................................................................... 15

*Elec. Privacy Info. Ctr. v. FBI*, 80 F. Supp. 3d 149 (D.D.C. 2015) ............................................ 14

*Elec. Privacy Info. Ctr. v. United States Dep't of Homeland Sec.*, 218 F. Supp. 3d 27 (D.D.C. 2016) ....................................................................................................................................... 7

*Emamian v. Rockefeller Univ.*, No. 1:07 Civ. 3919 (PGG) (SDA), 2022 WL 2056275 (S.D.N.Y. Feb. 9, 2022) .......................................................................................................................... 15

*Farrar v. Hobby*, 506 U.S. 103 (1992) ...................................................................................... 12

*First Amendment Coalition v. U.S. Dep't of Justice*, 878 F.3d 1119 (9th Cir. 2017) .................... 7

*Greenburger v. Roundtree*, No. 17 Civ. 3295 (PGG) (SLC), 2020 WL 4746460 (S.D.N.Y. Aug. 16, 2020) .............................................................................................................................. 15

*Hall & Assocs. v. EPA*, No. 15 Civ. 286 (RBW), 2016 WL 10746643 (D.D.C. Mar. 7, 2016) ... 14

*Hardy v. Bureau of Alcohol, Tobacco, Firearms and Explosives*, 293 F. Supp. 3d 17 (D.D.C. 2017) .................................................................................................................... 14

*Herbalist & Alchemist, Inc. v. Alurent Prod., Inc.,* No. 16 Civ. 9204 (ER), 2018 WL 3329857 (S.D.N.Y. July 5, 2018) ................................................................................. 15

*Houston v. Cotter*, 234 F. Supp. 3d 392 (E.D.N.Y. 2017) ............................................ 16

*Kewei Chen v. Anzai Asian Inc.*, No. 18 Civ. 6659 (JMA) (ARL), 2020 WL 8620021 (E.D.N.Y. Nov. 30, 2020) ........................................................................................... 16

*Mobley v. Dep't of Homeland Sec.*, 908 F. Supp. 2d 42 (D.D.C. 2012)......................... 9

*Muffoletto v. Sessions*, 760 F. Supp. 268 (E.D.N.Y. 1991) ......................................... 11

*New York Times Co. v. Cent. Intel. Agency,* 251 F. Supp. 3d 710 (S.D.N.Y. 2017) ...... 7, 8, 11, 12

*PETA v. NIH*, 130 F. Supp. 3d 156 (D.D.C. 2015)...................................................... 12

*Pietrangelo v. U.S. Army*, 568 F.3d 341 (2d Cir. 2009) ............................................ 8, 10

*R.G. v. New York City Dep't of Educ.*, No. 18 Civ. 6851 (VEC), 2019 WL 4735050 (S.D.N.Y. Sept. 26, 2019) ......................................................................................... 15

*Sanson v. City of New York,* No. 119 Civ. 2569 (AT) (SDA), 2020 WL 9256549 (S.D.N.Y. May 19, 2020) ............................................................................................................... 15

*Schwartz v. U.S. Drug Enf't Admin.*, No. 13 Civ. 5004 (CBA) (ST), WL 1299192 (E.D.N.Y. Mar. 1, 2019)................................................................................................................. 8

*Shapiro v. United States Soc. Sec. Admin.*, No. 2:19 Civ. 238, 2022 WL 951371 (D. Vt. Mar. 30, 2022) ......................................................................................................... 13, 14

*Simmons v. N.Y.C. Transit Auth.*, 575 F.3d 170 (2d Cir. 2009)..................................... 8

*Texas State Tchrs. Ass'n. v. Garland Ind. Sch. Dist.*, 489 U.S. 782 (1989)................... 13

*Warren v. Colvin*, 744 F.3d 841 (2d Cir. 2014)......................................................... 6, 7

*Weisberg v. U.S. Dep't of Justice*, 745 F.2d 1476 (D.C. Cir. 1984)............................. 13

**Statutes**

5 U.S.C. § 552 ........................................................................................................ 1, 6, 7

5 U.S.C. § 552a ........................................................................................................... 3

Defendant the Federal Bureau of Investigation ("FBI"), respectfully submits this memorandum of law in opposition to Plaintiff John Wilson's motion for attorneys' fees and costs ("Pl. Mot." or "Plaintiff's Motion") in this action brought pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552(a)(4)(E).

## PRELIMINARY STATEMENT

Over the past eight years, Plaintiff has sought records about himself that he believes the FBI has relating to conversations he purportedly had with FBI agents and employees concerning the Freeport McMoran mine in Indonesia. In aid of his mission to obtain these documents, Plaintiff submitted three FOIA requests to the FBI and initiated this litigation on December 8, 2020. In response to Plaintiff's second FOIA request, the FBI conducted a search for responsive records and produced 10 pages of records to Plaintiff. After this litigation was commenced, the FBI produced an additional 5 pages to Plaintiff that are almost identical duplicates of documents produced in response to the Plaintiff's second FOIA request. As a result of this litigation, the FBI searched an additional records database, which returned no responsive records. Accordingly, this litigation has resulted in the production of no new documents to Plaintiff. Nevertheless, Plaintiff now seeks to have the FBI pay of $54,410.00 in attorneys' fees and $9,470.43 in costs.

As explained in further detail below, Plaintiff's motion for attorneys' fees and costs in this action should be denied. Plaintiff has failed to show that he is eligible for fee and cost shifting under FOIA because he did not "substantially prevail" in the litigation, a threshold requirement for a court to even consider entitlement to fees and costs. Further, Plaintiff has failed to show that he is entitled to attorneys' fees and costs as his FOIA request and ensuing litigation served only Plaintiff's private interest and resulted in no public benefit. And even if the Court were to award the Plaintiff attorneys' fees and costs under FOIA, Plaintiff has failed to demonstrate that his

requested fees and costs are reasonable in light of the results of this litigation.   Accordingly, Plaintiff's motion for attorneys' fees and costs should be denied.

## BACKGROUND

On June 14, 2013, Plaintiff submitted a FOIA request to the FBI seeking all records pertaining to himself ("First Request").   (ECF No. 37, Declaration of Michael G. Seidel ("Seidel Decl.") at ¶ 6, Ex. A).   The First Request did not provide the FBI with any context as to why or where the FBI may have records on Plaintiff.   (*See id*.).   The FBI searched its Central Records System ("CRS") but was unable to identify any main file records responsive to Plaintiff's request. (*Id*. at ¶ 7).   Accordingly, the FBI notified Plaintiff that it could not locate responsive records, but told Plaintiff that it could conduct an additional search if he provided information pertaining to the subject that he believed was of investigative interest to the FBI.   (*Id*. at ¶ 7, Ex. B).

By letter dated March 26, 2014, Plaintiff submitted a second request seeking FBI records "concerning, naming, or relating to" Plaintiff.   (ECF No. 1, Complaint ("Compl.") at ¶ 8 ("Second Request")); *see also* Seidel Decl. at ¶ 8, Ex. C.   The Second Request provided additional information including about Plaintiff's work history and specific details regarding the subject that he believed was of investigative interest to the FBI.   (*Id*.).   The Second Request stated that Plaintiff was a "mining company equity analyst on Wall Street from 1994 to 1998."   (*See* Second Request at 1).   "In 1996 . . . [Plaintiff's employer] published one of [his] reports containing information pertaining to an extended shutdown of the NYSE publicly traded U.S. mining company Freeport McMoran owned Grasberg mine in Indonesia."   (*Id*. at 1-2).   "According to press reports at the time and other sources, the company was under investigation . . . following eyewitness allegations it had been involved in the killing of indigenous protestors."   (*Id*. at 2).   Plaintiff claimed that "[f]or the many years following the 1996 publication of information regarding the Freeport McMoran

2

killings, [he] had contact with multiple individuals who indicated that they were associated with the FBI and some who made reference to the Freeport McMoran matter." (*Id*.). On this basis, Plaintiff stated that he believed "it is likely that the Bureau maintains information about [him] stemming from the 1996 report, related and potentially other matters." (*Id*.).

In response to the Second Request, the FBI conducted a CRS index search for potentially responsive records and, again, found no main files concerning Plaintiff, but it found one reference file. (Seidel Decl. ¶ 41). The reference file did not contain records regarding Plaintiff's contact with the FBI regarding the Freeport McMoran matter or any related investigation. (*See id*. at ¶ 45). Rather, it consisted of records related to a complaint that Plaintiff had submitted to the Department of Justice Office of Inspector General ("OIG") relating to misconduct by FBI employees. (*Id*.). The reference file contained OIG's forwarding of the complaint to the FBI's Inspection Division ("INSD"), which reviews and investigates allegations of criminal behavior and other types of misconduct of FBI employees. (*Id*.). Such reference file was opened after OIG forwarded Plaintiff's allegation to INSD for the purpose of storing any documentation of the INSD's review and investigation of Plaintiff's complaint. (*Id*.). Besides this reference file, the FBI was unable to locate any other responsive records. (*Id*.).

The FBI reviewed the 21 pages of records contained in the reference file and, on September 25, 2014, released 10 of those pages either in full or with redactions. (*Id*. at ¶ 10, Ex. E). The remaining 11 pages of records were withheld pursuant to the Privacy Act, 5 U.S.C. § 552a, Exemption (j)(2), FOIA Exemptions (b)(6) and (b)(7)(C), or because they were duplicates of pages that were produced. (*Id*. at ¶ 10). Plaintiff submitted an appeal to DOJ OIP challenging the adequacy of the FBI's search for responsive records and the OIP notified Plaintiff that the FBI properly conducted an adequate and reasonable search for responsive records. (*Id*. at ¶ 13).

3

On October 23, 2019, Plaintiff submitted a third FOIA request ("Third Request") to the FBI. (*See* Seidel Decl. at ¶ 14, Ex. I). Again, Plaintiff sought records concerning himself. (*See id*.). By letter dated October 29, 2019, the FBI responded by stating that records relating to Plaintiff had already been searched for and released in response to the Second Request, and that it conducted another search of CRS but was unable to identify any additional responsive records. (*Id*. at ¶ 15; Ex. J). Plaintiff submitted an appeal to OIP on February 17, 2020, again disputing the adequacy of the search. (*Id*. at ¶ 16, Ex. K). On March 20, 2020, OIP affirmed the actions taken by the FBI. (*Id*. at ¶ 18, Ex. M).

Plaintiff then filed this action on December 8, 2020. (*See* Compl.). Pursuant to FBI policy, the FBI again searched CRS—thus, the FBI conducted a fourth search of CRS. (Siedel Decl. ¶ 37). Unsurprisingly, the FBI located only the same reference file it had previously produced to Plaintiff. However, the FBI re-reviewed 22 pages of responsive records. (*See id*. at ¶¶ 20, 45). The additional page was an exact duplicate of a page elsewhere in the reference file, which had already been produced to Plaintiff in response to his Second Request. (*See id*. at ¶ 4 n.1). After its review, the FBI released 15 pages either in full or in part: 10 of those pages consisted of the exact same pages that the FBI had produced to Plaintiff on September 25, 2014, in response to his Second Request. The other 5 pages constituted documents that had previously been withheld as duplicates pages. (*Id*. at ¶ 20 n.8). However, upon re-reviewing those 5 pages, the FBI decided to produce them because they were not *exact* duplicates. (*See id*.; *see also* Declaration of Tara Schwartz Ex. A). The FBI withheld the remaining 7 pages of the reference file pursuant to Privacy Act Exemption (k)(2) and FOIA Exemptions (b)(6) and (b)(7)(C).

On April 26, 2021, the parties informed the Court that Plaintiff intended to challenge the adequacy of the FBI's search and proposed a summary judgment briefing schedule to the Court,

which the Court approved on April 27, 2021.  (*See* ECF No. 17).  The FBI filed its motion for summary judgment on September 13, 2021.  (*See* ECF Nos. 22-24).  Plaintiff then filed his opposition and cross-motion on November 15, 2021, which, in addition to challenging the adequacy of Defendant's search (which was all that was contemplated when the briefing schedule was submitted to the Court and, thus, the only issue defended in the FBI's opening motion), also challenged the FBI's withholdings.  (*See* ECF Nos. 27-30).  As stated in the report and recommendation ultimately issued by the Court in this case, "Plaintiff had led Defendant to believe that he was only challenging the adequacy of Defendant's search."  (*See* ECF No. 44 (the "R&R") at 11 n.10).  Accordingly, the parties agreed to withdraw their motions for summary judgment subject to reinstatement in order to provide Defendant with sufficient time to justify the challenge to its withholdings.  (*See* ECF No. 34).  Thereafter, on February 3, 2022, the parties filed all of their motion papers on the docket simultaneously.  (*See* ECF Nos. 35-44).

On February 16, 2022, Magistrate Judge Aaron issued a report and recommendation on the parties' summary judgment motions.  (*See generally*, R&R).  Judge Aaron's opinion recommended granting the FBI's motion and denying the Plaintiff's motion except on one narrow issue.  (*See id.*).  Specifically, the opinion stated that "the issues raised by Plaintiff regarding the adequacy of Defendant's search are easily disposed."  (*Id.* at 8).  Judge Aaron proceeded to explain how Plaintiff's numerous arguments regarding the adequacy of the FBI's search were of no moment, because the FBI, in response to Plaintiff's FOIA requests, had already searched the databases where Plaintiff argued relevant records might exist.  (*See id.* at 8-9).  The only remaining database that the FBI had not searched was Delta, the FBI's official electronic record-keeping system for Confidential Human Source ("CHS") management.  (*See id.* at 10-11; *see also* ECF No. 42, Second Declaration of Michael G. Seidel ("Second Seidel Decl.") ¶ 12).  The FBI explained that it did not

5

search Delta because the results of its CRS search were insufficient to lead the FBI to believe that records would exist in Delta. (*See* Second Seidel Decl. ¶ 17). However, the Court recommended ordering the FBI to search the Delta system. (R&R at 15).

With respect to Plaintiff's challenges to the FBI's withholdings, the Court ruled entirely in favor of the FBI. (*See id.* at 11-14). Specifically, Judge Aaron found that the FBI had properly withheld the five non-duplicate pages of records, which consisted of record check documents, containing the personal identifiable information of an FBI special agent, under Exemptions 6 and 7(C). (*Id.*). The Court declined the Plaintiff's request to conduct an *in camera* review of the documents on the ground that the Second Seidel Declaration "provide[d] reasonable specificity as to the nature of the documents at issue and the justification for nondisclosure." (*Id.* at 14-15).

In light of the R&R, the FBI conducted a search of the Delta database and found no responsive records. (*See* ECF No. 48). On March 31, 2022, the parties informed the Court that they would not file objections to the R&R, and on March 4, 2022, the Court adopted the R&R. (ECF No. 49). Then, on July 1, 2022, Plaintiff filed a motion seeking $54,410 in attorneys' fees and $9,470.43 in costs. (*See* ECF No. 55*; see also* ECF Nos. 59-62).

## ARGUMENT

### I.   Legal Standard for Award of Attorneys' Fees and Costs Under FOIA

FOIA permits, but does not require, a Court to award attorneys' fees and litigation costs to a plaintiff who has "substantially prevailed" in the litigation. 5 U.S.C. § 552(a)(4)(E)(i). The plaintiff bears the burden of showing that it substantially prevailed in the FOIA litigation. *See Warren v. Colvin*, 744 F.3d 841, 844 (2d Cir. 2014). FOIA "provides for attorneys' fees in order to encourage FOIA suits that benefit the public and to compensate a complainant for enduring an agency's resistance to complying with FOIA['s] [disclosure requirements]." *Elec. Privacy Info.*

*Ctr. v. United States Dep't of Homeland Sec.*, 218 F. Supp. 3d 27, 34 (D.D.C. 2016).  An award of fees and costs lies within the sound discretion of the court.  *See, e.g., Anderson v. HHS*, 80 F.3d 1500, 1504 (10th Cir. 1996) ("Assessment of attorney's fees in an FOIA case is discretionary with the district court."); *Bangor Hydro-Elec. Co. v. U.S. Dep't of Interior*, 903 F. Supp. 169, 170 (D. Me. 1995) ("Awards of litigation costs and attorney fees under FOIA are left to the sound discretion of the trial court.").

FOIA's attorney fees provision requires courts to engage in a three-step process.  *See New York Times Co. v. Cent. Intel. Agency,* 251 F. Supp. 3d 710, 713 (S.D.N.Y. 2017).  First, the court must determine if the plaintiff is *eligible* for an award of fees and/or costs by showing that it "substantially prevailed" in the litigation.  *See id.*; *see also Brayton v. Office of U.S. Trade Representative*, 641 F.3d 521, 524 (D.C. Cir. 2011).  The statute provides that "a complainant has substantially prevailed if the complainant has obtained relief through either—(I) a judicial order . . . or (II) a voluntary or unilateral change in position by the agency, if the complainant's claim is not insubstantial."  5 U.S.C. § 552(a)(4)(E)(ii).  A plaintiff can substantially prevail under prong (I) by obtaining a judicial order requiring the production of records sought.  *Am. Oversight v. U.S. Dep't of Justice*, 375 F. Supp. 50, 62 (D.D.C. 2019); *see Ctr. for Popular Democracy v. Bd. of Governors of the Fed. Rsrv. Sys.*, 16 Civ. 5829 (NGG) (VMS), 2021 WL 4452202, at *2-4 (E.D.N.Y. Aug. 20, 2021) (finding plaintiff had substantially prevailed where judicially-ordered searches produced 435 pages of additional records).  Prong (II) allows for fee and cost shifting where "an agency voluntarily complies with a request for records after a FOIA lawsuit has been filed," *Warren*, 744 F.3d at 844, and there is a "causal nexus between the litigation and the voluntary disclosure or change in position by the Government."  *First Amendment Coalition v. U.S. Dep't of Justice*, 878 F.3d 1119, 1128 (9th Cir. 2017).  Under this prong, the plaintiff must

7

show that his litigation *substantially caused* the production of records.  *Ctr. for Popular Democracy*, 2021 WL 4452202, at *4 (emphasis added) (citing *Schwartz v. U.S. Drug Enf't Admin.*, No. 13 Civ. 5004 (CBA) (ST), WL 1299192, at *3 (E.D.N.Y. Mar. 1, 2019)).

Second, the court must determine if the plaintiff is *entitled* to an award of fees and costs by weighing the following four factors: "(1) the public benefit derived from the case; (2) the commercial benefit to the plaintiff; (3) the nature of the plaintiff's interest in the records; and (4) whether the Government had a reasonable basis for withholding requested information."  *New York Times,* 251 F. Supp. 3d at 713 (quoting *Pietrangelo v. U.S. Army*, 568 F.3d 341, 343 (2d Cir. 2009)).  Although "no one factor is dispositive," the district court "will not assess fees when the agency has demonstrated that it had a lawful right to withhold disclosure."  *Davy v. CIA*, 550 F.3d 1155, 1159 (D.C. Cir. 2008) (citing cases).  The last factor "considers whether the agency's opposition to disclosure 'had a reasonable basis in law,' and whether the agency 'had not been recalcitrant in its opposition to a valid claim or otherwise engaged in obdurate behavior.'"  *Id*. at 1162 (citing cases).  Here, the burden is on the agency to show it "had any colorable or reasonable basis for not disclosing the material until after [plaintiff] filed suit."  *Id*.

Finally, if and only if the plaintiff demonstrates eligibility for and entitlement to an award of attorneys' fees, the court must determine whether the fees requested by an eligible and entitled applicant are "presumptively reasonable" under the lodestar approach.  *New York Times,* 251 F. Supp. 3d at 713 (citing *Simmons v. N.Y.C. Transit Auth.*, 575 F.3d 170, 174 (2d Cir. 2009)).  The degree of a plaintiff's success is crucial in calculating a reasonable attorneys' fee.  *See Barnard v. U.S. Dep't of Homeland Sec.*, 656 F. Supp. 2d 91, 98 (D.D.C. 2009).

## II.    Plaintiff Has Not Demonstrated Eligibility for An Award of Attorneys' Fees and Costs

Plaintiff has not and cannot demonstrate that he is eligible for an award of attorneys' fees and costs in this action because he did not "substantially prevail" in the litigation by obtaining the essential elements of relief that he sought in his complaint.  His first argument as to why he "substantially prevailed" is that the litigation resulted in a judicial order requiring the FBI to search the Delta database.  Plaintiff is correct that the R&R found that the FBI had failed to meet its burden to justify why it had not conducted a search of its Delta database and ordered the FBI to conduct such a search.  But the FBI had not searched the Delta database because, based on the records contained in the CRS, it found no reason to believe it might find responsive records in Delta.  (*See* Second Seidel Decl. ¶¶ 7, 12, 17, 23).  The FBI's belief turned out to be true: the FBI conducted a search of Delta and found no responsive records.  And of course, Plaintiff fails to mention that he also moved the Court to find the FBI's search inadequate on the grounds that: (i) it should have produced the reference file in response to Plaintiff's First Request; (ii) the FBI failed to search the Sentinel database; (iii) the FBI failed to search electronic surveillance ("ESLUR") indices; and (iv) the FBI failed to search its so-called 137 and 210 files.  (*See* ECF No. 39 at 7-9). But the Court "easily disposed" of these arguments, which it found to be either factually incorrect and contradicted by the Seidel Declaration or of no legal significance.  (*See* R&R at 8-10).  Since Plaintiff won on only a very limited issue in the context of his FOIA case, seeking FBI records relating to Plaintiff's communications with FBI personnel on the Freeport McMoran matter, he did not "substantially prevail" in the litigation.  *See Mobley v. Dep't of Homeland Sec.*, 908 F. Supp. 2d 42, 48 (D.D.C. 2012) ("The word 'substantially' means '[i]n a sound or solid manner' or '[i]n all essential characters or features' *see* 17 OXFORD ENGLISH DICTIONARY 68 (2d ed.

1989), and thus, if a plaintiff obtains only one small piece of the relief it seeks in its complaint, as the plaintiffs did here, calling such prevalence 'substantial' is clearly incorrect.").

Second, Plaintiff argues that the FBI voluntarily changed its position in response to the litigation. Specifically, Plaintiff argues that his lawsuit was the catalyst for the FBI conducting another search of CRS, and releasing five pages of previously withheld records. But that the FBI conducted *another* search of CRS (which had already been performed three times prior to the filing of the instant action) and located no additional records does not show that the FBI "change[d] in position." Further, Plaintiff's claim that the litigation resulted in the production of an additional five pages of records is misleading. The five pages of documents that the FBI produced after the litigation was commenced had originally been withheld only because they were duplicates of other documents it produced. (*See* Seidel Decl. ¶ 20 n. 8). As reflected in Exhibit A to the Declaration of Tara Schwartz, the only way these documents differ from the documents provided to Plaintiff prior to the litigation was that they do not contain unintelligible handwritten scribbles in the margins.[1]

In sum, this lawsuit has resulted in no additional documents being produced to Plaintiff beyond what had been produced to him in response to the Second Request on September 25, 2014.

## III.  Plaintiff Has Not Demonstrated Entitlement to An Award of Attorneys' Fees and Costs

Plaintiff cannot show that any of the four *Pietrangelo* factors weigh in favor of granting him attorneys' fees and costs. First, Plaintiff cannot show any public benefit as a result of his lawsuit. He argues that the records he requested benefit the publics' ability to learn what records the U.S. Government keeps on a U.S. citizen who experienced a campaign of interference and

---

[1]     The documents produced at the administrative stage contain more information than those produced during the litigation because the ones produced during the litigation are clean copies that do not include the handwritten notes.

10

harassment of individuals who Plaintiff believed to be working for the FBI.  (*See* Pl. Mot. 11).  But even if that could be considered a public benefit, that is not what happened here.  Plaintiff's action resulted only in the FBI reproducing documents it previously produced to him regarding a complaint that he submitted to the FBI.   At best, Plaintiff's numerous FOIA requests and lawsuit satisfied his own personal curiosity as to what, if any, records the FBI maintained on him.  But "'[w]hen a litigant seeks disclosure for . . .  personal reasons, an award of fees is usually inappropriate.'"  *Bolze v. Exec. Off. for U.S. Att'ys*, No. 17 Civ. 2858 (FYP), 2021 WL 5564633, at *9 (D.D.C. Nov. 29, 2021) (quoting *Cotton v. Heyman*, 63 F.3d 1115, 1120 (D.C. Cir. 1995)); *Muffoletto v. Sessions*, 760 F. Supp. 268, 275 (E.D.N.Y. 1991) ("The public benefit factor does not particularly favor attorneys' fees where the award would merely subsidize a matter of private concern; this factor rather speaks for an award where the complainant's victory is likely to add to the fund of information that citizens may use in making vital political choices" (internal quotation marks omitted)); *see also Bryant v. CIA*, 818 F. Supp. 2d 153, 157-58 (D.D.C. 2011) ("Plaintiff, other than making generic assertions that a public benefit was derived from this case because the CIA turned over additional documents, does not articulate any reason the public derives any benefit from the particular information he obtained.") (internal quotations and citations omitted).  Accordingly, the first factor weighs against granting Plaintiff attorneys' fees and costs.

The second and third factors: the commercial benefit to the plaintiff and the nature of the plaintiff's interest in the records, are often considered together.  *New York Times*, 251 F. Supp. 3d at 713.  Although it does not appear that Plaintiff has derived any commercial benefit from the records produced, the nature of Plaintiff's interest in the records is fundamentally private, counseling against his entitlement to attorneys' fees.  Plaintiff sought these records for personal benefit related to his mistaken belief that FBI would have documents showing that it has been

spying on him for years.  The D.C. Circuit has held that litigators like Plaintiff, who "seek documents for private advantage . . . cannot deserve a [public] subsidy as they benefit only themselves and typically need no incentive to litigate." *Davy*, 550 F.3d at 1160.  Accordingly, the second and third factors also weigh against awarding Plaintiff attorneys' fees and costs.

The last factor concerns the reasonableness of the agency's withholding of the requested documents.  Specifically, this factor "considers whether the agency's opposition to disclosure 'had a reasonable basis in law,' and whether the agency 'had not been recalcitrant in its opposition to a valid claim or otherwise engaged in obdurate behavior.'"  *Id*. at 1162 (citing cases).  The procedural history of this case evidences that the FBI has acted reasonably, at all times, with respect to responding to Plaintiff's FOIA requests.  The FBI expeditiously processed all three of Plaintiff's FOIA requests and conducted an additional search in response to this litigation.  Despite Plaintiff's widespread challenges to the FBI's search and withholdings, the Court upheld all of the FBI's withholdings and to a large extent, found its search adequate.  When the FBI received the R&R ordering it to search the Delta database, it promptly did so and then notified Plaintiff that the search resulted in no responsive records.

In sum, this litigation, which served no public benefit and was brought only to satisfy Plaintiff's own personal curiosity, resulted in the production of a mere five duplicate pages of records.  Accordingly, Plaintiff has not established his entitlement to attorneys' fees.

## IV.   Plaintiff's Requested Attorneys' Fees and Costs are Unreasonable

If the Court nonetheless finds that Plaintiff is both eligible for and entitled to attorneys' fees, then it must determine whether the fees sought by Plaintiff are reasonable.  *New York Times Co.*, 251 F. Supp. 3d at 713.  The "degree of plaintiff's success in the litigation is the 'most critical factor' in determining the reasonableness of a fee award." *PETA v. NIH*, 130 F. Supp. 3d 156, 166 (D.D.C. 2015) (quoting *Farrar v. Hobby*, 506 U.S. 103, 114 (1992)).  If a plaintiff has only

partially succeeded, "the court may 'exercise [its] equitable discretion . . . to arrive at a reasonable fee award, either by attempting to identify specific hours that should be eliminated or by simply reducing the award to account for the limited success of the plaintiff.'" *Shapiro v. United States Soc. Sec. Admin.*, No. 2:19 Civ. 238, 2022 WL 951371, at *4 (D. Vt. Mar. 30, 2022) (quoting *Texas State Tchrs. Ass'n. v. Garland Ind. Sch. Dist.*, 489 U.S. 782, 789-90 (1989)) (further citation omitted); *see also Bloomgarden v. U.S. Dep't of Justice*, 253 F. Supp. 3d 166, 175 (D.D.C. 2017) (Court "has discretion to adjust [the proper lodestar] amount for 'nonproductive time or for time expended on issues on which plaintiff ultimately did not prevail.'" (quoting *Weisberg v. U.S. Dep't of Justice*, 745 F.2d 1476, 1499 (D.C. Cir. 1984))); *see Conservation Force v. Jewell*, 160 F. Supp. 3d 194, 203 (D.D.C. 2016) ("[E]ven after finding eligibility and entitlement, district courts retain the discretion to modify a fee award based on the reasonableness of the request and the particular facts of the case.").

Plaintiff's demand of $54,410.00 in fees and $9,470.43 in costs[2] is unreasonable given Plaintiff's extremely limited success in this litigation, the disparity between the hours billed and Plaintiff's short, straightforward complaint, and the unreasonable billing rates of Plaintiff's counsel.

If the Court decides to award attorneys' fees, it should reduce the award by a significant percentage because Plaintiff lost the vast majority of his arguments on summary judgment. Notably, Plaintiff lost almost the entirety of his challenge to the adequacy of the FBI's search and lost the entirety of his challenges to the FBI's withholdings, which itself was a belatedly raised

---

[2]     Plaintiff's request for $9,470.43 in costs comprises $3,838.75 in "professional services", $4,200.00 in expert witness fees, and other miscellaneous expenses.  Plaintiff's motion and supporting documents fail to explain what the "professional services" are that justify $3,838.75 in costs.

argument.  In other cases, where the plaintiff achieved only limited success in litigating summary judgment, courts have been inclined to reduce a fee award by a percentage that correlates to their success in the litigation.  *See, e.g., Shapiro*, 2022 WL 951371, at *4 ("[A] reduction of fifty percent is required based upon Plaintiff's limited success and failure to achieve his ultimate objective in this suit—production of the responsive withheld records."); *see also Hardy v. Bureau of Alcohol, Tobacco, Firearms and Explosives*, 293 F. Supp. 3d 17, 31 (D.D.C. 2017) ("[T]o accomplish 'rough justice' in the award of fees, the plaintiff's award will be reduced by fifty percent" because the plaintiff had only succeeded as to three out of sixty documents sought.).

Further, if the Court is inclined to award the Plaintiff fees and costs, the Court should further reduce any award by an additional percentage because Plaintiff has billed an unreasonably excessive number of hours and at rates that are higher than is justifiable.  To be precise, Plaintiff billed $21,208.75 (based upon 61.45 hours worked) up to December 8, 2020, the date he filed the straightforward five-page complaint, and billed $23,921.25 (based upon 68.75 hours worked) up to April 2, 2021, the date that the five duplicate pages were released.  (*See* ECF No. 58, Declaration of Katherine "Q" Adams ("Adams Decl."), Ex. 1).  Expending more than 60 hours to prepare to file a five-page complaint is unreasonable, and Plaintiff's award should be reduced accordingly. *See Hall & Assocs. v. EPA*, No. 15 Civ. 286 (RBW), 2016 WL 10746643, at *6 (D.D.C. Mar. 7, 2016) (reducing the award of attorneys' fees based on the preparation of a straightforward, eight-page FOIA complaint by approximately half); *Elec. Privacy Info. Ctr. v. FBI*, 80 F. Supp. 3d 149, 158 (D.D.C. 2015) ("the Court . . . finds it unreasonable for EPIC to bill 18.4 hours . . . over three different attorneys for the preparation and filing of this [straightforward, nine-page FOIA] Complaint," and instead awarding 9.5 hours); *Audubon Soc'y of Portland v. U.S. Nat. Res. Conservation Serv.*, No. 10 Civ. 1205, 2012 WL 4829189, at *5 (D. Or. Oct. 8, 2012) (13 hours to

14

draft 11-page complaint deemed unreasonable, awarding 8 hours instead), *aff'd*, 573 F. App'x 640 (9th Cir. 2014); *EFF v. Office of Dir. of Nat'l Intelligence*, No. C0705278, 2008 WL 2331959, at *5 (N.D. Cal. June 4, 2008) (12 hours for drafting and reviewing complaint unreasonable, reducing to 9.5 hours).  Furthermore, all of the time Plaintiff's attorneys billed after April 2, 2021, accomplished practically nothing given that no further records were released.

Additionally, the rates at which the Plaintiffs' attorneys billed are excessive.  Attorney David Rankin billed at a rate of $575, which courts have very recently found to be excessive and reduced to $500.  *See, e.g., Emamian v. Rockefeller Univ.*, No. 1:07 Civ. 3919 (PGG) (SDA), 2022 WL 2056275, at *19 (S.D.N.Y. Feb. 9, 2022) (reducing Rankin's rate from $575 to $500); *Greenburger v. Roundtree*, No. 17 Civ. 3295 (PGG) (SLC), 2020 WL 4746460, at *6 (S.D.N.Y. Aug. 16, 2020) (finding $500 hourly rate for Rankin to be reasonable).  Attorney Katherine "Q" Adams graduated law school in 2019 and was admitted to the New York bar in October 2020, only two months before the filing of the complaint in this action.  (*See* Adams Decl. ¶¶ 8, 11).  Her billing rate of $375 is also clearly excessive.  Federal courts in New York have found billing rates of $100 to $200 to be reasonable for junior associates.  *See e.g., Sanson v. City of New York,* No. 119 Civ. 2569 (AT) (SDA), 2020 WL 9256549, at *3 (S.D.N.Y. May 19, 2020) (finding $150 to be reasonable rate for law clerk and $200 to be reasonable rate for junior associate); *R.G. v. New York City Dep't of Educ.*, No. 18 Civ. 6851 (VEC), 2019 WL 4735050, at *3 (S.D.N.Y. Sept. 26, 2019) (finding $150 to be reasonable hourly rate for attorney with one year of experience); *Herbalist & Alchemist, Inc. v. Alurent Prod., Inc.,* No. 16 Civ. 9204 (ER), 2018 WL 3329857, at *3 (S.D.N.Y. July 5, 2018) (finding $182 to be reasonable hourly rate for junior associate); *Datiz v. Int'l Recovery Assocs., Inc.*, No. 15 Civ. 3549, 2020 WL 3790348, at *4 (E.D.N.Y. July 7, 2020) (awarding $150 per hour for a junior associate); *Houston v. Cotter*, 234 F. Supp. 3d 392, 402

(E.D.N.Y. 2017) (finding $175 to be a reasonable rate for junior associates at Cleary Gottlieb); *see also Kewei Chen v. Anzai Asian Inc.*, No. 18 Civ. 6659 (JMA) (ARL), 2020 WL 8620021, at *2 (E.D.N.Y. Nov. 30, 2020) ("In recent years, courts have approved the following hourly rates for attorneys practicing in the Eastern District of New York: . . . $100 to $200 for junior associate"). Thus, any fee award must also account for Plaintiff's counsels' excessive billing rates.

Accordingly, should the Court grant Plaintiff's request for attorneys' fees and costs, it should reduce such award by at least 90% to account for Plaintiff's very limited success in this action, Plaintiff's counsels extreme billing for straightforward tasks, and Plaintiff's counsels excessive billing rates.

## CONCLUSION

The FBI respectfully requests that the Court deny Plaintiff's motion for attorneys' fees and costs.

Dated: August 25, 2022
       New York, New York

                               Respectfully submitted,

                               DAMIAN WILLIAMS
                               United States Attorney
                               Southern District of New York

                    By:    */s/ Tara Schwartz*_____
                           TARA SCHWARTZ
                           Assistant United States Attorney
                           86 Chambers Street, Third Floor
                           New York, New York 10007
                           Telephone: (212) 637-2633
                           Facsimile: (212) 637-2686
                           E-mail: tara.schwartz@usdoj.gov