USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:___10/14/2022___

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| |
|---|
| **John Wilson,** |
| **Plaintiff,** |
| **-against-** |
| **Federal Bureau of Investigation,** |
| **Defendant.** |

**1:20-cv-10324 (LAK) (SDA)**

**REPORT AND RECOMMENDATION**

**STEWART D. AARON, UNITED STATES MAGISTRATE JUDGE.**

**TO THE HONORABLE LEWIS A. KAPLAN, UNITED STATES DISTRICT JUDGE:**

On April 4, 2022, the Court adopted the undersigned's Report and Recommendation at ECF No. 44 granting in part and denying in part Defendant's motion for summary judgment and granting in part and denying in part Plaintiff's cross-motion for summary judgment. (4/4/22 Mem. End., ECF No. 49.) Presently before the Court is Plaintiff's motion for attorneys' fees pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552. (Pl.'s Mot. for Atty.'s Fees, ECF No. 59). For the reasons set forth below, I respectfully recommend that Plaintiff's motion be DENIED.

<u>**BACKGROUND**</u>

Plaintiff, John Wilson ("Plaintiff" or "Wilson"), a former Wall Street mining analyst, is a dual citizen of the United States and Australia, who currently resides in Sydney, Australia. (*See* Wilson Decl., ECF No. 40-1, ¶¶ 3-4.) According to Wilson, in March 1996, he had authored a report that flagged concerns about the U.S.-based mining company Freeport McMoran, including that the company was under investigation by the U.S. Department of State following the abuse of

indigenous protestors at its Grasberg Mine in West Papua, Indonesia, among other human rights concerns. (*See id*. ¶¶ 9-10.)

From June 2013 to October 2019, Wilson submitted three FOIA requests to Defendant, the Federal Bureau of Investigation ("Defendant" or "FBI") seeking the disclosure of the FBI's records pertaining to him. (*See* Compl., ECF No. 1, ¶¶ 8, 16; Pl's 7/13/22 Mem., ECF No. 60, at 2-4.) Wilson contends that he submitted his FOIA requests following more than a decade of harassment and interference by persons holding themselves out to be acting on behalf of the FBI, which occurred after publication of his report, in an effort to understand the scope and nature of the FBI's investigation into him. (*See* Pl.'s 7/13/22 Mem. at 2.) Certain documents were produced to Wilson by the FBI based upon his FOIA requests. (*See* Compl. ¶¶ 9-10.) However, he believed that the FBI conducted insufficient searches in response to his requests. (*See* Pl.'s 7/13/22 Mem. at 4.)

After exhausting his agency appeals, Wilson commenced this action on December 8, 2020. (*See* Compl.) Thereafter, the FBI re-reviewed 22 pages of responsive records and, on April 2, 2021, produced five additional pages of documents which the FBI initially deemed duplicates but, upon further examination, determined were not exact duplicates. (*See* Def.'s 8/25/22 Mem., ECF No. 67, at 4; Schwartz 8/25/22 Decl., ECF No. 68, ¶ 2; *see also* Schwartz 8/25/22 Decl. Ex. A, ECF No. 68-1.)

On February 3, 2022, the FBI moved for summary judgment and Wilson cross-moved for summary judgment. (*See* Def.'s Mot., ECF No. 35; Pl.'s Cross-Mot., ECF No. 38.) On February 16, 2022, I issued a Report and Recommendation recommending that the FBI's motion be granted in part and denied in part and that Wilson's cross-motion be granted in part and denied in part. (*See*

2

2/16/22 Report and Recommendation, ECF No. 44.) Specifically, I found that all of the FBI's withholdings were appropriate and all of the FBI's searches were adequate, except in one respect – that is, I found that the FBI's reasoning for failing to search its Delta system was unsatisfactory. (*See id.* at 8-11.) Accordingly, I recommended that the FBI be ordered to search the Delta system for responsive information. (*See id.* at 11.)

On March 31, 2022, the parties filed a letter advising Judge Kaplan that neither party intended to file objections to my Report and Recommendation and that the FBI conducted the search of the Delta system, as I recommended, and found no responsive records. (*See* Def.'s 3/31/22 Ltr., ECF No. 48.) On April 4, 2022, Judge Kaplan adopted my Report and Recommendation. (*See* 4/4/22 Order, ECF No. 49.)

On July 1, 2022, Wilson filed the instant motion seeking $54,410.00 in attorneys' fees and $9,470.43 in costs pursuant to the fee-shifting provision of FOIA, 5 U.S.C. § 552(a)(4)(E)(i). (*See* Pl.'s Mot. for Attys.' Fees; Pl's 7/13/22 Mem. at 16.) On August 25, 2022, the FBI filed its opposition memorandum. (*See* Def.'s 8/25/22 Opp. Mem.) On September 9, 2022, Wilson filed his reply. (*See* Pl.'s 9/9/22 Reply, ECF No. 69.)

On October 6, 2022, pursuant to an Order previously entered by the Court (*see* 9/26/22 Order, ECF No. 70), Wilson filed a letter stating that the FBI produced additional records after Wilson initiated this action, including an alternate version of previously produced records that included a newly unredacted handwritten notation, "PD Division since 1990" next to the name of one of the investigation subjects. (*See* Pl.'s 10/6/22 Ltr., ECF No. 72.) In addition, pursuant to the Court's October 6, 2022 Order, the FBI filed a letter asserting that the foregoing unredacted notation previously was withheld pursuant to FOIA Exemptions 6 and 7(C) because the FBI initially

believed that the notation contained personnel information, the disclosure of which would have invaded a personal privacy interest of the individual about whom the notation applied. (*See* Def.'s 10/6/22 Ltr., ECF No. 71.)

On October 14, 2022, the Court held oral argument by telephone to address Plaintiff's motion.

<u>**LEGAL STANDARDS**</u>

FOIA provides that a court "may assess against the United States reasonable attorney fees and other litigation costs reasonably incurred in any case under this section in which the complainant has substantially prevailed." 5 U.S.C. § 552(a)(4)(E)(i). The award of attorneys' fees and costs under FOIA is within the Court's discretion. *See Elec. Priv. Info. Ctr. v. United States Dep't of Homeland Sec.*, 218 F. Supp. 3d 27, 38 (D.D.C. 2016). Evaluating FOIA fee applications is a three-step process. *See New York Times Co. v. Cent. Intel. Agency*, 251 F. Supp. 3d 710, 713 (S.D.N.Y. 2017).

First, a plaintiff must show that (s)he substantially prevailed in the FOIA litigation. *See Warren v. Colvin*, 744 F.3d 841, 844 (2d Cir. 2014). The statute provides that "a complainant has substantially prevailed if the complainant has obtained relief through either—(I) a judicial order . . . or (II) a voluntary or unilateral change in position by the agency, if the complainant's claim is not insubstantial." 5 U.S.C. § 552(a)(4)(E)(ii). Under prong (I), "plaintiffs may be considered prevailing parties for attorney's fees purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing the suit." *Edmonds v. F.B.I.*, 417 F.3d 1319, 1326 (D.C. Cir. 2005) (quoting *Farrar v. Hobby*, 506 U.S. 103, 109 (1992)). Under prong (II), referred to as the "catalyst theory" of fee eligibility, a plaintiff must "show[ ] that the lawsuit

4

was reasonably necessary and the litigation substantially caused the requested records to be released." *See Schwartz v. U.S. Drug Enf't Admin.*, No. 13-CV-05004 (CBA) (ST), 2019 WL 1299192, at *3 (E.D.N.Y. Mar. 1, 2019), *report and recommendation adopted*, 2019 WL 1299660 (Mar. 21, 2019).

"Second, if a [plaintiff] is eligible for fees, the court next determines whether the [plaintiff] is 'entitled' to fees by weighing the following four factors: '(1) the public benefit derived from the case; (2) the commercial benefit to the plaintiff; (3) the nature of the plaintiff's interest in the records; and (4) whether the Government had a reasonable basis for withholding requested information.'" *New York Times Co.*, 251 F. Supp. 3d at 713 (quoting *Pietrangelo v. U.S. Army*, 568 F.3d 341, 343 (2d Cir. 2009)). Under the first factor, public benefit, the agency records at issue must be "likely to add to the fund of information that citizens use in making vital political choices." *Ctr. for Popular Democracy v. Bd. of Governors of Fed. Rsrv. Sys.*, No. 16-CV-05829 (NGG) (VMS), 2021 WL 4452202, at *6 (E.D.N.Y. Sept. 29, 2021) (citing *Elec. Privacy Info. Ctr.*, 218 F. Supp. 3d at 44). The second and third factors, the commercial benefit to the plaintiff and the nature of plaintiff's interest, often are considered together. *See New York Times*, 251 F. Supp. 3d at 713. The fourth factor, the agency's reasonable basis for withholding requested information, "considers whether the agency's opposition to disclosure had a reasonable basis in law, and whether the agency had not been recalcitrant in its opposition to a valid claim or otherwise engaged in obdurate behavior." *Davy v. Cent. Intel. Agency*, 550 F.3d 1155, 1162 (D.C. Cir. 2008) (internal quotations & citations omitted).

Third, if the plaintiff is both "eligible" and "entitled" to attorneys' fees, a court then determines whether the fees requested by the plaintiff are "presumptively reasonable" under

the lodestar approach generally applied to fee applications in the Second Circuit. *See New York Times*, 251 F. Supp. 3d at 713.

**DISCUSSION**

I.      **Eligibility for Attorneys' Fees And Costs**

Plaintiff contends that he is eligible for attorneys' fees and costs under FOIA because he obtained relief through a judicial order, *i.e.*, the April 4, 2022 Order adopting my Report and Recommendation, and because of the voluntary change in position by Defendant after this action was filed. (*See* Pl.'s 7/13/22 Mem. at 8-10.) The Court first considers Plaintiff's eligibility based upon the judicial order in this action, and then considers Plaintiff's eligibility based upon Defendant's change in position.

A.      **Eligibility Based Upon Judicial Order**

The Court finds that Plaintiff is "eligible" for attorneys' fees by reason of the judicial order entered by Judge Kaplan adopting my report and recommendation because "[P]laintiff obtained some judicial relief on the merits that resulted in a 'change in the legal relationship' between the parties." *See People for the Ethical Treatment of Animals v. Nat'l Inst. of Health*, 130 F. Supp. 3d 156, 162, 163 (D.D.C. 2015) (hereinafter "*PETA*") (finding that D.C. Circuit's order remanding in favor of plaintiff and directing defendant to conduct limited search changed legal relationship between plaintiff and defendant, and therefore plaintiff was eligible for attorneys' fees).[1]

---

[1] In arguing that Plaintiff is not eligible for fees, Defendant cites to *Mobley v. Dep't of Homeland Sec.*, 908 F. Supp. 2d 42, 48 (D.D.C. 2012), for the proposition that, since "Plaintiff won on only a very limited issue in the context of his FOIA case," this does not amount to Plaintiff "substantially prevail[ing]" in the litigation. (*See* Def.'s Mem. at 9-10.) The court's Opinion in *PETA* acknowledged the earlier Opinion in *Mobley*, but nevertheless found that, even if a plaintiff's victory is small, that plaintiff can be eligible for fees under FOIA. *See PETA*, 130 F. Supp. 3d at 162-63. The Court finds the analysis in *PETA* to be sound.

Although the additional search that Defendant conducted of the Delta system pursuant to the Court's Order did not result in any additional records being produced (*see* Def.'s 3/31/22 Ltr.), the Court's Order changed the legal relationship between Plaintiff and Defendant, albeit in a limited aspect, by requiring Defendant to conduct a search of the Delta system.

**B.    Eligibility Based Upon Change In Position**

Although the Court finds that Plaintiff is "eligible" for attorneys' fees based upon a judicial order, the Court considers, in the alternative, whether Plaintiff is "eligible" for attorneys' fees based upon the catalyst theory, *i.e.*, due to Defendant's voluntary change in position after this action was filed. Defendant voluntarily produced five additional pages of documents after this action was filed. Those pages, for the most part, were clean versions of prior pages that had been produced. The pages produced after this action was filed do not contain certain handwritten notes that the pages previously produced had contained. (*See* Schwartz 8/25/22 Decl. Ex. A (side-by-side comparison of five pages produced prior to action being filed and five pages voluntarily produced after).) In other words—with the exception of a handwritten note regarding the FBI's Portland division, discussed below—as Defendant argues, "[t]he documents produced at the administrative stage contain[ed] more information than those produced during the litigation because the ones produced during the litigation are clean copies that do not include the handwritten notes."[2] (Def.'s 8/25/22 Mem. at 10 n.1.)

There is one handwritten note that was redacted in the pre-lawsuit production to Plaintiff that later was unredacted in the post-lawsuit production. As Plaintiff points out (Pl.'s 9/9/22

_____

[2] In his reply, Plaintiff refers to handwritten notes on certain documents produced by the FBI, which handwritten notes state "that no records exist for the first and third subjects of a complaint (indicated by the known FBI abbreviation 'NR')," and that "the second subject is noted to be 'only one w/ record.'" (*See*

Reply at 5; Pl.'s 10/6/22 Ltr. at 2), as part of its post-lawsuit production, Defendant produced a page containing a previously redacted handwritten note that stating, "PD Division since 1990."[3] (Adams Decl., Ex. J, ECF No. 40-10, at PDF p. 11.) According to Plaintiff, this note "provides important information that subject #2 may have been known to the FBI's Portland division since 1990." (*See* Pl.'s 9/9/22 Reply at 5.)

The Court finds that this "lawsuit was reasonably necessary and [that] the litigation substantially caused the [handwritten note] to be released." *See Schwartz*, 2019 WL 1299192, at *3. This causation requirement is met since the handwritten note previously had not been produced and only was produced after this lawsuit was filed.

\*                              \*                              \*

---

Pl.'s 9/9/22 Reply at 4-5 (citing Schwartz 8/25/22 Decl. Ex. A, at PDF p. 2 (document on left side)); see also Pl.'s 10/6/22 Ltr. at 2.) However, Plaintiff ignores the fact that these handwritten notes had been produced by Defendant to Plaintiff in September 2014, years before this action was commenced. (*See* Schwartz 8/25/22 Decl. ¶ 2; Schwartz 8/25/22 Decl. Ex. A, at PDF p. 2 (document on left side).)

Plaintiff also asserts in his October 6, 2022 letter that different sizes of redaction bars were used in the documents produced before and after this action was commenced. (*See* Pl.'s 10/6/22 Ltr. at 2.) During oral argument, Plaintiff's counsel explained Plaintiff's theory that the different-sized redaction bars were indicative of the length of the names redacted. The Court finds that Plaintiff's assertion is speculative and does not reflect any new information that Plaintiff received after the filing of this action.

Finally, Plaintiff asserts that there was certain information relating to the identities of FBI agents that was contained in Defendant's post-lawsuit production that was not previously provided to Plaintiff. (*See* Pl.'s 9/9/22 Reply at 5; Pl.'s 10/6/22 Ltr. at 2.) Specifically, Plaintiff notes that, prior to the lawsuit being commenced, the names of three FBI agents, *i.e.*, Steven Garber, Livingston Sutro and Susan Holmes, had been redacted from the version of a February 10, 2006 letter that was produced to Plaintiff. (*See* Schwartz 8/25/22 Decl. Ex. A, at PDF p. 1.) In the post-lawsuit production, those names were not redacted from that letter. (*See id*.) However, the letter in question was sent to Plaintiff himself back in 2006, and, in the relevant portion, merely recites Plaintiff's own allegations that he had been contacted by these agents. (*See id*.) Thus, as a result of Defendant's post-lawsuit production, Plaintiff received no information about the identities of FBI agents that he did not previously have.

[3] Defendant has confirmed that this handwritten note had not been produced prior to this lawsuit. (Def.'s 10/6/22 Ltr. at 1.)

Accordingly, the Court finds that Plaintiff substantially prevailed both by way of Judge Kaplan's April 4, 2022 Order and by having Defendant voluntarily produce a handwritten note, thus making Plaintiff "eligible" for attorneys' fees and costs. *See Jud. Watch, Inc. v. F.B.I.*, 522 F.3d 364, 370 (D.C. Cir. 2008) (orders to produce records, "even when voluntarily agreed to by the government, are sufficient to make plaintiffs eligible for attorneys' fees under FOIA"). The fact that the information obtained by Plaintiff after filing his lawsuit was *de minimis* is of no moment.[4] *See Maydak v. D.O.J.*, 579 F. Supp. 2d 105, 108 (D.D.C. 2008) (finding Plaintiff eligible for attorney's fees and costs under FOIA where agency compelled to release "*de minimis* volume of records"); *see also PETA*, 130 F. Supp. 3d at 163.

## II.    Entitlement to Attorneys' Fees And Costs

The Court next considers whether Plaintiff is "entitled" to attorneys' fees and costs by weighing the four *Pietrangelo* factors. *See Pietrangelo*, 568 F.3d at 343. For the reasons stated below, after consideration of the four *Pietrangelo* factors, the Court finds that Plaintiff is not "entitled" to attorneys' fees and costs under FOIA.

### A.    First Factor: Public Benefit

With respect to the first *Pietrangelo* factor, "[p]robably the most important consideration in determining entitlement to fees in a FOIA case is the benefit to the public which is to be derived from the release of the information sought." *Loglia v. I.R.S.*, No. 96-CV-02654 (LAK) (RLE), 1997 WL 214869, at *4 (S.D.N.Y. Apr. 25, 1997) (quoting *Miller v. United States Dep't of State*, 779 F.2d 1378, 1389 (8th Cir. 1985)). The public benefit factor "requires consideration of both the effect

---

[4] "[T]he degree of plaintiff's success is relevant to the size of reasonable fees, not to its eligibility for a fee award." *PETA*, 130 F. Supp. 3d at 163 (citation omitted).

9

of the litigation for which fees are requested and the public value of the information derived from the case." *Ctr. for Popular Democracy*, 2021 WL 4452202, at *6 (citing *Davy*, 550 F.3d at 1159).

In the present case, the litigation had little effect. Prior to initiating this action, Plaintiff had received 10 redacted pages from Defendant in response to his three FOIA requests over the course of five years. (*See* Pl.'s 7/13/22 Mem. at 2-4.) After this action was commenced, Defendant produced an additional five pages. (*See id*. at 4; *see also* Schwartz 8/25/22 Decl. ¶ 2.) However, as explained above, those five pages largely were duplicates of previously produced pages without certain handwritten notes. Additionally, only one handwritten note was voluntarily unredacted after the filing of this action. Thereafter, and also as explained above, no additional documents were produced as a result of the search required by the judicial order issued in this action.

Moreover, applying an "*ex ante* assessment of the potential public value of the information requested," the documents sought by Plaintiff's FOIA requests did not "add to the fund of information that citizens use in making vital political choices." *See Ctr. for Popular Democracy*, 2021 WL 4452202, at *6, *8. The information sought relates to Plaintiff's personal circumstances and not any topic of public concern. *See Ellis v. United States*, 941 F. Supp. 1068, 1078 (D. Utah 1996) ("Although there may have been some slight public benefit in bringing the government into compliance with FOIA and providing information of general interest to the public, the disclosure of the records did not add to the fund of information necessary to make important political choices."). The information sought by Plaintiff "appear[s] to be of purely personal interest and to provide little, if any, benefit to the public." *See Loglia*, 1997 WL 214869, at *4. Accordingly, the first factor weighs against awarding attorneys' fees.

10

**B.      Second Factor: Commercial Benefit To Plaintiff**

With respect to the second factor, the parties are in agreement that Plaintiff did not derive any commercial benefit from this case. (*See* Pl.'s 7/13/22 Mem. at 12; Def.'s 8/25/22 Mem. at 11.) Thus, this factor weighs in Plaintiff's favor.

**C.      Third Factor: Nature of Plaintiff's Interest In Records**

With respect to the third factor, Plaintiff's interest in the records sought was personal to him. As Plaintiff acknowledges in his moving memorandum, he submitted the "series of FOIA requests at issue in this litigation" in order "to understand the scope and nature of the FBI's investigation into him." (Pl.'s 7/13/22 Mem. at 2.) Plaintiff's personal motivation belies Plaintiff's assertion that he had an interest in exposing information to the public. *See, e.g.*, *Poitras v. Dep't of Homeland Sec.*, No. 15-CV-01091 (BAH), 2019 WL 1569561, at *9 (D.D.C. Apr. 11, 2019) (finding third *Pietrangelo* factor weighed against plaintiff where plaintiff's filings demonstrated her motivation for submitting FOIA requests was to ascertain why she was stopped at border rather than "to satiate a public appetite for information about her border detentions"). While "[n]othing is wrong with self-interested FOIA requests," like the ones Plaintiff made in this case, "they just are less likely to result in an award of attorneys' fees [and costs]." *See id*. Thus, the third factor weighs against awarding attorneys' fees and costs.

**D.      Fourth Factor: Whether Government Had Reasonable Basis For Withholding**

The fourth and final factor "considers whether the agency's opposition to disclosure had a reasonable basis in law and whether the agency had not been recalcitrant in its opposition to a valid claim or otherwise engaged in obdurate behavior." *Poitras*, 2019 WL 1569561, at *9 (cleaned up) (citations omitted). The defendant bears the burden of showing that it had a

colorable or reasonable basis for not disclosing the material until after the plaintiff filed suit. *See Davy*, 550 F.3d at 1163.

In the present case, Defendant had a reasonable basis for refusing to search the Delta system, which search subsequently was ordered by the Court. Based upon the results of other searches that Defendant had conducted, Defendant stated that it had no reason to believe that responsive records would exist in the Delta system. *See Wilson*, 2022 WL 2532176, at *5. The reasonableness of Defendant's position was borne out by the fact that no responsive records were located in the Delta system after the search was conducted, as required by the Court. (*See* Def.'s 3/31/22 Ltr.)

Moreover, with respect to the search of the Delta system, Defendant's actions were neither recalcitrant nor obdurate. Upon issuance of my Report and Recommendation finding that Defendant, in the Court's view, had not provided sufficient justification for its failure to search Delta, Defendant waived objections and promptly conducted the search of the Delta system prior to Judge Kaplan adopting the Report and Recommendation. (*See* Def.'s 3/31/22 Ltr.; Def.'s 8/25/22 Mem. at 12.) And, as noted above, the search of the Delta system yielded no responsive records. (*See id.*)

With respect to the one handwritten note that was unredacted subsequent to the filing of this lawsuit, Defendant explained that it initially withheld this note "pursuant to FOIA Exemptions 6 and 7(C), which balance individuals' privacy interests in protecting information from disclosure against the public interest in that particular disclosure." (*See* Def.'s 10/6/22 Ltr. at 1.) Exemption 6 protects "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6).

Exemption 7(C) excludes records or information compiled for law enforcement purposes, "but only to the extent that the production of such [materials] . . . could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C). Since "the standard for evaluating a threatened invasion of privacy interests . . . is somewhat broader" under Exemption 7(C) than under Exemption 6, *see U.S. Dep't of Just. v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 756 (1989), the Court considers whether Defendant had a reasonable basis to withhold the note under Exemption 7(C).

"Exemption 7(C) requires the agency and the reviewing court to weigh the public interest in the release of information against the privacy interest in nondisclosure." *See Reporters Comm.*, 489 U.S. at 762. With respect to an individual's privacy interest, courts tend to favor "nondisclosure of names or other information identifying individuals appearing in law enforcement records, including investigators, suspects, witnesses, and informants." *Schrecker v. U.S. Dep't of Just.*, 349 F.3d 657, 661 (D.C. Cir. 2003). The Court finds that Defendant had a reasonable basis for its initial determination that the note "PD Division since 1990" next to the name of an individual identified by Plaintiff implicated that individual's personal privacy interests. The Court agrees with the Government that the subject note suggests that the individual had an "association" with the "PD Division."[5] (*See* Def.'s 10/6/22 Ltr. at 3.) Thus, in the Court's view, Defendant reasonably had concluded that "redaction of the individual's identity alone would not have been adequate to protect the personal privacy interests of that individual." (*See id*.) The fact that, after this lawsuit was filed, Defendant reached a different conclusion with respect to

---

[5] As Plaintiff acknowledges "PD" is a "known FBI abbreviation for Portland." (*See* Pl.'s 9/9/22 Reply at 5.)

whether Exemptions 6 and 7(C) should apply to the handwritten note in question does not render its initial position unreasonable.[6]

In addition, the Court finds that Defendant's actions with respect to the handwritten note were neither recalcitrant nor obdurate. Defendant voluntarily produced the note to Plaintiff upon "reprocessing the records in response to the [C]omplaint." (*See* Def.'s 10/6/22 Ltr. at 4.) Accordingly, the fourth factor weighs against an award of attorneys' fees and costs.

Given that three of four *Pietrangelo* factors weigh against the award of attorneys' fees and costs, the Court finds that Plaintiff is not "entitled" to attorneys' fees and costs.

## III.   **Reasonable Fees And Costs**

The following section is included in the event that, contrary to my foregoing recommendation, Judge Kaplan determines that Plaintiff is "entitled" to attorneys' fees and costs.

### A.   **Reasonable Fees**

"The plaintiff bears the burden of establishing the reasonableness and the necessity of the hours spent and the rates charged." *Ctr. for Popular Democracy*, 2021 WL 4452202, at *9. With respect to fees, the applicable lodestar approach, *see New York Times*, 251 F. Supp. 3d at 713, requires the Court to calculate "the product of a reasonable hourly rate and the reasonable number of hours required by the case." *Millea v. Metro-North R.R. Co.*, 658 F.3d 154, 166 (2d Cir.

---

[6] In addition, in "weigh[ing] the public interest in the release of [the subject note] against the privacy interest in nondisclosure," *see Reporters Comm.*, 489 U.S. at 762, the note serves no public interest, as it relates to a minor detail of a specific investigation.

2011).[7] The attorneys who worked on this case were David Rankin ("Rankin") and Katherine "Q" Adams ("Adams"). After considering the relevant factors, *see Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany*, 522 F.3d 182, 186 n.3 (2d Cir. 2008), the Court finds that $500 is a reasonable hourly rate for partner Rankin, *see Greenburger v. Roundtree*, No. 17-CV-03295 (PGG) (SLC), 2020 WL 4746460, at *6 (S.D.N.Y. Aug. 16, 2020) (finding $500 rate for Rankin reasonable), and that $200 is a reasonable hourly rate for associate Adams. *See Loc. 1180, Commc'ns Workers of Am., AFL-CIO v. City of New York*, 392 F. Supp. 3d 361, 380 (S.D.N.Y. 2019) (finding $200 hour rate for junior associate reasonable).

In addition, the Court finds that $150 is a reasonable hourly rate for Abigail Robinson ("Robinson"), an experienced paralegal,[8] *see Vista Outdoor Inc. v. Reeves Fam. Tr*., No. 16-CV-05766, 2018 WL 3104631, at *7 (S.D.N.Y. May 24, 2018) (finding $150 hourly rate for paralegals with ten years or fewer of relevant professional experience to be reasonable), and that $100 is a reasonable hourly rate for the paralegals who performed work and whose qualifications were not provided. *See M.R. v. New York City Dep't of Educ*., No. 21-CV-05503 (VEC), 2022 WL 4396835, at *2 (S.D.N.Y. Sept. 23, 2022) ($100 hourly rate found reasonable where movant "fail[ed] to explain what qualifications entitle the paralegal to a higher rate").

The "degree of plaintiff's success in the litigation is the 'most critical factor' in determining the reasonableness of a fee award." *PETA v. NIH*, 130 F. Supp. 3d 156, 166 (D.D.C. 2015) (quoting *Farrar v. Hobby*, 506 U.S. 103, 114 (1992)). In considering the reasonable number of hours

---

[7] *See also Maria and Raina DiFilippo v. Morizio*, 759 F.2d 231, 234 (2d Cir. 1985) ("where . . . the party achieves success on the merits, an award of all reasonable hours at a reasonable hourly rate, *i.e*., the lodestar figure, is presumptively appropriate").

[8] *See* Rankin Decl., ECF No. 61, ¶¶ 39-42.

expended, the Court should exclude "excessive, redundant or otherwise unnecessary" hours. *See Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983). "[I]n dealing with such surplusage, the court has discretion simply to deduct a reasonable percentage of the number of hours claimed 'as a practical means of trimming fat from a fee application.'" *Kirsch v. Fleet Street, Ltd*., 148 F.3d 149, 173 (2d Cir. 1998) (quoting *New York State Ass'n for Retarded Child., Inc. v. Carey*, 711 F.2d 1136, 1146 (2d Cir. 1983)). However, it is not necessary for the Court to "analyze every itemized instance of work conducted by [the] attorneys." *Elec. Priv. Info. Ctr*., 218 F. Supp. 3d at 50. "The Court's role in awarding fees is to do 'rough justice' not engage in a picayune 'battle of the ledgers.'" *Id*. (quoting *Elec. Privacy Info. Ctr. v. Dep't of Homeland Sec*., 197 F. Supp. 3d 290, 294 (D.D.C. 2016)).

In the present case, Plaintiff had very limited success. The net result of this action being filed is that Plaintiff obtained a single handwritten note, *i.e*., "PD Division since 1990." Due to Plaintiff's very limited success, his fee recovery should be substantially reduced. Moreover, based upon the Court's review of the time records, the Court finds that the hours billed were excessive. For example, during the five-month period from July 1, 2020 to December 8, 2020, when this action was commenced by filing a five-page Complaint, Plaintiff's counsel billed over 60 hours (*see* Timesheets of BLH, ECF No. 62-1, at 1-4), which the Court finds to be in excess of what reasonably was required.

Taking all the foregoing into account, the Court in its discretion implements an 80% across-the-board reduction in the hours of the timekeepers, in order to achieve rough justice. The chart below reflects a calculation of the fees awarded, by timekeeper:

| Name | Hourly rate | Hours | Amount awarded |
|---|---|---|---|
| Rankin | $500 | 4.1 (20.6 less 80%) | $2,050.00 |
| Adams | $200 | 25.4 (126.9 less 80%) | $5,080.00 |
| Robinson | $150 | 1.3 (6.5 less 80%) | $195.00 |
| Paralegals | $100 | .2 (1.2 less 80%) | $20.00 |
| **TOTAL** | | | **$7,345.00** |

### B.    Reasonable Costs

Under FOIA § 552(a)(4)(E)(i), "[t]he court may assess against the United States . . . litigation costs reasonably incurred." 5 U.S.C. § 552(a)(4)(E)(1). Plaintiff seeks to recover $9,470.43, consisting of courier fees ($115.09), filing fees ($402.00), postage ($38.46), computer-assisted law research fees ($37.04), telephone conference service fees ($89.09), private investigator fees ($750.00), professional service fees ($3,838.75) and expert witness fees ($4,200.00). (*See* Adams Decl., ECF No. 62, ¶ 15; Timesheets of BLH at 9-10.)

Plaintiff's courier fees, filing fees, postage, computer-assisted law research fees and telephone conference service fees (totaling $681.68) would be compensable, if he were entitled to receive them. *See Kuzma v. I.R.S.*, 821 F.2d 930, 933-34 (2d Cir. 1987); *see also Schwartz v. United States Drug Enf't Admin*., No. 13-CV-05004 (CBA) (ST), 2019 WL 1299192, at *11-12 (E.D.N.Y. Mar. 1, 2019), *report and recommendation adopted*, 2019 WL 1299660 (E.D.N.Y. Mar. 21, 2019) (approving recovery of photocopying, postage, court filing fees and electronic legal research expenses).

Plaintiff's "professional service" fees are not compensable. A court may "properly deny a request for costs that is vague or insufficiently descriptive." *See Samsonite IP Holdings S.ar.l. v. Shenzhen Liangyiyou E-Com. Co.*, No. 19-CV-02564 (PGG) (DF), 2021 WL 9036273, at *17 (S.D.N.Y. Apr. 27, 2021). Plaintiff offers no explanation regarding the type of service that comprised the "professional service" for which he requests compensation, nor does he explain why such costs were reasonably incurred. *See, e.g.*, *id.* (finding plaintiff's requested costs for "professional services" too vague to permit inclusion in a fee award).

Even assuming that expert fees are recoverable in a FOIA case,[9] Plaintiff has not met his "burden of proving reasonableness." *See Penberg v. HealthBridge Mgmt.*, No. 08-CV-01534 (CLP), 2011 WL 1100103, at *15 (E.D.N.Y. Mar. 22, 2011) (citation and internal quotation marks omitted). He merely includes two invoices containing the name of the expert, her hourly rate and the number of hours worked. (*See* Eagle Security Invoices, ECF No. 62-2.) No information is provided in Plaintiff's motion papers regarding the reasonableness of the expert fees charged.

In addition, even assuming that the investigator fee is recoverable,[10] Plaintiff has provided no information about the investigator fee other than the amount charged. (*See* Timesheets of

---

[9] *But see Ray v. U.S. Dep't of Just., I.N.S.*, 856 F. Supp. 1576, 1585 (S.D. Fla. 1994), *aff'd*, 87 F.3d 1250 (11th Cir. 1996) (finding that FOIA fee-shifting provision, which allows recovery for "attorney's fees and other litigation costs reasonably incurred," does not permit court to award expert witness fees in excess of the limit set by 28 U.S.C. § 1821 (relating to witness fees for attendance at trial or deposition)); *but see also Myers v. Aitkin Cnty.*, No. 14-CV-00473 (JRT) (LIB), 2017 WL 1134575, at *2 (D. Minn. Mar. 27, 2017) (declining to construe language "other litigation costs reasonably incurred" contained in another federal statute "as implicitly authorizing recovery of expert costs, where other fee-shifting statutes explicitly authorize the recovery of expert fees"); *Menghi v. Hart*, 745 F. Supp. 2d 89, 114 (E.D.N.Y. 2010), *aff'd*, 478 F. App'x 716 (2d Cir. 2012) (plaintiff may not recover expert witness fees where statute only authorizes recovery of "other litigation costs reasonably incurred").

[10] *But see Kingvision Pay-Per-View Ltd. v. Cardona*, No. 03-CV-03839 (GBD) (FM), 2004 WL 1490224, at *4 (S.D.N.Y. June 30, 2004) ("There is no provision for a prevailing party to be awarded the cost of its investigator.").

BLH at 9.) Thus, Plaintiff has not met his burden to establish the reasonableness of the investigator fee. *See J & J Sports Prods., Inc. v. Garcia*, No. 06-CV-04297, 2011 WL 1097538, at *6 (S.D.N.Y. Mar. 1, 2011) (declining to reimburse investigator costs where plaintiff did not establish "the time expended by the investigator nor the reasonableness of the investigator's fees"), *report and recommendation adopted*, 2011 WL 1046054 (S.D.N.Y. Mar. 22, 2011).

<u>CONCLUSION</u>

For the foregoing reasons, I respectfully recommend that, in the Court's discretion, Plaintiff's motion for attorneys' fees and costs be DENIED. In the event that Judge Kaplan were to find that Plaintiff is entitled to an award of fees and costs, however, I recommend that Plaintiff be awarded $7,345.00 in fees and $681.68 in costs.

Dated:     New York, New York
           October 14, 2022

_____
**STEWART D. AARON**
**United States Magistrate Judge**

                    *                *                *

**NOTICE OF PROCEDURE FOR FILING OBJECTIONS TO THIS REPORT AND RECOMMENDATION**

The parties shall have fourteen (14) days (including weekends and holidays) from service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure. *See also* Fed. R. Civ. P. 6(a), (d) (adding three additional days when service is made under Fed. R. Civ. P. 5(b)(2)(C), (D) or (F)). A party may respond to another party's objections within fourteen days after being served with a copy. Fed. R. Civ. P. 72(b)(2). Such objections, and any response to objections, shall be filed with the

Clerk of the Court. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b). Any requests for an extension of time for filing objections must be addressed to Judge Kaplan.

**THE FAILURE TO OBJECT WITHIN FOURTEEN (14) DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW.** *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b); *Thomas v. Arn,* 474 U.S. 140 (1985).